Report of Dr. Harold Snider

Opinions: It is my professional opinion to a reasonable certainty that:

Murielene Gordon, who is mobility impaired and was a teacher for many years at Ballou Senior High School, was at all times relevant to her case, a qualified individual with a disability under applicable laws, including but not limited to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act and District of Columbia Human Rights Act. She has arthritis and other conditions.

It is my opinion that commencing in 1999 and periodically thereafter Ms. Gordon requested reasonable accommodation from her employer, District of Columbia (District of Columbia Public Schools).

Ms. Gordon was a teacher on the first floor. Since she was and is mobility impaired she should have been accommodated by having all her programs and activities on the first floor. If required to attend a meeting on the second floor she should have been given a key to an elevator to get there. If required to attend a function/meeting in another room, such as in the library or cafeteria that was not located in her wing of the School, it would be a reasonable accommodation to allow her to arrive a few minutes late without penalizing Ms. Gordon for being late. There should be accessible seating in the rooms outside of her classroom, such as the auditorium.

As a qualified individual with a disability in an entity subject to the laws noted above, Ms. Gordon's workplace should have been program accessible to her. This means that she should have access to and use of an accessible bathroom that was proximate to her, an accessible classroom with supplies on shelves no higher than permitted under the standard applicable under the laws such as the Americans with Disabilities Act guidelines and Section 504 of the Rehabilitation Act. The shelving in her classroom did not comply with laws and Federal regulations. Also there should have been functional heating and cooling system that could have been modified as an accommodation to Ms. Gordon's arthritis.

At all times there should have been an emergency exit door accessible to Ms. Gordon. The doors in her room that led outside were such an exit. Chaining and/or locking the exit doors were a denial of reasonable accommodation.

As part of her duties entailed copying papers she should have had an accessible copier nearby or been allowed to have someone else, even a student, as appropriate, copy papers for her, as a reasonable accommodation.

Finally it is my opinion that in addition to the physical and programmatic barriers experienced by Ms. Gordon, she also was the victim of attitudinal bias which a

reasonable person would find intolerable. If, as she reports, she was told she was a "liability" by the Ballou Principal, this statement would be a clear indication of a workplace that was hostile to her because of her disability (as well as very harmful).

Basis of My Opinion:  I rely on the Americans with Disabilities Act as well as the implementing regulations under Titles I (EEOC) and II (Department of Justice).  I rely on Americans with Disabilities Guidelines (ADAAG) issued by the U.S. Architectural and Transportation Barriers Compliance Board which have the force of law as Federal Regulations.  I also rely on various publications and information disseminated by the United States Department of Justice, the United States Equal Employment Opportunity Commission and the U.S. Architectural and Transportation Barrier's Compliance Board.  These include, but are not limited to, technical assistance manuals and guidelines, including particularly the EEOC Guidance on Reasonable Accommodation.
I have general familiarity with the facts of this case. I considered all of this information in formulating my opinion.

Signed by:

Dr. Harold W. Snider