UNITED STATES.DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Murielene Gordon | ) |
| Plaintiff | ) |
| | ) Civil No. 05-1907 |
| | ) Judge Emmett G. Sullivan |
| District of Columbia | ) Magistrate John M. Facciola |
| Defendant | ) |

PLAINTIFF"S OPPOSITION TO DEFENDANT'SMOTION FOR SUMMARY JUDGMENT

I. Introduction

Comes Plaintiff, through her undersigned attorney, and respectfully urges that the Defendant's Motion for Summary Judgment be denied as there are genuine disputes of material issues of fact herein. Plaintiff respectfully submits that contrary to the superficial allegations of Defendant, upon detailed examination of the unique material facts here, she is an otherwise qualified individual with a disability, a person who is impaired in major life activities of walking, taking care of herself, and performing manual tasks.

Moreover, Defendant in its Motion seeks to hypocritically disavow the admissions and actions of its employees (and specialist physician contractor) who acknowledged Plaintiff as a person with a disability and, who AFTER she filed her charge with the United States Equal Employment Opportunity Commission ("EEOC") sought to accommodate her. These efforts to accommodate her were unsuccessful in vital ways. The effort by Defendant in its Motion to disregard its own actions towards Plaintiff is most politely described as arguably disingenuous.

Plaintiff notes that Defendant in the Motion takes a "one size fits all" approach and looks exclusively at Plaintiff alone, not, as the law, including cases and EEOC regulations require, in comparison to the average person in the general population. Defendant treats the ability to perform any task—regardless of how much longer it takes or how difficult it is for this Plaintiff because of her impairment—as showing she is not disabled. In essence, Defendant equates Plaintiff with an Olympic

runner, since each could walk one block or up and down a flight of stairs. This is fundamentally flawed, given the attested added time and pain it takes Plaintiff as opposed to able-bodied persons to accomplish these tasks. Under Defendant's rationale, a person with ANY ability to be ambulatory or take care of the personal needs—regardless of how limited that ability, as Defendant knows Plaintiff's is--would not be considered disabled under the law. The case law and implementing regulations of the EEOC are clear that total or utter disability is not required to be a person with a disability under the Americans with Disabilities Act, 29 CFR Sec. 1630.2(j), Bragdon v. Abbott, 524 U.S. 624 at 641, 118 S.Ct. 2196, 141 L.Ed. 2d. 540 (1998).  On a case-by-case basis, this Plaintiff, with probative evidence from her witnesses as well as Defendant's contractor doctor and employees, meets the criteria as a person with a disability as she is substantially impaired. Albertson Inc. v. Kirkingburg, 527 U.S.555, 119 S.Ct.2162, 144 L.Ed.2d.518 (1999), 29 CFR Secs. 1630.2(g), 1620.2(i), 1630.2(j)(l)(i)(ii).

Plaintiff also submits that there are discovery issues pending making consideration of the instant Motion premature.

It is respectfully submitted that the Defendant's Motion must be denied. A proposed Order is attached.

## II. LCvR 7(h) Statement of Material Facts In Dispute

A. <u>Plaintiff's Statement of Material Facts in Dispute</u>

1. Plaintiff has arthritis which has been known to Defendant for years. Exhibits 1, 8.

2. For at least the past five years Plaintiff is mobility impaired, including in such basic activities as entering into her own home and getting to work. Exhibits 1,2,3.  It takes her at least 7-8 minutes to climb the stairs to her home, something an able –bodied person can do in a minute or two. Exhibits 1,2. When she could get to the bus stop (such as when there was no ice on the ground) it took her at least 20 minutes when she had a cane. (Now it takes her much longer with her walker). She has to rest on

concrete walls along the way. An able bodied person gets to the bus in about 6 minutes. Exhibits 1, 2.

3. Due to her arthritis for at least the last five years Plaintiff does not wear makeup and needs assistance when shampooing her hair. Due to her arthritis Plaintiff is in pain when standing to brush her teeth. An able bodied person is not. Exhibits 1, 2.

4. Standing up to wash/bathe for more than a few minutes is painful. Plaintiff has used a shower bench, obtained from the National Rehabilitation Hospital due to her arthritis for the past four years. Exhibit 1.

5. Due to her arthritis for at least the past five years Plaintiff cannot wear clothing (including shoes) with ties or snaps. She wears slip-on clothing such as shoes ("mules") or clothing that has velcro closers. She must wear bras that close in the front. An able-bodied person can wear clothing with all types of closers. Exhibits 1,2.

