Affidavit

Murielene Gordon, under penalty of perjury pursuant to Title 28, United States Code, and the applicable laws of the District of Columbia, deposes and says:

I am the Plaintiff in the case of Gordon v. District of Columbia, Civil No. 05-1905 (EGS). I am a person who is impaired and who was denied accommodations.

I am making this statement in opposition to the Defendant's Motion for Summary Judgment because I feel that Defendant's characterization of my abilities is incomplete to the point that it contains significant factual errors. More specifically:

While I do "walk" up/down the steps of my house to exit/enter it, I do so in extreme pain due to my arthritis. Also, while a normal, able bodied person would walk those steps in a minute or two, it usually takes me at least seven or eight minutes now to traverse that single flight of stairs. That is because I do so with my walker. When I used my cane, such as I did in 2002 and 2003, it still took me at least five full minutes to get up this single flight. If weather conditions are inclement or worse, such as with rain, snow, or ice, it has always and continues to take me even longer.

What I have said about climbing the flight of steps to exit/enter my home is equally true (obviously except for that part about inclement weather) with regard to the steps to my basement. It was my experience in 2002 and 2003 that I would go to the basement at most once a month. Since I have started using a walker I go there even less frequently, hardly ever at all. My grandson does the laundry almost all the time. That was the reason I would go to the basement when I did. Now that he is older (15) he is more capable so I do not have to go down there hardly at all. The same is true with respect to the flight of stairs in my home, again, except for the part related to the weather. To save my energy, my practice if I forget something that is upstairs is to ask my grandson to get it for me or, if he is not around, to do without it.

With respect to basic daily living activities, such as bathing and taking care of myself, I do so in great pain because of my arthritis and take more time that most people I know. For example, while I can bathe, standing up in the shower for more than a few minutes was painful in 2002 and is increasingly so now. Brushing my teeth, which I do with a manual toothbrush, is painful too. It is too painful for me to brush my teeth for two continuous minutes as dentists recommend. I have to stop after less than a minute because of my pain, wait a few minutes and then resume, particularly if I have washed my face before brushing. I do not require assistance because it takes me longer and I am in pain. I would need assistance to do these basic tasks in the time able bodied persons do them or without pain.

I use a shower bench since I cannot stand in the shower. I have used such a bench since middle of 2002.

Because it requires bending over, cutting my toe is too painful because of my arthritis. My grandson or granddaughter has cut my toe nails for the past five years or so.

Although I used to wear makeup (lipstick, foundation, mascara, etc.) since 2000 I have stopped due to the pain of my arthritis of standing to see myself in the mirror to put it on.

I used to wear my hair in corn rows. Because of my arthritis I cannot manage the pain of braiding my hair. About five years ago I had my daughter cut my hair short and I use a wrap on my head. Since 2001 my daughters or granddaughter help me shampoo my hair which I cannot do by myself because of my arthritis.

If I drop something getting dressed or taking care of myself, I often leave on the floor. This has been the case for the past years, particularly the most recent several.

Over the past five years plus I have eaten a lot of cold meals which do not require me to stand for more than 5 minutes to prepare or I do a lot of "cooking" in a microwave. I cannot prepare a normal meal as an able bodied person can. It is too painful for me because of my arthritis to prepare food or cook like an able bodied person. Since January, 2006 I have gotten meals five days a week through the "Meals-On-Wheels" program run out of Providence Hospital. My daughter, Michelle, has brought me meals on weekends over the past several years.

Around the house I have difficulty traversing across my living room or engaging in simple household chores, such as picking up things from the floor. I have a device which helps me since, unlike able-bodied persons bending over is painful for me. Since 2000 it has been painful for me because of my arthritis to change the bed linens. My grandson and daughters help me with this.

When it comes to getting dressed, because of my arthritis I wear clothing that I can pull on and which has velcro closures, not buttons or snaps. Unlike an able bodied person, I experience pain in my fingers when trying to use my fine motor skills to button a button or snap a snap. It takes me much longer now to get dressed than it did before my arthritis worsened in the past few years, i.e. since 2002 onward. I avoid clothing which has to be laced up (blouses, shoes) if there is no one around to me when I am getting dressed. I do not require assistance in dressing, because unlike able bodied persons, I have limited what I wear to clothing which I can put on independently. I buy special bras which have velcro closers in the front because it is too painful for me to try to fasten them if the fasteners are in the back. If I wanted to wear what everyone else wears, including laced blouses or laced shoes, I would need assistance. Since 2000, I have worn only slip-on type shoes, "mules".

