**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MURIELENE GORDON,          )<br>                            )<br>            Plaintiff,       )<br>                            )  Civil Action No. 05-1907 (EGS)<br>       v.                   )<br>                            )<br>DISTRICT OF COLUMBIA,       )<br>                            )<br>            Defendant.      )<br>                            ) | |

**MEMORANDUM OPINION**

Plaintiff Murielene Gordon brings this action against the District of Columbia ("D.C." or "the District") under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Plaintiff alleges that the District failed to accommodate her disability when she was an art teacher employed by the District. Currently pending before the Court are three discovery-related motions and defendant's motion for summary judgment, which primarily argues that plaintiff is not disabled within the meaning of the ADA. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court determines that plaintiff has presented sufficient evidence to demonstrate that she is disabled under the ADA and that she is entitled to additional time to conduct discovery. Therefore, for the reasons stated herein, defendant's motion for summary judgment is **DENIED**, defendant's

1

motion to strike plaintiff's expert witnesses is **DENIED**, defendant's motion to quash subpoenas is **DENIED**, and plaintiff's motion to extend discovery is **GRANTED**.

## BACKGROUND

### I. Factual Background

Plaintiff Murielene Gordon, a resident of D.C., has been successfully employed by the District as a teacher since 1979. Beginning in 1990, she was employed as an art teacher at the Ballou Senior High School. Plaintiff has degenerative arthritis, which affects her mobility and manual dexterity. Plaintiff alleges that while at Ballou, she did not have access to an accessible bathroom, she did not have keys to locked emergency doors, the heating and cooling system was non-functional, the shelves were too high, she did not have access to a copier, and mandatory meetings were held on the second floor. Compl. ¶¶ 12, 14. Plaintiff retired in January 2006.

Plaintiff was deposed in connection with this case in June and July 2006. *See* Def.'s Ex. 1, Gordon Dep. According to answers elicited by defendant's counsel, plaintiff is able to navigate the stairs into her house, up to her second floor, and down to her basement. Until 2004, she used public transportation to commute to work and was able to walk to and from the bus stop, which were distances up to a city block. Plaintiff was capable

of bathing and dressing herself without assistance.  With respect to her ability to work, plaintiff stated that she maintained her full-time status until retirement and that she was at all times capable of performing her job at a high level despite her arthritis.

    Plaintiff has submitted affidavits that clarify and elaborate on the answers given in the deposition.  *See* Pl.'s Exs. 1-5.  According to plaintiff, she required the use of a cane to walk in 2002 and 2003, and thereafter required the use of a walker.  Pl.'s Ex. 1, Aff. of Murielene Gordon.  When she used a cane, it took her at least five minutes to traverse a single flight of stairs.  With her walker, it takes at least seven or eight minutes to do so.  In either case, traversing staircases causes "extreme pain."  *Id.* at 1.  In 2002 to 2003, plaintiff would go down to the basement at most once a month, and since then does so even more rarely, if ever.  The bathroom in her house is located on the second floor.  Due to that fact, plaintiff has since at least 2003 used a portable toilet so that she does not have to climb the stairs.  She also notes that if she ever forgets something upstairs after coming downstairs, she either asks someone else to retrieve it, or does without it.

    Plaintiff admits that she could walk to and from the bus stop until 2004, but explained that she could do so only at a sharply diminished pace.  A city block that able-bodied people

3

could walk in less than 10 minutes would take plaintiff at least 20-25 minutes with her cane, and 35-40 minutes with her walker. It would take even longer in inclement weather. During these one-block walks, plaintiff would have to take a break and rest at least once. If sidewalks were icy or slippery, plaintiff could not walk at all, and would call in sick to work.

While plaintiff can bathe herself and brush her teeth, both activities cause great pain and take more time than average. For instance, plaintiff cannot brush her teeth for more than one minute without taking a break. Due to pain, plaintiff has not worn makeup since 2000 and cannot style her own hair. Since 2001, she requires assistance in order to shampoo her hair. Plaintiff cannot wear clothes or shoes that are fastened with buttons or laces. Finally, plaintiff was limited in her ability to cook, and thus only ate meals that required less than five minutes of preparation or that could be prepared using a microwave oven.

## II. Procedural History

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in April 2003, alleging disability and age discrimination under the ADA and Age Discrimination in Employment Act. Pl.'s Ex. 7. This EEOC complaint apparently followed the filing of an internal discrimination complaint that was dismissed as unsubstantiated.

