Gordon v. District of Columbia, No.05-1907 (EGS)

# Exhibit 3

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

+ + + + +

| | |
|---|---|
| IN THE MATTER OF:<br><br>MURIELENE GORDON,<br><br>　　　Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA<br>PUBLIC SCHOOLS,<br><br>　　　Defendant. | Civil No.<br>05-1907-EGS<br><br>Judge Emmett G.<br>Sullivan<br><br>Magistrate<br>John M. Facciola |

Tuesday, August 7, 2007

Baltimore, Maryland

DEPOSITION OF:

ROBERT SAMUEL MAYER, M.D.

called for examination by counsel for the Defendant, pursuant to agreement, in the Office of the Attorney General, in the Phipps Building, Room 198, at 600 North Wolfe Street, Baltimore, MD, when were present on behalf of the respective parties:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C. 20005-3701       www.nealrgross.com

1   she worked in?

2   A   I believe it was either Montgomery
3   or Prince George's County. But one of the
4   suburban schools.

5   Q   Did Ms. Gordon say anything else
6   to you with respect to the location of the
7   meetings as to how it may have impacted her or
8   her job? Aside from what you said, that she
9   had already stated as she has felt left out of
10  the meetings. Was there anything else that
11  she said to you aside from that?

12  A   Not that I recall.

13  Q   Okay. Okay. Looking at paragraph
14  number 4, which begins, "As a qualified
15  individual with a disability." And ends with
16  a parenthetical, it says that, plaintiff,
17  "That she walks with a walker now." And if
18  you would, this paragraph references your
19  opinion that she should have access to and use
20  of an accessible bathroom that was proximate
21  to her.

22  A   Yes.

1   like that.

2   Q   Okay.  Was it just you and Ms.
3   Gordon or was Mr. Goldman on the line as well?

4   A   Just myself and Ms. Gordon.

5   Q   Okay.  Did Ms. Gordon talk to you
6   about the accessibility of the bathrooms at
7   Ballou?

8   A   Yes.  She was concerned about
9   that.

10  Q   Can you recall what she told you
11  about, about the bathrooms?

12  A   The seat was too low in the
13  bathroom that was nearby her classroom.

14  Q   Did she say where this bathroom
15  was in relation to her classroom?

16  A   No, I don't recall the specifics
17  of that.

18  Q   Did she mention a bathroom that
19  was located within the nurse's suite?

20  A   No.

21  Q   Okay.  Was, based on her
22  statements to you, with respect to the

1   bathroom, was it your impression that she did
2   not have access to a bathroom that
3   accommodated her?
4       A   Yes.  Her impression was that the
5   bathroom that was accessible was too far away
6   for her.
7       Q   And did she tell you that she was
8   unable to go to the bathroom during the day
9   while she was at work?
10      A   I think she stated that it was
11  very difficult for her to go.
12      Q   Okay.  She never told you that she
13  had any accidents as a result of not being
14  able to go, did she?
15      A   No.  She didn't mention that.
16      Q   Okay.  Did she mention that she
17  had any pain or discomfort from not being able
18  to go to the bathroom during the day?
19      A   Yes.  She mentioned, she said that
20  it was uncomfortable and that she had to hold
21  her --
22      Q   She said it was uncomfortable

```
 1    having to, not go to the bathroom during the
 2    day.
 3         A    Right.
 4         Q    Okay.
 5         A    Or plan her day around that.
 6         Q    With respect to, excuse me, with
 7    respect to the shelves, did she tell you if
 8    the shelving of her classroom was too high for
 9    her?
10         A    Yes.  That many items were on
11    shelves that were too high for her to get to.
12         Q    And she said that she wasn't able
13    to use those items?
14         A    She said that she often had to ask
15    students or others to get things down for her.
16         Q    Did she say that whenever she
17    asked somebody to get things down for her that
18    they had refused to do so?
19         A    I don't recall her saying that.
20         Q    Okay.  Did she ever say that she
21    was completely unable to have any kind of
22    access to materials that were located on the
```

1   higher shelves?

2      A   I don't know that she used the
3   term "completely unable". She was just having
4   difficulty obtaining them.

5      Q   Okay. Did she say that she
6   couldn't get them herself so she would have to
7   ask somebody to get them for her?

8      A   Correct.

9      Q   Okay. But she didn't then say, "I
10  wasn't able to use certain resources on the
11  higher shelves because nobody would retrieve
12  them for me."

13     A   I don't recall her saying that
14  specifically. No.

15     Q   Okay. Did she tell you how high,
16  specifically, how high the shelves were in
17  terms of numbers or measurement?

18     A   I don't recall seeing an exact
19  measurement. No. But they were such that she
20  would have had probably needed to use a step
21  ladder or something to get up to them. And
22  she didn't feel safe on that because she was

1   using the walker.
2        Q    Is that what she told you?
3        A    Yes.
4        Q    Okay.  And you never personally
5   saw yourself how high the shelves were.  Is
6   that right?
7        A    No.  All I saw were photographs.
8        MR. GOLDMAN:  Asked and answered.
9   He's already said he never went to the room.
10       BY MR. BRUCKHEIM:
11       Q    When you spoke with Ms. Gordon did
12  you discuss the photographs that were provided
13  to you in the court document that's Exhibit
14  Number 2?
15       A    Yes.  We did briefly.
16       Q    Did you discuss the photographs or
17  any photographs which showed pictures of the
18  shelving in her classroom?
19       A    Yes.  I believe there was a couple
20  of pictures in here.
21       Q    Was, when you looked at this
22  pictures, did they help formulate the basis