6. Due to her arthritis for at least the past five years, unlike an able-bodied person, Plaintiff cannot stand to prepare food and cook meals for herself or her family. Her daughter and grandson cook meals for her due to Plaintiff's arthritis. Plaintiff gets meals from "Meals on Wheels" because of her arthritis. Exhibits 1,2,3.

7. Plaintiff, unlike an able- bodied person, cannot walk upstairs to use the toilet in her own home once she comes down. She must use a portable toilet. Exhibits 1 2,3.

8. Plaintiff cannot clean her own home independently, including doing laundry. In connection with cleaning her home, she must "recruit" her grandson who lives with her, use a device provided by the National Rehabilitation Hospital and since 2000 has been in pain when changing bed linens. Her daughter and grandson have helped her clean her home, cook, and do laundry the past five years. Exhibits 1, 2, 3.Gordon depos.16:10, 304: 6,18,22.

9. Plaintiff has not attended church for the past five years at least due to the pain of arthritis. Exhibits 1 and 2. The arthritis has severely limited her ability to socialize, including with family. Id.

10. At times in the past five years, due to icy conditions, Plaintiff has missed work because she could not walk to the bus stop (sic. to take a bus to take her to school). Exhibit 1.

11. While employed at Ballou Senior High School after 2000, Plaintiff would eat in her classroom because it would have taken her so long to "walk" to the cafeteria that it would have used up her entire lunch period. An average person in the general population, an able-bodied person, would make the trip to the cafeteria in a few minutes. Exhibits 1,2, 5.

12. At Ballou, the shelves for her art supplies were too high for Plaintiff to reach. She had to have help from students and a faculty colleague to reach supplies. Exhibits 1, 2, 4,5.

13. Plaintiff was assisted from her classroom in emergencies by a student. Exhibit 4.

14. Plaintiff requested reasonable accommodation in her employment and filed her EEOC charge in April, 2003. Complaint herein at Paragraph 17. It alleges, inter alia, ongoing discrimination and denial of reasonable accommodation. Exhibit 7.

15. Plaintiff was required to undertake a fitness for duty examination prior to returning to work in 2003. Defendant's medical consultant noted Plaintiff's height as 69" (5'9"), that her arthritis has "severely affected her mobility" and that the arthritis in her knees and hips limited her physical mobility. He stated accommodations of "no standing for more than five minutes at a time, no walking up or down stairs, no walking more than 50 yards at a time, no bending or stooping, no reaching above shoulder level, and no lifting or carrying of 10 lbs. or greater." Exhibit 8.

16. Defendant made incomplete, belated, unsuccessful efforts to accommodate Plaintiff after she filed her EEOC charge. Exhibits 7,9, 10,11,12, including taking more than two years to provide a simple safety mat at a sink. See, Exhibits13, 13a.

17. Defendant claims it purchased air conditioners for Plaintiff's room to accommodate her. In fact Defendant did not purchase air conditioners, fans or a heater to accommodate Plaintiff. Exhibits 14,15

and Plaintiff's classroom temperature at times was extremely hot and cold. Exhibits 1,2,4,5,6.

18. Regulation of temperature for persons with arthritis (such as Plaintiff) is a well accepted form of reasonable accommodation. Exhibits 16,17.

19. Even after Plaintiff filed her complaint at EEOC on April 17,2003, she was assigned to participate in certain activities on the 2d floor. Exhibit 18.

20. In November, 2005 after Plaintiff filed her complaint in United States District Court in September, 2005, alleging inter alia, she was denied reasonable accommodation, including by being required to attend meetings on the second floor, Complaint Paragraphs 14,15 Plaintiff was required by Defendant to attend training on the second floor of Ballou. Exhibit 19.

B. Plaintiff's Responses to Defendant's Statement of Alleged Facts

1. Plaintiff has arthritis that has been well known to Defendant for several years. Exhibit 8.

2. Admitted to the extent that it describes a fact, denied insofar as it states Plaintiff climbs steps as an able-bodied person. Plaintiff is and at all times relevant herein has been ambulatory impaired, as Defendant is well aware. Plaintiff does not climb steps or ambulate as an able-bodied person. Exhibits 1, 2, 3, 4,5,8.