I do not have a bathroom on my main floor. For the past several years (at least three) I have used a portable toilet (which I got from the hospital), rather than go up/down stairs to where the toilets are in my house. When I was able bodied, I would use the stairs. Now, the pain is too much for me.

With respect to my getting to work at Ballou Senior High School, Defendant did not ask me how long it took me to get to the bus stop from my home or from the bus stop to Ballou. The bus stop near my home is approximately a short block from my house. In ideal weather conditions (dry, moderate temperatures) it took me anywhere from 20-25 minutes to traverse this short block with the use of my cane, even longer with the use of my walker. I have observed able-bodied persons, such as my grandson or my adult children, walk that same block in less than 10 minutes. When I exited the bus to go to Ballou it was a full city block from the bus stop to the school. With my walker it could take me as long as 35-40 minutes to traverse that distance under ideal weather conditions. With my cane. It would be several minutes less. I would see my colleagues and students walking by me, covering the distance in at most 15 minutes. Bad weather or bad street conditions made it take longer—if I made it to work at all on such bad days.

When I traveled by regular Metrobus to Ballou, in the morning I would have to stop and sit along my neighbors' brick or concrete walls until I reached the bus stop. I could not "walk" the distance using my cane or walker unless I took a break. Able bodied persons walk the block without any such break. While waiting for the bus, to gather my strength and save energy, I would sit down on the concrete wall while waiting for the bus.

Unlike able bodied persons, I could not take any bus to/from work. Because of my mobility impairment due to my arthritis I had to schedule my bus trips to be timed so that I could take buses with lifts for persons with disabilities. Over the past five years at least I have needed to use such lifts. (Now more buses have lifts. However, while I do not know what the percentage was, I do know from my own experience that from 2000 until I started using Metro Access in 2004, not all regular Metro buses had lifts. I had to call periodically to check the schedule of buses with lifts.)

During inclement weather during the period from 2000 onward the weather conditions were a factor in my getting to work. I was particularly concerned about the conditions of the streets and sidewalks. I would send my grandson out to test the conditions. If there was ice or black ice, or the streets were slippery/difficult due to the weather (e.g. snow) I would use my sick leave.

Because of the pain from my arthritis for at least the past five years, gripping tools or brushes is painful. Tools are gripped to carve things which become the basis for the prints. I cannot hold them for more than a few minutes at a time. An able bodied person can just let the art flow through them without the interruptions I experience due to my arthritis. I did printmaking and painting at home as well as taught those classes at Ballou while teaching there.

Painting is difficult for me, particularly when it requires standing at an easel. Standing for more than ten (10) minutes is very painful. In room 111 at Ballou where I was assigned through 2002-2003, there were easels. After 2003, I taught in room 112 which had no easels.

At work in Ballou, the reason I ate in my classroom is that it was painful for me to walk to the cafeteria or teacher's lounge to eat. Unlike my able-bodied colleagues, I needed to save my strength during the day. There was also a practical reason in not going to the cafeteria. It was the equivalent of a block away from my classroom. By the time I would walk there and back, my lunch period of 45 minutes would be over, without leaving me time to order food and eat. My able bodied colleagues could get to the cafeteria and back and still have time to eat/relax/recharge or visit with colleagues. I ate alone except when friends would come to my classroom. One of the people I ate with was Larry Owens, who was a Spanish teacher at Ballou and who came back to visit me after he lost his job in a reduction-in-force.

In my classroom I worked to the best of my abilities and despite my disabilities. I had to work in pain and had to sit more often as I could not stand for extended periods of time. I had to change my teaching style by not going to my students' desks and having them come to me instead. I could not carry things, which is basic for an art teacher. My supply closets, on which the school administration, had placed my supplies, had top shelves over six feet high. I could not reach supplies and had to have my students reach the supplies. I lived in constant fear of not being able to get out of my room in a true emergency because of the locks and chains on the doors that led to the street.