*Id.* Also, in March 2003, plaintiff was ordered by the District to undergo a "fitness for duty" examination. Pl.'s Ex. 10. After performing a physical examination, Dr. Samuel J. Scott confirmed that plaintiff suffered from arthritis that "severely affected" her mobility. *Id.* Dr. Scott concluded that plaintiff was fit for duty with accommodations that included no standing for more than five minutes at a time, no walking up or down stairs, and no walking more than 50 yards at a time. *Id.*

Plaintiff brought suit in this Court on September 28, 2005, alleging that defendant violated the ADA, Rehabilitation Act, 29 U.S.C. § 794, and the D.C. Human Rights Act, D.C. Code § 1401 *et seq.*, by failing to accommodate her disability. Compl. ¶ 1. During discovery, defendant moved to strike plaintiff's expert witnesses because plaintiff's Rule 26(a)(2) statement did not include any expert reports. *See* Fed. R. Civ. P. 26(a)(2). Soon after, plaintiff served defendant's counsel with notices of deposition for several witnesses, and these notices directed the witnesses to produce their personnel files at the deposition. Defendant moved to quash the subpoenas on the grounds that the personnel files were irrelevant and producing them would invade the deponents' privacy. Discovery was set to conclude on July 19, 2006. On July 18, 2006, plaintiff moved to extend discovery because some documents had not been produced and the deposition of the school principal had not occurred due to the personnel

file dispute.  Defendant opposed this motion, and on the same day filed its motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

## ANALYSIS

**I. Whether Plaintiff is Disabled under the ADA**

The standards for a failure-to-accommodate claim are the same under both the ADA and Rehabilitation Act.  In order to make out a prima facie case, a plaintiff must show: (1) that she was an individual who had a disability within the meaning of the

statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.  *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002) (applying standard to Rehabilitation Act claim); *Brown v. Small*, 2005 WL 736530, at *2 (D.D.C. 2005) (applying standard to ADA claim).  Defendant's primary argument in its summary judgment motion is that plaintiff cannot demonstrate that she is disabled within the meaning of the statutes.

Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(2)(A); *see also* 29 U.S.C. § 705(9)(B) (identically defining "disability" under the Rehabilitation Act).[1]  Thus, a plaintiff is disabled under either statute if: (1) she suffers from an impairment; (2) the impairment limits an activity that constitutes a major life activity under the Act; and (3) the limitation is substantial. *See Haynes v. Williams*, 392 F.3d 478, 481-82 (D.C. Cir. 2004). It is the plaintiff's burden to prove that she is disabled.  *Id.*

---

[1]  The definition of disability also includes having "a record of such an impairment," 42 U.S.C. § 12102(2)(B), or "being regarded as having such an impairment," *id.* § 12102(2)(C).  In addition to allegedly being disabled, plaintiff argues that defendant regarded her as disabled.  The Court need not analyze this prong of the disability standard, however, because plaintiff satisfies the principle definition.

Plaintiff argues that her arthritis is an impairment that substantially limits her in the major life activities of walking, caring for oneself, and performing manual tasks. Arthritis certainly qualifies as an impairment under the statutes. *See Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) ("Because rheumatoid arthritis is a physiological condition that affects the musculoskeletal system, it clearly qualifies as an impairment."); 29 C.F.R. § 1630.2(h)(1).[2] It is also undisputed that walking, caring for oneself, and performing manual tasks are major life activities under the statutes. *See* 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(2)(ii); *see also Toyota*, 534 U.S. at 201 ("[H]ousehold chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should have been part of the assessment of whether respondent was substantially limited in performing manual tasks."). Therefore, the dispositive question is whether plaintiff was substantially limited in performing these activities.

The EEOC regulations define an individual as substantially limited when she is "[u]nable to perform a major life activity

---

[2] While the persuasive authority of the EEOC's regulations is unclear, both the Supreme Court and the D.C. Circuit have assumed without deciding that the regulations are reasonable. *See, e.g., Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 194 (2002); *Thompson v. Rice*, 422 F. Supp. 2d 158, 167 n.8 (D.D.C. 2006). Neither party challenges the applicability of the EEOC regulations in this case.

that the average person in the general population can perform" or when she is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared to the average person in the general population.  29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 10 (D.D.C. 2000). In determining whether an individual is substantially limited in a major life activity, the regulations state that courts should consider: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2).  In *Toyota*, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  534 U.S. at 198.  Although *Toyota* concerned a limitation with regard to the performance of manual tasks, most other circuits have applied its reasoning to other major life activities.  *See, e.g.*, *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 715 (8th Cir. 2003) (collecting cases).