1    for your opinion with respect to the shelves
2    as contained in paragraph number 4?
3         A    Yes.  It was apparent that there
4    were many items that were up very high on the
5    shelves.  Hard to reach them.  You know, it's
6    obviously impossible from a photograph to tell
7    exactly how high they are, but it would appear
8    reasonably that many of these things are five
9    feet to eight feet off the ground.
10        Q    Did she say that the things that
11   were five to eight feet off the ground were
12   materials that she had to use on a daily
13   basis?
14        A    No, she didn't.
15        Q    Did she ever say that the
16   materials that were five to eight feet off the
17   ground were were vital for her performing her
18   essential job functions?
19        A    No.
20        Q    While we're looking at the
21   photographs, right after the shelves, I think
22   two pages after the shelves, there's a picture

1     of a toilet.

2     A     Yes.

3     Q     It's kind of on the upper left
4     side of the --

5     A     Yes.

6     Q     Did she talk to you about-- strike
7     that. Did she reference this picture when she
8     was speaking to you about the, about her
9     problems with the bathroom?

10    A     Yes. She said toilet was too low
11    for her.

12    Q     Okay. Looking at the photograph
13    about, would you say that the toiler appears
14    to be too low for her?

15    A     Well it's a 16 inch toilet which
16    is on the lower end of height for a standard
17    toilet. And certainly is not a height for an
18    ADA accessible toilet.

19    Q     Okay.

20    A     Which I believe is 22 or 23
21    inches.

22    Q     So it would be your opinion that

1  Q    And you base your opinion on the
2  doors, would it be fair to say, entirely on
3  Ms. Gordon's representation, to you over the
4  phone, in her reference to these pictures that
5  she provided you with?
6  A    Yes.
7  Q    Did she tell you, while discussing
8  the emergency exit doors, did she tell you her
9  conversation that she was unable to work, due
10 to the doors being chained?
11 A    She felt very unsafe at being at
12 work with the doors chained.
13 Q    She did say that to you?
14 A    Yes.
15 Q    Okay. Did she say anything else
16 with respect to her feelings at work regarding
17 the emergency doors?
18 A    Well, she felt like if there were
19 a fire that this was a huge risk of not only
20 herself being injured but of her students.
21 Q    Did she tell you that she had in
22 fact been injured as a result of the doors

1  being chained?

2  A  No, I think it was more a fear of
3  being injured.

4  Q  Did she tell you that she had made
5  requests to her supervisors to remove the
6  chains from the door?

7  A  I don't recall that specifically,
8  it may have been in these many memos.

9  Q  Okay. The next paragraph very
10 quickly deals with having an accessible copier
11 --

12 A  Yes.

13 Q  -- nearby? Did she mention that
14 to you in her phone conversation?

15 A  I don't know if it was in the
16 phone conversation or in the memos.

17 Q  Okay. Do -- but you recall either
18 seeing it in the memo or hearing it from her
19 on the phone with respect to the copier?

20 A  Yes.

21 Q  Next paragraph talks about
22 accommodations or apprised accommodations.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        www.nealrgross.com

1   memoranda, that indicated to you, that she had

2   gone to Human Resources and filled out any

3   paperwork requesting a transfer?

4       A   I don't recall seeing that.

5       Q   Based upon, based upon your

6   conversation with Ms. Gordon and your physical

7   examination, did you receive any indication

8   that Ms. Gordon was unable to perform her job

9   duties at the school?

10      A   I think that given reasonable

11  accommodations she would be able to perform

12  her job duties.

13      Q   Did you receive any indication

14  that she was unable to perform her job duties

15  in the climate that she had described it to

16  you?

17      A   It sounded like it made it very

18  difficult for her to do that.  And I think

19  that she did attempt that for a couple of

20  years but became increasingly difficult for

21  her.

22      Q   Did she tell you about the type of

1    disability, would it be your opinion that that
2    employee would have to pursue that
3    reassignment through the proper channels of
4    the employer?
5         A    I think that it's, again this is a
6    legal question not a medical question.  I
7    think that it's incumbent upon the employee to
8    request that of their supervisor.  If their
9    supervisor is unable to accommodate them then
10   I think it's incumbent on the supervisor to
11   guide her to whatever other resources there
12   are within the employer to address her
13   grievances.  So it would seem to me, that if
14   the principal felt that these were issues that
15   he couldn't deal with, you know, then he
16   should have sent her to H.R. or whatever
17   system's in place within the school district
18   for addressing them.
19        Q    Did Ms. Gordon tell you how many
20   years of experience she had in the DC Public
21   School System?
22        A    I believe fifteen.

1  A  In terms of specific quotes, no.

2  Q  Do you think that the fact that
3  she was told that she was a liability by the
4  principal, it says, "That this would be a
5  clear indication of a workplace that was
6  hostile to her." Is that right?

7  A  No, I think that's a pretty
8  hostile statement.

9  Q  So you would think that that one
10  statement would indicate a hostile workplace
11  to her because of her disability?

12  A  Yes.

13  Q  Okay. Did Ms. Gordon tell you or
14  did you get the impression from her that she
15  believed that Ballou Highschool didn't want
16  her there?

17  A  She felt that she was being
18  treated as more or less as a second class
19  citizen and that they were unwilling to make
20  accommodations to, you know, make it easier
21  for her to do her job. And that they kept
22  throwing up barriers to whatever requests she