3. Admitted to the extent that it describes a fact, denied insofar as it states Plaintiff ambulates within home as an able-bodied person. See, Exhibits 1, 2,3.

4. Admitted to the extent that it states she has to go there. Denied insofar as it states she does in fact go there as an able-bodied person. Exhibits 1, 2. Also, Plaintiff testified her grandson does the laundry and that she hardly ever goes there. Gordon dep.16: 10. Exhibit 1 to which is attached Gordon dep.306:7-20, Exhibit 3 She also testified that she had a device from the National Rehabilitation Hospital to help her clean. Gordon dep.304: 6,18,22. Her daughter does laundry and both her daughter and grandson clean the house. Exhibits 1, 2, 3.

5.  Admitted to the extent that it states she takes care of herself but denied to the extent that it states that she takes care of herself as the average person in the general population, an able-bodied person. Exhibits 1,2,3.

6.  Admit that Plaintiff took public transportation to work but deny that she took it every day. Deny this to the extent that it states she got to and from public transportation and took public transportation in the same manner as the average person in the general population, an able –bodied person. Plaintiff, unlike an able –bodied person, had to stop along the way to the bus, took longer to get to the bus, could not take all buses but was limited to accessible buses and in bad weather could not get to the bus stop. Exhibits 1 and 2.

7. Admits that Plaintiff started taking Metro Access in January 2004 but denies this is a material fact.

8. Admitted but denies this to the extent that it states Plaintiff was reasonably accommodated.

9. Plaintiff admits that she did not have to walk or stand to teach but denies this Plaintiff was reasonably accommodated as required by law or that Plaintiff taught her classes in the same as the average person in the general population, an able bodied person would or could have taught. Since Defendant did not accommodate her, she taught in pain. She required assistance in reaching her supplies that were too high, above her shoulder. Exhibits 1, 2, 4,5.Also see, Exhibit 8,9.

10. Admit Plaintiff testified as she did but deny Defendant provided effective reasonable accommodations to Plaintiff or that Plaintiff did not need reasonable accommodations. Plaintiff's capability was achieved despite Defendant's failure to provide effective reasonable accommodations to her, causing her to incur and endure pain. Exhibit 1. Plaintiff was capable of achieving highest performance rating and would have done so without pain and more independently if she had been accommodated as required by law.

11.  Admit Plaintiff so testified but deny that Plaintiff's capability to perform her job at a high level was

due to the actions of Defendant. Her performance at a high level was despite not due to the actions of Defendant. See answer to no. 10, *supra.*

12. Admit she left her classroom during emergencies but deny this statement to the extent it states or implies she left independently or that Defendant took action to ensure that Plaintiff left. Exhibits 4, 5.

III. Memorandum of Points and Authorities :Argument

a. Standard for Summary Judgment

Under Rule 56 summary judgment may be entered if there is no genuine issue as to any material fact and there is no issue as to credibility. Anderson v. Liberty Lobby, Inc. 477 U.S. 242,248 (1986), Celotex Corp. v. Catrett, 477 U.S.317 (l986), Matsushita Elec. Indus.Co. v. Zenith Radio 475 U.S.574, 587 (1986).

A fact is material if it has the potential to effect the outcome of the case. Anderson, supra. If a case can only be resolved by weighing conflicting evidence, summary judgment is not appropriate. A disputed issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex, supra, at 322-323, Oliver v. Digital Equip. Corp. 846 F.2d. 103, 105, (lst Cir. 1988).

It must be kept in mind that on summary judgment the court is not a fact finder. Evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in favor of the non-moving party. Celotex, *supra,* Matsushita*, supra*, Ely v. Hall's Motor Transit Co. 590 F2d. 62,66 (3rd Cir.1978), Smith v. Pittsburgh Gage & Supply Co., 464 F2d 879 (3rd Cir.1972), Cox.v. Kentucky Dept. of Transportation, 53 F3d. 146 (1995). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment. Kaufer v. UPMC Health Plan et al. __F.Supp.__ ( No. 2:04 cv 1325, W.D. Pa. 2006), Josey. John R. Hollingsworth Corp., 996 F.2d. 662 (3rd Cir.1993). On summary judgment the role of the trial court is limited to determining

whether there are genuine issues of material fact, to be tried, not to deciding them. The inquiry here is as to issue-finding, not issue resolution. Gallo v. Prudential Residential Servs. Ltd. P'nship. 22 F.3d.1219, 1223 (2d Cir.1994). Summary Judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. Chambers v. T.R.M. Copy Ctrs. Corp. 43 F.3d 29, 37 (2d Cir.1994). Whether Plaintiff was reasonably accommodated is a matter for the trier of facts to determine. Armstrong v. Reno, 172 F.Supp.2d.11, 23, (D.D.C.2001).