My room, first 111 and later 112 (beginning with school year 2003-04) was in the old section of Ballou. I have heard it was built around 1960. When I came to work in winter it was often cold. When I came in to work, there was nothing on the heat vents, window sills, or radiators. No one had in the classroom overnight and the students had not as yet arrived. In the winter it was often extremely cold and in the summer it was very warm. This affected me because of my arthritis. Attached hereto (as a separate exhibit to the Opposition to the Defendant's Motion) are letters I sent which illustrate my seeking accommodations in 2003-04 school year. I made other verbal requests to Dr. Bridges when he was the Principal at Ballou.

When I filed my internal complaint with DCPS about not being accommodated nothing happened really. I was not even interviewed about the substance of my claim. I then filed at the EEOC and that charge at EEOC in April, 2003. AFTER I filed, DCPS had me come out to Ballou to discuss various accommodations. Correspondence related to that meeting is separately attached as exhibits to the Opposition to the Defendant's Motion for Summary Judgment. Also as separate exhibits are various documents from my EEOC file or which were received from Defendant in the course of this litigation. The documents show activity to accommodate me ---AFTER I filed at EEOC, not before. An ADA mat DCPS promised in summer 2003 did not come to Ballou winter, specifically December, 2005, shortly before I retired in January, 2006. As my letters regarding the temperature, a separate exhibit show, the efforts to accommodate me did not succeed.

Prior to returning to Ballou in 2003 I had to undergo a fitness for duty examination with Dr. Scott at DCPS' request. As his April, 2003, letter (which is attached as a separate

exhibit to the Opposition to the Motion) states, he recognized my impairment and advised DCPS to accommodate me in a number of ways.

Even after I filed my EEOC charge complaining about having to be on the second floor, I was assigned to a work group on the second floor in the 2003-04 school year. I filed this case in September, 2005 and was assigned to mandatory training on the second floor in November, 2005. There are separate exhibits attached to the Opposition to the Motion which document these events.

Because of the pain and effort in getting to/from work, I was very often tired at night. I had to rise extra early to allow for the extra time it took me to get dressed and bathe as well as get to the bus.

As a result of my arthritis and the pain it causes me, unlike my able-bodied colleagues, I am extremely limited in my activities other than work. I do not go to the grocery store or do food shopping except if taken there by one of my children or a friend. On those rare occasions I do go, after a few minutes it is difficult for me to stand up in the aisles to look at the various items to read labels and compare contents price for example. Able bodied persons do not have this problem. If I cannot go, I wind up making a detailed list for my grandson or one of my children.

Because of my arthritis and the mobility impairment related to it and because it drains my strength, I do not engage in many social activities and do not attend church. Due to the pain from my arthritis I have not gone to church, even on Christmas or Easter, for at least ten years. My social activities are usually confined to visiting in my home with my children or grandchildren, who come over. When they come over, they usually bring in food that is pre-cooked or cook for all of us that day (and leave me extra so I will not have to cook for a few days). This is what happens at Christmas and Easter.

While I am an art teacher and an artist, unlike able-bodied persons, I do not go to museums. It is too painful for me to get dressed to go there and to try and get around there.

Respectfully submitted, *Murielene E. Gordon*

MURIELENE GORDON
Dated   9/6/06

Attestation

I hereby certify under penalty or perjury pursuant to Title 28 United States Code and the applicable laws of the District of Columbia that the foregoing AFFIDAVIT is true to the best of my knowledge and belief.

MURIELENE GORDON   *Murielene E. Gordon*
Dated:  9/6/06

306

1    help --

2             MR. GOLDMAN: You can figure, keep

3    figuring.

4             BY MR. BRUCKHEIM:

5        Q    Back in 2002-2003, were you able to wash

6    the dishes at your house?

7        A    If I sat down to do it.

8        Q    Okay. Were you able to vacuum?

9        A    No.

10       Q    Okay. How about dusting?

11       A    If I sat down.

12       Q    Okay. How about doing laundry?

13       A    My grandson does it.

14       Q    Your grandson does the laundry? Okay.

15   How about tending to things outdoors, like yard work.

16   Is that something your grandson would do, as well?

17       A    He doesn't do that. I pay somebody to do

18   that.

19       Q    Oh, okay. Taking out the garbage?

20       A    Grandson is doing it.

21       Q    Yes, I figured it would. Do you have any

22   help who comes to the house to assist with cleaning;