Based on this standard and plaintiff's evidence, which the Court must credit at this stage, the Court concludes that there is sufficient evidence to demonstrate that plaintiff's arthritis

9

substantially limits her in the activity of walking.  No case within this circuit has closely examined when a plaintiff is substantially limited in walking, and defining a precise rule is difficult.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir. 1996) ("It is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA.").  Other circuits have rejected ADA claims when a plaintiff's limitation on walking was moderate instead of severe.  *See, e.g.*, *id.* at 106 (rejecting claim for plaintiff who could not walk more than a mile and had to walk slowly on stairs, but who did not use a cane or walking aid); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 685 (8th Cir. 2003) (rejecting claim for plaintiff who needed rest after a quarter-mile walk, but who did not request a handicapped parking spot); *Black v. Roadway Express, Inc.*, 297 F.3d 445, 451 (6th Cir. 2002) (rejecting claim for plaintiff who could not walk more than two miles, but still could walk and play basketball for exercise); *Moore*, 221 F.3d at 951 (rejecting claim for plaintiff who could walk a mile without difficulty).  On the other hand, ADA claims survive summary judgment when the limitation on walking is severe.  *See EEOC v. Sears, Roebuck, & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (holding that plaintiff who was unable to walk one city block without experiencing numbness was substantially

limited in walking).

The plaintiff in this case presents a severe impairment. Plaintiff required a cane before 2004 and now requires a walker in order to walk.  Plaintiff can traverse stairs only extremely slowly, and doing so causes so much pain that she will not go upstairs to use the bathroom or retrieve an item during the day. Plaintiff has also stated that her pace walking outside is far below that of average people, and she cannot walk even one city block without needing to rest.  Finally, Dr. Scott concluded in 2003 that plaintiff could continue teaching only if she did not have to traverse stairs or walk more than 50 yards at a time. Viewing the evidence in plaintiff's favor, the Court concludes that plaintiff, compared to the average person, was severely restricted in walking non-trivial distances and in traversing stairs, which are central life activities.  *See Toyota*, 534 U.S. at 198; *Sears*, 417 F.3d at 802; *Weigert*, 120 F. Supp. 2d at 10. Therefore, plaintiff can demonstrate that her impairment meets the "substantially limiting" standard, and that she is disabled within the meaning of the ADA and Rehabilitation Act.[3]

---

[3] Although the Court need not reach the issue, plaintiff may also be substantially limited in being able to take care of herself because she takes longer than average to bathe herself and brush her teeth, cannot use buttons or laces on clothing, and requires assistance in order to properly wash her hair.  *See Fenney*, 327 F.3d at 716-17 (holding that plaintiff who had difficulty changing clothes and who took twice as long as an average person to perform his "taking care of himself" tasks could be found substantially limited by a jury).

11

## II. Plaintiff's Need for Accommodations

Defendant's only other argument in its summary judgment motion is that plaintiff's failure-to-accommodate claim fails because she was capable of performing her job even without any accommodations. Defendant's argument, however, plainly misreads the statute.

A failure-to-accommodate claim under the ADA is derived from the statute's definition of discrimination, which includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); *see Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1300 (D.C. Cir. 1998) (en banc). The ADA then defines an "otherwise qualified individual with a disability" to mean someone who "*with or without* reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). Therefore, plaintiff can pursue a failure-to-accommodate claim as an "otherwise qualified individual" because she could essentially perform her job without accommodation. *See id.*

## III. Discovery Motions

Defendant moves to quash plaintiffs' deposition subpoenas on the grounds that the personnel files were irrelevant and

12

producing them would invade the deponents' privacy.  Plaintiff argues that the personnel files are relevant for discovery purposes because they could lead to impeachment evidence for defendant's witnesses, and that the file of the ex-principle is specifically relevant because he handled other ADA claims and was subsequently fired.  In order to resolve this dispute, plaintiff suggests two reasonable compromises: (1) the parties agree on a protective order for the personnel files, or (2) the deponents utilize the files for review at the depositions, but do not disclose them to plaintiff.  Because at least the principal's file is relevant for discovery purposes, *see Wyoming v. USDA*, 208 F.R.D. 449, 452 (D.D.C. 2002), and plaintiffs' proposed compromises are eminently reasonable, the Court directs the depositions to proceed using one of the plaintiff's proposed solutions or some other arrangement agreed to by both parties.

Defendant moves to strike plaintiff's expert witnesses because plaintiff's Rule 26(a)(2) statement did not include any expert reports.  In opposition, plaintiff explains that she lacked the funds necessary to pay her experts prior to the deadline of the Court's scheduling order.  Plaintiff moves to extend discovery because some documents have not been produced and the deposition of the school principal has not occurred due to the personnel file dispute.  Defendant opposes the motion, arguing that further discovery is unnecessary because its summary

judgment motion has merit.  Because proceedings will continue in this case, the Court will extend the time for discovery and allow plaintiff to submit an amended rule 26(a)(2) statement.

## CONCLUSION

Because plaintiff has satisfied her burden at summary judgment to demonstrate that she can establish the prima facie elements of her failure-to-accommodate claims, defendant's motion for summary judgment is **DENIED**.  In addition, defendant's motion to strike plaintiff's expert witnesses is **DENIED,** defendant's motion to quash subpoenas is **DENIED,** and plaintiff's motion to extend discovery is **GRANTED**.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan
            United States District Judge
            March 26, 2007**