Here Plaintiff, the non-moving party, sets forth specific facts in affidavits from persons with direct knowledge, as well as documents from Defendant, which are admissible at trial, based upon which a trier of facts could find in her favor. Mitchell v. City of Moore, 218 F.3d.1190 at 1197-98 ( 3d Cir. 1999), Adler v. Wal – Mart Stores, Inc. 144 F.3d.664,670 (10th Cir. 1998), Ryan v. Shawnee Mission Unified School District, 416 F.Supp.2d. 1090 (D. Kans. 2006). Moore's Federal Practice 3d. Secs.56.11(c ),(d). Plaintiff's facts show from her own testimony as well as others with direct knowledge of her condition and limitation that she is substantially mobility impaired, substantially impaired in her daily living activities and substantially impaired in performing manual tasks. Plaintiff's facts show that Defendant has been well aware for years of her impairment and that Defendant failed to accommodate her. The Motion should be denied and Plaintiff afforded the opportunity to prove her case at trial. Cf. Highbee v. Billington, 290 F. Supp.2d 105, 105 (D.D.C.2003).

b. Material Facts are Genuinely in Dispute

There are profound, cavernous differences of the parties as to fundamental facts here. There are clashes over the basic facts as to whether Plaintiff is a person with a disability under the Americans with Disabilities Act and whether Plaintiff requested accommodations that were denied. Let us examine this Plaintiff following the case-by- case approach of ALBERTSON, supra, and its progeny, Price v. National

Board of Medical Examiners, 996 F. Supp. 419 (SD. W.Va. 1997), Lilibridge v. Wooden Soldier, Ltd., 958 F. Supp. 266 (D.N.H. 1997), Ordahl v. Forward Technologies, Inc.301 F.Supp.2d 100 (D.Minn. 2004), Labrecque v. Sodexho USA, 287 F. Supp.2d. 100 (D. Miss. 2003). Burrell v. Cummins Great Pars. Inc. 324 F. Supp. 2d.1000 (S.D. Iowa, 2004).

Under the Americans with Disabilities Act, this Plaintiff is clearly a person with a disability. In marked distinction from the cases cited by Defendant, this Plaintiff, as Defendant has been well aware for years, is the textbook case of a person with a disability as she is substantially impaired in major life activities. .

Under the Americans with Disabilities Act, the term "disability" with respect to an individual means an individual with a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a person with a record or such an impairment, or an individual regarded as having such an impairment. 42 U.S.C. Sec. 12102(2). In this case Plaintiff, by virtue of her condition, Defendant's knowledge of her record of such an impairment, and how Defendant treated her, especially after she filed her charge at the EEOC, meets all aspects of the definition.29 CFR Sec.1630.2(g)

Under the implementing regulations of the EEOC major life activities include but are not limited to functions such as caring for oneself, performing manual tasks, and walking. 29 CFR Sec. 1630.2(i). The case law holds that major life activities for purposes of the statute and implementing regulation include lifting, reaching, sitting, or standing. Turco v. Hoehst Celanese Chemical 906 F.Supp. 1120 (S.D. Tex. 1995), aff'd 101 F.3d. 1090, reh'g den. 108 F. 3d.335 (5th Cir. 1995). Ray v. Glidden Co. 85 F.3d. 227 (5th Cir.1996), Velez Del Valle v. Paints, 349 F. Supp.2d.219 (D. P.R. 2004), Lowe v. Angelo's Italian Foods, 996 F.Supp.1036 (10th Cir. 1996)

The EEOC regulations implementing the Americans with Disabilities Act define the term

"substantially limits" to mean in part (i) unable to perform a major life activity that the average person in the general population can perform or (ii) significantly restricted as to the conditions, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.29 CFR Sec.1630.2(j)(1)(i)(ii) Miller v. Department of Corrections, 916 F.Supp. 863 (C.D.Ill.1996) aff'd 107 F3d 483 (7th.Cir. 1997).

Defendant's medical consultant in April, 2003 noted Plaintiff's arthritis "SEVERELY AFFECTED HER MOBILITY" (emphasis added), and in light of her mobility impairment, advised Defendant, as elaborated upon infra, of the need for Plaintiff to be accommodated at work in much the same ways as is in the cases. Exhibit 8. Defendant here is admitting Plaintiff is covered by the law as she is substantially impaired in a major life activity walking (sic. mobility). 29 CFR Secs. 1630.2(g)(1) and 1630.2(j)(1)(i)(ii).

Plaintiff, as she and eye-witnesses, her daughter, her grandson who lives with her, a student, a former colleague, attest, is clearly mobility impaired, confirming Defendant's Dr. Scott's finding. Exhibits 1,2, 3, 4,5, 8. Plaintiff is also impaired in terms of her inability to perform manual tasks and taking care of herself. These are all major life activities. 29 CFR Sec.1630.2(i).

With respect to her mobility impairment, which Defendant's consultant, Dr. Scott noted in 2003, Exhibit 8, it takes this Plaintiff multiple times longer to climb the stairs to enter her home than it takes her able-bodied daughter. It takes Plaintiff at least 8 minutes to do something her able-bodied daughter does in two minutes. Exhibits 1 and 2. It took Plaintiff 20 minutes with her cane to walk the one block from her home to the bus stop, a task an able bodied person does in a 5 or 6 minutes. Id. (Now with her walker it would take her even longer.) Unlike an average person in the general population, Plaintiff has had to stop and has to now stop along the way because she gets tired. Exhibit 1. When Plaintiff got off

the bus near Ballou (prior to her taking MetroAccess in 2004) it took her 35 minutes, as opposed to the 15 minutes for able-bodied persons, Exhibit 1.

Plaintiff's experience inside Ballou in terms of getting to the cafeteria also shows she is mobility impaired. Walking to the cafeteria which her able-bodied former colleague Mr. Owens would do in but a few minutes leaving him ample time to eat lunch, takes Ms. Gordon the entire lunch period. Exhibits 1 and 5. When Plaintiff's daughter walked with Plaintiff to the Ballou cafeteria in June, 2003 (which was shortly after Plaintiff had filed her EEOC charge) it took an extended period of time, way beyond the time which the average person in the general population would take to traverse the same distance. Plaintiff had to rest en route. Exhibit 2. Also see, Exhibits 1, 5,7.

Ms.Gordon is also clearly impaired when it comes to taking care of herself.  Unlike the average person in the general population, Plaintiff is in pain when brushing her teeth and standing for more than a few minutes in the bathroom. She must use a shower bench for bathing. It is too painful for her to put on cosmetics and must have help washing her hair. Unlike an able bodied person who would go upstairs to their bathroom, Plaintiff must use a portable toilet once she comes down from her bedroom. Exhibits 1,2,3.

Because of her impairment and the way it limits her ability to stand and do manual tasks, she cannot dress herself, cook or clean independently as the average person in the general population does.

The limitations due to arthritis in Plaintiff's ability to perform manual tasks significantly adversely  affect both her ability to take care of herself and do things around her home (as well as when she was at Ballou).Plaintiff cannot perform the manual tasks of buttoning her clothing or tying her clothing, including shoe laces. She is  limited in what she wears to slip on or clothing with velcro closers due to being impaired in manual tasks. She wears only slip on shoes ("mules") and bras that close in the front. An able-bodied person can wear clothing with any type of closer, buttons, zippers, that close front

or back. Exhibits 1, 2.

Plaintiff, unlike an able-bodied person cannot take care of her home, i..e. clean it, independently but must use a device she received from the National Rehabilitation Hospital and have help from her family, including her daughter and grandson. Exhibits 1,2,3. Her grandson must take out trash because of the manual tasks and steps involved. Exhibits 1 and Gordon Dep.306: 20,and Exhibit 3. She cannot vacuum and must sit to dust. Exhibit 1 at Gordon Dep.306:5-11. An average person in the general population takes out their own trash, vacuums, stands while dusting and cleans without using hospital provided devices.

She is limited in her ability to take care of herself in terms of food. She does not go food shopping in stores. Exhibits 1,2. Plaintiff is limited in cooking due to the pain of manual tasks and standing and now makes cold meals or microwaves because she cannot cook as an able –bodied person due to the pain of her arthritis. Her grandson and daughter cook for her when she is not getting "Meals on Wheels." Exhibits 1,2,3. She must sit to do the dishes. Exhibit 1 Gordon Dep.306 at 5-7.

Contrary to the allegations of Defendant, Plaintiff rarely goes downstairs as her daughter and grandson do the laundry. Exhibits 1,2, 3. Gordon Dep. 16:10, 304:6,18, 22 (Defendant's Ex.1). At school, Plaintiff had pain gripping tools or brushes.  Since Defendant did not reasonably accommodate her, she also had problems standing at an easel. Exhibit 1. (This also affects her ability to do art work at home, as a private artist. Id.)

While Defendant's inquiries at deposition were posed Plaintiff answered truthfully that she does the particular task. However, Defendant's inquiry is superficially incomplete, by failing to inquire as to the length of time it takes Plaintiff to do the various tasks or whether she is limited in any way in doing them. Yes, Plaintiff can "walk" to the bus stop and wash her face. But neither task-walking upstairs to enter her home or to the bus stop or washing herself, like the many others such as brushing her teeth,

cooking, dressing and cleaning her home detailed above, is done in the same manner as the average person in the general population, which is the critical inquiry under the Americans with Disabilities Act. Plaintiff does not perform these tasks without difficulty or in the same manner as the average person. EEOC Enforcement Guidance Definition of Disability 902.1,. Sec. 902.3 (1995). Also see, 29 CFR Secs.1630.2(g)(1)(2), 29 CFR1630.2(j)(1)(i),(ii), BRAGDON, TURCO, RAY, VELEZ DEL VALLE, LOWE, all supra. Under Defendant's rationale, Plaintiff in this case is in the same category as an Olympic marathoner or a five year old who is able-bodied, and everyone in between including an able-bodied Generation Xer. Under Defendant's rationale, the test would be total disability or utter inability. This is flat out wrong. BRAGDON, *supra.* 29 CFR Secs 1630.2(g), 1630.2(j), Williams v. Toyota, *infra.*

Clearly, she is not able to be mobile, not able to do manual tasks, not able to take care of herself in the same manner as an average person in the general population. When Plaintiff is viewed both realistically and especially when compared to an average able bodied person the average person in the general population, she is substantially impaired – "severely" (as Defendant's examining doctor noted at Exhibit 8 with respect to walking), restricted from doing activities, such as walking and taking care of herself and her home, that are of central importance to most people's daily lives.[1] Toyota v. Williams 534 U.S. 184 at 197-198, 122 S.Ct. 694, 151 L.Ed.2d.615 (2002).

Reinforcing the factual dispute here and underscoring the lack of merit in Defendant's contention that Plaintiff does not have a disability are various documents from Defendant's employees and Defendant's selected medical contractor, Washington Occupational Health Associates, Inc, physician,

---

1 Defendant's argument at III that Plaintiff is not disabled in working is irrelevant here, given the documentation of her being impaired in other major life activities of mobility, performing manual tasks and taking care of herself. If, as Defendant implies, only a person disabled in the major life activity of working could sue for employment discrimination, the ADA the findings of Congress, 42 U.S.C. Sec. 12101 (a)(3)intent to eliminate discrimination, 42 U.S.C.Sec.12101(b)1)and (4) would be negated and the employment provisions, particularly in Titles I and II, 42 U.S.C. Secs.12111 et seq. and 12131 et. seq. would be rendered meaningless.

Dr. Scott. See Exhibits 8,9,10,11,12. Dr. Scott in April 2003(!) noted in his summary that "Ms. Gordon has arthritis that "SEVERELY AFFECTS HER MOBILITY " (emphasis added) and went on to recommend accommodations that included no standing for more than five minutes, no walking for more than 50 yards at a time, no bending or stooping, no reaching above shoulder level, and no lifting or carrying 10lbs or greater." Exhibit 8.

An able bodied person is not limited as Defendant's Dr. Scott documented Plaintiff was. With little or no difficulty, an average person in the general population can stand for more than five minutes, can walk for more than 50 yards at a time, can bend, stoop, reach above shoulder level and lift and carry more than 10lbs. See, MILLER, LOWE,RAY,TURCO, VELEZ DEL VALLE,all supra. Also, see Trobia v. Henderson, 315 F.Supp.2d 322(WD NY 2004) aff'd 143 Fed.App.374 (2d.Cir.2005). Plaintiff's ability to walk for more than 50 yards affects her ability to get to and from the bus stop, get to and from the cafeteria from her classroom in Ballou. Exhibits 1, 2, 4, 5.

Exhibit 8 shows that clearly in terms of this Defendant, Plaintiff had a record of being mobility impaired and that limits one or more major life activities, including walking, and that accommodations were needed, as EEOC and the Department of Justice mandate. 29 CFR Secs. 1630.2(g)(2), 1630.2(j), 1630.9, 28 CFR Secs.35.104, 35.140.

Defendant's claim that Plaintiff is not disabled is also tainted by Defendant's admissions on page 2 of its letter of June 19, 2003, that Plaintiff needs a handicapped bathroom with grab bars and that she cannot walk rapidly. Note also Defendant acknowledges that Plaintiff cannot reach the top shelves. Exhibit 9. This latter admonition and recommended accommodation are consistent with Dr. Scott's recommendation in Exhibit 8, supra. To the same effect, Exhibits 1,2,4,5.

Moreover, Plaintiff clearly was regarded as having a disability by Defendant since at least April

2003. Following Dr. Scott's report which, after reviewing Plaintiff's significant medical history, spells out her "severe" (his word-emphasis added) impairment and recommends accommodation, Exhibit 8, and the filing of the EEOC charge, Exhibit 7, Defendant's actions in then attempting to accommodate Plaintiff show that Defendant regarded Plaintiff as disabled. See Exhibits 9,10,11,12,13,13a. Assuming arguendo, that Plaintiff is not substantially impaired as Defendant contends, there was no reason for Defendant to accommodate Plaintiff, involving the multitude of persons it did, including school administrators and personnel from headquarters facilities management unless Defendant regarded Plaintiff as disabled. Plaintiff is thus also clearly within the third prong of the definition of being disabled under the ADA. 42 U.S.C. Sec.12102(2)(C),29 CFR Sec 1630.2(g)(3) 28 CFR Sec. 35.140 Defendant acted based on Plaintiff's health and limitations as Defendant's chosen medical consultant advised.. Exhibit 8. Mendez v. Geran,956 F.Supp.1520 (ND Cal.1997). Under this prong of the definition, one must examine the employer's actions (not necessarily Plaintiff's actual impairment). It is the employer's perception and treatment of the individual, here, the Plaintiff that is telltale. And here the tale told, e.g. Exhibits 8,9,10,11,12,13,13a. is of stating her medical impairment, recommending accommodations and (AFTER Plaintiff filed her EEOC charge—Exhibit 7)trying to accommodate Plaintiff all in a manner which shows Defendant regarded Plaintiff as impaired. See EEOC Enforcement Guidance 902.1 Definition of Disability, Sec.902.8. (1995)

    Defendant is disregarding and disavowing the obvious, what it has by its own conduct for years acknowledged, namely that Plaintiff is a person with a disability. Cripe v. Department of Transportation, ___F.Supp.__ (Civil No. 03-3306, D.D.C. 2006). Here, as in CRIPE, despite having clear documentation from multiple sources (including its chosen outside medical consultant and in house counsel) that Plaintiff is disabled, e.g. Exhibits 8,9,10,11,12,13,13a) Defendant argues Plaintiff is not disabled and there is no issue of material fact on this question. This defies credibility, reality and, as in CRIPE, must

be rejected as arguably disingenuous.

c. Plaintiff Can Show Defendant Did Not Accommodate Her

Plaintiff has alleged the accommodations she requested were not provided. Rather than provide evidence of actually making (not merely promising) discrete accommodations, Defendant tries to bootstrap its initial flawed argument and interpolate it in the latter part of its filing to also mean Plaintiff cannot show she was not accommodated. Defendant is belatedly speaking out of both sides of its mouth.

Plaintiff alleges and documents confirm that Plaintiff was not effectively accommodated. AFTER Plaintiff filed her charge at EEOC, Defendant took various efforts that Defendant now conveniently overlooks in its Motion Those actions of Defendant were incomplete and proved not to be effective. See, Exhibits 8,9,10,11,12,13,13a, and, as acknowledged its own employee, in a significant instance, not taken. Exhibits 14, 15.

After Plaintiff's complaint to EEOC in April 2003, Exhibit 7, Defendant began to scurry around Ballou and interact with her about making accommodations. Exhibits 9,10,11,12,13,13a are a litany of actions Defendant is to undertake following the filing of the charge. However, despite its paper promises, Defendant did not deliver.

For example, the "ADA Safety Mat" promised in June/July was in fact not delivered until December, 2005, one month before Plaintiff retired in January, 2006! Exhibits 11,13,13a .

For a second example, Defendant's promises in 2003 regarding heating and cooling Plaintiff's classroom, Exhibits 9,10,11, also proved as illusory as its statements in discovery in 2005 about purchasing air conditioners for Plaintiff. Exhibit 6 is two examples of days on which the reality of temperature in Plaintiff's classroom did not comport with Defendant's prior promises, e.g. Exhibit 9,10,11. Moreover, in responding to discovery, Defendant claimed Ms. Wiseman bought an air conditioning unit for Plaintiff. Exhibits 14. Yet Ms. Wiseman testified she bought neither a fan, air

conditioner or heater for Ms. Gordon. Exhibit 15. Wiseman depo at pp.69, 70.Temperature modification/control is a standard form of reasonable accommodation for persons, like Plaintiff, who have arthritis. See Exhibits 16,17, publications of the Job Accommodation Network, on accommodating persons with arthritis. Modifying the work environment or the circumstances under which a job is performed, is a traditional type of reasonable accommodation, long recognized by the EEOC.29 CFR Sec.1630.2(o)(1)(ii), EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act p.1 (1997).

Supply room shelves too high for Plaintiff, Exhibit 9 p2, were not lowered. Exhibits 2, 4. Instead of providing an accommodation of lower shelves, Defendant effectively took the shelf space away from Plaintiff by telling her not to use it. Exhibit 9,p.2.

Moreover, Defendant claims at IV of its brief, Plaintiff cannot show she was not accommodated including about being assigned to meetings on the second floor. See Exhibits 18 and 19 showing Plaintiff being assigned to a group which met on the second floor in school year 2003-04—after she had filed her EEOC complaint and that Plaintiff was directed to mandatory training on the second floor in November, 2005, more than a month after she filed her complaint with this Court.

Clearly there are material facts in dispute here.

d. Summary Judgment is Premature: Discovery Issues Outstanding

Plaintiff is constrained to note that there are at least two discovery issues outstanding, making summary judgment premature. Pending before the Court are motions by the parties, one by Defendant To Quash, a motion seeking to negate Plaintiff's requirement in her Notice of Deposition that the deponents, including Plaintiff's former supervisor, Dr. Bridges, bring their Official Personnel Files, with them to the deposition. The second motion, by Plaintiff, is to extend discovery for an additional period in order that she can complete her adjourned deposition of Dr. Bridges and do other discovery, including

obtaining documents related to Plaintiff's classroom, such as temperature, and Defendant's treatment of her, including making facilities accessible. The Motions have been fully briefed and remain pending. The Motion for Summary Judgment is premature since the outstanding discovery could lead to additional information which could be the basis for the denial of the pending Motion. Moore's Federal Practice 3d, Sec. 56.10(8)(e). The outstanding discovery could, for example, confirm the temperatures Plaintiff noted, Exhibit 6, which are at the core of accommodating a person with arthritis as the Job Accommodation Network notes. Exhibits 16,17.

## IV. Conclusion

It is respectfully submitted that Plaintiff is an otherwise qualified individual with a disability. She is clearly a person who is substantially impaired in walking, manual tasks, and taking care of herself. In this case, when Plaintiff is compared to the average person in the general population, she is clearly disabled. Her record of being impaired has been well known for years to Defendant. The Supreme Court and lower court decisions make clear in interpreting and applying the EEOC regulation that the yardstick is not total or utter inability as Defendant argues. This Plaintiff is disabled, with a record of being impaired as this Defendant has been well aware for years. Also, clearly this Defendant, as the actions of its medical consultant and numerous employees show, regarded this Plaintiff as a person who was disabled. Defendant's protestations to the contrary defy credibility. Plaintiff was not effectively reasonably accommodated. There are genuine issues of material facts here. The Motion should be DENIED.

                                          Respectfully submitted,

                                          CHARLES D. GOLDMAN, ESQ.
                                          Attorney for Appellant
                                          1155 -15th Street, NW.#1004
September 18, 2005                 Washington, DC 20005
                                          202-466-7550 202 4675085(fax)

Certificate of Service

I hereby certify that a copy of the foregoing was faxed and emailed to Michael Bruckheim, Assistant Attorney General, District of Columbia, Washington DC 20001, Michael.Bruckheim@dc.gov this 18th day of September, 2006.

Charles Goldman