UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MURIELENE GORDON : Civil No. 05-1907
PLAINTIFF : Judge Emmet G. Sullivan
v. :
DISTRICT OF COLUMBIA :
DEFENDANT :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

Comes Plaintiff, through her undersigned attorney and respectfully submits this Opposition to Defendant's Renewed Motion for Summary Judgment ("Renewed Motion"). Plaintiff's filings against Defendant were timely.

Defendant's Renewed Motion is an attempt to continue to avoid responsibility and liability for ongoing violations of the Americans with Disabilities Act, 42 U.S.C. Sec. 12101 et seq. ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794 ("REHAB ACT") and District of Columbia Human Rights Act, Title 2 D.C. Code, Chapter 14 ("DCHR"), including maintaining a hostile work environment, one without reasonable accommodation for Plaintiff. Using the guise of a procedural structure that is a) totally out of sync with the applicable law and the reality of the workplace and b) would create a paperwork avalanche for the courts and agencies, Defendant would excuse its own repeated and ongoing failure to provide Plaintiff with reasonable accommodations in a workplace which was hostile to her because of her disability. Defendant's repeated failure to provide reasonable accommodations included but was not limited to not engaging in the interactive dialog process, not providing Plaintiff an accessible bathroom which she could use without being dependent on someone else for

access to it, not providing safe emergency exits, not adjusting the temperature in her classroom, not providing a transfer, and, even though she was known to be mobility impaired and had no key to an elevator, assigning her to a work group and training on the second floor at Frank Ballou Senior High School ("BALLOU"). The problems were ongoing, occurring before Plaintiff timely filed internally with Defendant, and recurring after filed with EEOC and even after she filed suit.

Defendant avoided/did not engage Plaintiff while violations persisted and now seeks to grossly distort and obfuscate the reasonable accommodation process as a belated excuse to cover Defendant's failures to comply with the law and provide Plaintiff with a safe environment and allow her to work without hostility.

Plaintiff submits that she has timely filed throughout this process and that there are genuine disputes of material facts. Literally, this case, in part, is one of "He said. She said." Thus, summary judgment is inappropriate.

A Statement of Material Facts Not In Dispute, Memorandum of Points and Authorities, as well as proposed Order are enclosed. Defendant's Renewed Motion should be denied.

## II. PLAINTIFF'S LCvR 7 STATEMENT

### a. Statement of Material Facts Not In Dispute

1. Plaintiff is an individual with a disability. She is mobility impaired, substantially impaired in the major life activity of walking. Opinion of the Court March 26, 2007, Docket No. 34 ("OPINION").

2. Plaintiff has degenerative arthritis and has been employed by Defendant at Ballou Senior High School since 1990. Id. Plaintiff used a cane to ambulate in 2002, 2003 and into 2004 when she began using a walker. Id.

3. Plaintiff was employed at Ballou until her retirement in January, 2006. Id.

4. Plaintiff was assigned to Room 111 for the period of time through school year 2002-03.  Thereafter she was assigned to Room 112. Complaint herein, See Exhibit 1, Nos. 197 and 198. While assigned to Room 111, Plaintiff who is 5'9" tall and stoops over because of her health conditions, Exhibit 2,p.1 could not reach the shelves where she was to store her art  supplies. See Plaintiff's Photograph's filed with her 2007 Rule 26(a) Statement, Docket Nos. 35-37 ("RULE 26 PHOTOS") at pp.7-9[1], Exhibit 3, Deposition of Dr. Samuel Mayer at 61:10-15, 62:1-8, 64:3-9, Report of Dr. Mayer with Plaintiff's Rule 26(a) Statement Docket Nos. 35-37 ("MAYER REPORT").

5. In Room 111 there are emergency exit doors which lead directly to concrete path that leads to the street (4th Street SE.)  During Plaintiff's tenure at Ballou in the period after 1999 the emergency exit doors were locked  and /or locked and chained during the time Plaintiff was working in the room.  Plaintiff did not have a key to the emergency exit doors. RULE 26PHOTOS pp.12-17. Exhibit 2, pp.1, 3.

6. Room 111 is not air-conditioned. Exhibit 2, p1.

7. There was no safety mat near the sink in the art room to prevent slipping and falling while she was working at the sink in the normal course of her duties. RULE26PHOTOS p.6, Exhibit 2, p5.

8. Plaintiff's classroom experienced problems with cold air in the winter. This was repeatedly brought to the attention of Defendant. Exhibit 4, Collection of memoranda sent separately by Plaintiff and others commencing in 1999 (and including by her students in 2000) on or about the dates noted therein and collectively to Defendant

---

[1] Page references to photographs exclude the cover page and refer to pages of photographs only.

(Ballou Principal Dr. Bridges) by Plaintiff in October 2002. Exhibit 4. (The photographs attached to said memoranda are included with the RULE26PHOTOS pp.1-5 and were part of the transmittal to Dr. Bridges. Note particularly the photos of students wearing coats in Plaintiff's classroom, p.4.) Also see No. 18 herein, infra.

9. Plaintiff received no response to these memoranda. When Plaintiff attempted to follow up with Dr. Bridges there was no substantive response. Exhibit 2, p2.  As noted infra at no.18, these documents were re-sent  to Dr. Bridges at his request.

10. In September 2001 Plaintiff lost her key to her classroom. It was not replaced until December 2001. The classroom key opened the teachers' bathroom. Plaintiff could not go to the bathroom during this time unless she found someone to let her into it. Exhibit 2, pp 1-2. Also see Nos. 11-13 herein, infra. Dr. Bridges had locked bathrooms in Ballou. Exhibit 5, Deposition of Dr. Arthur Bridges, Ballou Principal, 83:8.

11. None of the teachers' bathrooms are or were accessible to Plaintiff while she was employed there. Exhibit 6 Deposition of David Atkinson (Ballou Facilities Foreman) at 46:8-21. The teacher's bathroom seat is at 16 inches, too low for a person with a disability. It has knob handles on the sink which persons with disabilities cannot use. The door is too narrow for a mobility impaired person. RULE26 PHOTOS at p.11, Exhibit 3, Deposition of Dr. Mayer at 55:22, 59:12-13, 65:15-18, MAYER REPORT, Plaintiff's Rule 26(a) Statement, Docket Nos. 35-37.

12. Unless someone was in the health suite, Plaintiff was not able to use the health suite (Exhibit 1 at no. 237) bathroom. Exhibit 7 Deposition of Plaintiff Murielene Gordon, 332:4-8, Exhibit 2 pp. 1-2, Exhibit 6, Deposition of David Atkinson (Ballou Facilities Foreman) 134:20-135:10.  The health suite had two locks. Plaintiff did not receive one of

the keys to the health suite until the 2003-04 school year. Exhibit 8. The second key to

the health suite at that time was a master key that Defendant did not give her. Exhibit 9.

13. Commencing in school year 2000-2001, Plaintiff had accidents because she was

unable to use the bathroom or get another teacher to cover her class. At other times

she had to hold her water during the day, refrain from urinating. She could not

drink liquids during the day because she could not be assured that she could use

a bathroom if she needed to toilet. She had to plan around not being able to use the

toilet. She was in pain. Exhibit 7 Gordon Deposition 332:1-8, Exhibit 2, pp 1, 5 Exhibit 3,

Deposition of Dr. Mayer, 60:22-61:5.

14. Plaintiff's class was to get new art tables in 2001. The tables had been ordered

for the 2000-2001 school year. Defendant did not tell Plaintiff the art tables arrived.

After learning of the tables' arrival, Plaintiff got students to help take the tables, which

were clearly marked as art tables to her room. Defendant did not assemble them. Plaintiff

and students did. Exhibit 2, p. 2.

15. During the summer of 2002, Plaintiff who has arthritis, had surgery and underwent

rehabilitation on her knees. She provided Defendant (Ballou Principal Dr. Bridges) with

medical information about her condition which made him aware she was not ambulatory

like the average able bodied person. Exhibits 2 at pp.2-3, 10, Exhibit 5 Bridges

Deposition.31:8-32:14.

16. Dr. Bridges told Plaintiff she was a liability and that she would be transferred in

October, 2002. EEOC Complaint, Defendant's Renewed Motion Exhibit No.2 herein and

Complaint herein at Paragraph No. 16.

17. Plaintiff and her daughter, Michelle Rennie, each made multiple efforts to reach Dr.

Bridges in the fall 2002, into the winter 2002-03 in connection with Plaintiff seeking to return to work and be transferred. Messages were left for Dr. Bridges. He did not return their calls. Exhibits 2 at pp. 2-4, 11 at pp. 2-3. Calls were made to Dr. Bridges in October, November, December, 2002 and January, 2003. None were returned. Id.

18. At his request Plaintiff sent Defendant (specifically Dr. Bridges, Ballou Principal) numerous documents in October 2002, relating to heating/temperature in her classroom. The materials provided in October 2002 had been previously provided to Dr. Bridges and others at Ballou. Exhibit 4. Plaintiff did not receive any response. Exhibit 2, p. 2.

19. Plaintiff exhausted all her sick leave and wound up with a significant negative sick leave balance  after not being allowed to return to work. Exhibits 2 at p.2, 12 at pp.1-7 She also suffered emotional harm, i.e. became psychologically depressed, as a result of not being allowed  to return to  work at Ballou (and other events herein). See Report of Keith Miller at Plaintiff's 2007 Rule 26(a) Statement, Docket Nos. 35-37, Exhibit 13 Deposition of   Keith Miller at 61:15-16, 63:3-11.

20. Plaintiff contacted the EEOC in early February 2003, Exhibit 14, and filed her internal complaint with Defendant in March 2003 seeking accommodation and a transfer. Exhibit 15.

21. During the time her complaint with Defendant was pending, Plaintiff again requested reasonable accommodation  from Defendant in March 2003. Exhibit 16. Plaintiff filed her EEOC complaint in April 2003, Defendant's Renewed Motion Exhibit 2. Also see no. 23, infra.

22. Plaintiff was not contacted by Defendant about her complaint. She was not interviewed and was subsequently told by Defendant that she, Mrs. Gordon (Plaintiff)

could file a complaint with the EEOC or District of Columbia Office of Human Rights. Exhibit 17, Exhibit 2, p. 4.

23. In April 2003, Plaintiff filed her complaint with the EEOC stating, inter alia, that she was mobility impaired and gave notice to the Defendant. Renewed Motion, Statement of Fact No.2, Exhibit 2.

24. At that time Plaintiff also gave separate notices and sent separate correspondence to Superintendent Vance of District of Columbia Public Schools and the District of Columbia Office of Human Rights. Exhibits 18, 19. She received no response to these letters. Exhibit 2.

25. In June 2003, Plaintiff met with Defendant at Ballou and some accommodations were promised. Exhibit 20 letter of Valarie Jones to Dr. Bridges ("JONES")

26. Dr. Bridges was in Ballou at the time of Plaintiff's meeting in June, 2003 (no. 25 herein) but did not attend. Exhibit 21. When Plaintiff was at Ballou for her meeting she saw that her art supplies in  Room 111 and her coat had been discarded and notified Defendant at least twice. Id.

27. Work on the teacher's bathroom closest to Plaintiff's classroom was ordered by Defendant in July 2003 and not completed until October 2005. Exhibit No 22 (Browser work orders) p. 6. The work ordered did not include lowering the seat to ADA compliant height (or widening the door).  As of the time Plaintiff retired in January, 2006, the height of the seat in the teacher's bathroom had not been lowered. Exhibit 2p.5. Because the bathrooms were inaccessible at times after she returned to Ballou, Plaintiff had the same problems relating to bathrooms and toileting as she had experienced before she left school in June, 2002. Plaintiff had to hold her urine during the day and could not

drink fluids during the day as an able-bodied person might since she could not be assured there would be a bathroom she could use independently. See no. 13, supra.

.

28. After Plaintiff filed first with DCPS in March, 2003, at EEOC in April 2003, nos. 20,21 herein, in School Year 2003 –2004 (Aug. 2003-June 2004) Defendant assigned Plaintiff to work in a Reading Group of teachers meeting on the second floor in Room 209. Exhibit 23. Also, see no.15 herein.

29. A safety mat for Plaintiff's classroom was ordered in July 2003 but did not arrive until December 2005, about a month before Plaintiff retired! Exhibit 22, p. 6.

30. Room 112 to which Plaintiff was assigned when she returned is not air-conditioned. Exhibit 2. During school year 2003-04 the temperature in Plaintiff's classroom was as high as 85 degrees (October, 2003) and as low as 42 degrees (January, 2004). Exhibit 24.

31. Room 112 has emergency exit doors leading directly to the street. Exhibit 2, p 1. During the time Plaintiff was assigned there those doors were locked and/or locked and chained. Plaintiff did not have a key to the emergency exit doors. Exhibit 2, p. 5, RULE26PHOTOS pp. 12-17.

32. In December, 2003, Defendant's Principal Dr. Bridges berated Plaintiff in front of a full classroom of students (and did not privately discipline her) when a student who had completed his school gave Plaintiff a lunch the student had purchased for Plaintiff with Plaintiff's funds. Plaintiff felt like she was being publicly humiliated. Exhibit 2, p. 5. Dr. Bridges also berated Plaintiff in front of her students when her chair broke. Id., Exhibit 7, Deposition of Murielene Gordon, 321:1-322:5.

33. Plaintiff filed the Complaint herein on September 28, 2005, alleging discrimination, based on disability, reciting that she was mobility impaired. Complaint at para 8.

34. On November 2005, Plaintiff was assigned to training on the second floor at Ballou. Exhibit 25.

35. Plaintiff did not have a key to an elevator to the second floor. She was unable to and did not participate in either the group as assigned or receive the training, Nos. 28 and 34 herein Exhibit 2, pp.5-6.

## b. Plaintiff's Answer to Defendant's Statement of Material Facts Not In Dispute

1. Plaintiff admits that her charge was formally filed with OHR/EEOC on April 18, 2003. Further answering Plaintiff contacted EEOC in February 2003, Exhibit 14 and filed an internal complaint with Defendant, Exhibit 15, prior to filing a formal charge with EEOC.

2. Admitted. Further answering, Plaintiff also gave notice of her claims to Superintendent Vance of Defendant, Exhibit 18.

3. Plaintiff admits she was on sick leave until her sick leave ran out but denies that was her voluntary choice. Plaintiff was told she was a liability by Defendant's Dr. Bridges and to stay home and that she would be transferred. Plaintiff and her daughter made multiple calls to Dr. Bridges, who did not return their calls. Complaint herein at Par. 16 Exhibits 2 at pp.2-4, 11 at pp.2-3, Defendant's Renewed Motion Exhibit 1, Deposition of Murielene Gordon 207:14-19.

4. Plaintiff admits that while on paid sick leave she received her salary. Further answering when Plaintiff's leave was exhausted she was in a leave without pay status since February 3, 2003. Plaintiff's Exhibit 7, Deposition of Murielene Gordon, 201:7-20, Exhibit 12 pp. 8-9, Exhibit 26.

5. Denied. Plaintiff testified that she did not send any written notification to Defendant.

She testified that she told Dr. Bridges that she wanted to come back in October 2002 over the telephone, Deposition 187:19-188:9. She further testified that Dr. Bridges had told her that he was going to transfer her and contacted him again  She sought to return to work. Plaintiff's Exhibit 7 Deposition of Murielene Gordon 190:2-3, 191:4-10, 201:21-202:8. Also see Plaintiff's Exhibits 2 at pp. 2-4, 11 at pp. 2-3.

6. Admitted. Further answering Plaintiff wrote Defendant in response thereto, seeking reasonable accommodations. Exhibit 16.She was not promised accommodations Ballou was to implement until months later, Exhibit 20, and encountered a hostile unaccommodating workplace after she did return. See Plaintiff's Statement of Material Facts, Nos. 20-35, and documents referenced therein, supra.

7. Admitted but denied as a bar to Plaintiff here. Plaintiff requested accommodations and did not receive them, despite the assurance of Defendant. See Plaintiff's Statement of Material Facts Nos. 20-35, supra.

8. Admitted in part. Denied in part. While Plaintiff was cleared to return to work, she was cleared with limitations requiring decreased standing and walking time due to her multiple medical problems, which included severe arthritis. Exhibit 27.  Further answering Plaintiff had requested a transfer and reasonable accommodation. Defendant's response was to have  Plaintiff undergo a Fitness for Duty exam, Plaintiff's Exhibit 28, the result  of which led to communications between the parties, leading to  Defendant sending Exhibit 20.

9. Admitted. Further answering, see answer to Defendant's alleged fact no.3.

10. Objection Vagueness. Further answering, Plaintiff remained at Ballou as an art teacher but in Room 112, not Room 111, as she  was previously assigned. Exhibit 2, p. 1.

Further answering, that Plaintiff worked is not a bar to her recovery, as set forth in

Plaintiff's Memorandum of Points and Authorities at III c, d, e infra. The work

environment at Ballou in which Plaintiff worked was hostile, including, but not limited

to, not accommodating her with such basics as an accessible toilet which she could

independently access, and safe emergency exits, an environment in which she was

publicly berated. See Plaintiff's Statement of Materials Facts, including but not limited to

Nos. 20-35, supra.

## c. Genuine Issues of Material Fact

There are genuine issues of fact here relating to Plaintiff's return to work, when

and under what circumstances there were and were not accommodations, including an

accessible toilet, shelves Plaintiff could reach, safe emergency exit  in place. See,

Memorandum of Points and Authorities at IIIe, infra.


## III. MEMORANDUM OF POINTS AND AUTHORITIES

## a. Standard of Review on Summary Judgment

The Court has made clear that summary judgment should be granted only if the moving

party has shown that there are no genuine issues of material fact and that the moving

party is entitled to judgement as a matter of law. Fed.R. Civ.P.56, Celotex Corp. v.

Cattrett. 477 U.S.317, 322, 9l L.Ed.2d. 265 (1986); Waterhouse v. District of Columbia,

353 U.S. App.D.C. 205, 298 F.3d.989, 991 (D.C.Cir.2002); Moore's Federal Practice

III Para. 56.11(5) (a). In determining whether a genuine issue of material fact exists, the

Court must view all facts in the light most favorable to the non-moving party. Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 5897, 89 L.Ed.2d. 538 (1986),

Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 256, 91 L.Ed.2d.262 (1986).  Here

Plaintiff, the non-moving party, as she did on Defendant's initial Motion for Summary

Judgment, has more than unsupported allegations. Fed.R Civ. P.56(e), Celotex Corp. 477

at 324.

### b. Remedial Nature of Laws Here

The Rehabilitation Act and the Americans with Disabilities Act are broad remedial

legislation designed to correct a long history of discrimination by public entities, such as

by the District of Columbia here. When adopting Section 504 of the Rehab Act, 29

U.S.C. Sec. 794, Congress recognized that society had historically discriminated against

persons with disabilities The legislation condemned the invisibility of the handicapped in

America and responded to the country's "shameful oversights" that caused individuals

with disabilities to live among society "shunted aside, hidden, and ignored." Alexander v

Choate, 469 U.S.287, 296 (1985). The Americans with Disabilities Act (ADA) was

enacted when Congress recognized that the Rehab Act had not met the "compelling

need… for the integration of persons with disabilities into the economic and social

mainstream of American life," S. Rep No.116, 101st Cong. 1st Sess. 20 (1989).  ADA was

enacted to "continue to break down barriers to the integrated participation of people with

Disabilities…." H. R. Rep. No. 485 (III). 101st Cong. 2d Sess. 49-50 (1990), 1990

U.S.C.A.N. 445, 472-473.

     In enacting the ADA, Congress found … (3) discrimination against persons with

disabilities in employment… education  and (5) individuals with disabilities encounter

various forms of discrimination, including outright intentional discrimination… the

discriminatory effects to make modifications to existing facilities and practices…"

42 U.S.C.Sec.12102.  The purpose of the ADA is first and foremost "to create a clear

and comprehensive mandate for the elimination of discrimination against persons with disabilities." 42 U.S.C.Sec.12103.

It is in this context we must examine Defendant's Renewed Motion. Defendant's argument would totally negate the clear legislative intent, and would perpetuate ongoing repeated acts of discrimination through a legal construct which would be a procedural nightmare and paperwork avalanche for individuals with disabilities, agencies and the courts.

### c. Plaintiff Has Alleged Hostile Work Environment; Ongoing Violation

1. Plaintiff's Hostile Work Environment.

Plaintiff has shown in her Statement of Facts and can show at trial that on an ongoing basis she  was denied a functional, safe, accessible, accommodating work environment free of disability based hostility.

Plaintiff's allegations and proof encompass everything in the workplace. To Defendant's Dr. Bridges she was a "liability", one indicator of a hostile work place. Exhibit 3, Deposition of Dr. Mayer, 91:2, Report of Dr. Mayer with Plaintiff's Rule 26a filing, Docket Nos.35-7.  A supervisor's comments are direct evidence of discrimination. Toro Cotto v. Liga Puertorriquena Civil No. 04-1285-HL (D.PR 2007) __F.Supp.__, 34 NDLR 82 (hereinafter "TORO"). Also see Demschick v. Delaware Valley Convalescent Homes Inc, et al .__F.Supp.__, 34 NDLR 220 (Civil No, 05-2251 ED PA. 2007)  a supervisor's remarks are "direct  evidence of discriminatory animus." (Hereinafter  "DEMSCHICK".) Plaintiff was totally ignored, treated as a non-person, getting no response to her calls (and those of her daughter) to Dr. Bridges, Exhibits 2 at pp. 2-4, 11 at pp. 2-3,  her initial filing with  DCPS,  Exhibit 15 and no response from Superintendent

Vance. Exhibit 18, Exhibit 2, p. 4. When Plaintiff, Exhibit 2 at pp. 2-4, and her daughter,
Exhibit 11 at pp. 2-3, repeated called Dr. Bridges about Plaintiff returning to work and a
transfer as an accommodation, their calls were  avoided/evaded by Defendant's Principal
and others at Ballou and at DC Public Schools. Plaintiff's memoranda regarding the
temperature/heat problems were duly submitted to Defendant's Principal Bridges and
elicited no response when sent originally or when at Dr. Bridges' request they were
resent. Exhibits 2 at pp. 2-4, 4. Her classroom emergency exit doors continued to be
locked (some times with chains) long after she filed her complaint with EEOC. See
RULE26PHOTOS pp. 12-17, Exhibit 2, p. 5.

        Defendant's letter to Plaintiff in 2003 directing that she report to work or be
placed on AWOL,  Exhibit 26, is another clear indication of the hostility Plaintiff faced at
that time. Despite all the previous communications, e.g. Exhibit 4, accommodations are
not mentioned by Dr. Bridges in Exhibit 26.  There is no mention of rectifying the
problems of  a cold classroom of which Dr. Bridges' was well aware from the materials
Plaintiff had provided him again at his specific request a mere four months previously.
Exhibit 4. There is no mention of providing her an accessible bathroom, Exhibit 6,
Deposition of Ballou Facilities Foreman David Atkinson, 46:8-21,134:20-135:10, no
mention of fixing the problem with excessively high shelves for supplies, Exhibit 3,
Deposition of Dr. Mayer, 63:3-9, or unlocking the emergency exit doors. In short, in
early 2003 Plaintiff was faced with the same hostile, inaccessible, unsafe and not
accommodating work environment. The only changes of which she was aware
were 1) that Defendant's Principal Bridges had told her that  she was a  'liability" and
would transfer her and then refused  to respond to both Plaintiff's and her daughter's

multiple phone calls about returning to work at Ballou or elsewhere, Exhibits 2 at pp. 2-3,

11 at pp. 2-3 and 2) that Defendant's Principal who had been once again provided

information about the temperature/heating problems in her classroom, Exhibit 4, had not

responded to them. Shortly after Dr. Bridges' letter, Exhibit 26, was received, Plaintiff

also knew that Defendant did not respond to her intake filing with Defendant (sic.

DCPS), Exhibit 15, with a list of accommodations. Rather Defendant questioned her

fitness for duty. Exhibit 28. Plaintiff knew Defendant had closed her internal complaint

without talking to her. Exhibits 15, 17, Exhibit 2, p.3.

      That Plaintiff faced a hostile work environment in 2003 is also evidenced by

what transpired after she returned to Ballou for the 2003-04 school year. Notwithstanding

the assurances of Defendant, Exhibit 20, basic problems remained. The basic

issues relating to her workplace and Dr. Bridges' hostility towards her remained

uncorrected and unabated. The emergency exit doors remained locked. See RULE26

PHOTOGRAPHS at pp 12-17. Also Exhibit 2, p. 5.  The bathrooms and the safety mat

were not worked on until 2005! Id, Exhibit 22 p. 6. The seat in the health suite bathroom

had not been lowered as of the time Plaintiff retired. She had not been given both keys to

the Health Suite so was still dependent on someone being there if she were to want to use

that toilet, Exhibits 8,9, 2 at p5, Exhibit 6,Deposition of David Atkinson, Ballou Facilities

Foreman, 134:20-135:10. The teachers' bathrooms were not accessible. Id at 46:8-21,

Exhibit 3, Deposition of Dr. Mayer, 55:22 59:12-13, 65:15-18, Plaintiff's Rule 26(a)

Statement, Docket Nos. 35-37, MAYER REPORT.  Heating issues in her classroom

remained, evidenced by temperatures as high as 85 degrees and as low as 42 degrees.

Exhibit 24.  Contrary to the claims made by Defendant in responding to Plaintiff's

discovery, no heater, fan or air conditioner was bought for her classroom. Exhibit 29 Defendant's Answers to Interrogatories, No.12, Exhibit 30, Deposition of Ballou Business Manager, Ms. Wiseman, 69:12-70:7. Plaintiff, who clearly was mobility impaired, as the Court found in its OPINION, was not given a key to the elevator and yet was assigned to a work group on the second floor, Exhibit 23. Even after Plaintiff filed the complaint herein on September 28, 2005, alleging disability based discrimination, Defendant did not give Plaintiff a key to the elevator and assigned Plaintiff to training on the second floor. Exhibit 25. Since she was and is mobility impaired, Plaintiff could not participate. Exhibit 2, pp. 5-6. These are hostile, retaliatory acts.

Subsequent to her return for the 2003-04 school year, after Plaintiff had filed her Complaint with Defendant, Exhibit 15 and with EEOC, Exhibit 16 and Defendant's Renewed Motion, Exhibit 2, there were several incidents of verbal hostility and retaliation. In June, 2003, when Plaintiff was in the building for several hours meeting with Defendant regarding accommodations, Dr. Bridges, her supervisor, though in the building did not attend, hurting Plaintiff. Exhibit 2, p. 4. Art supplies she had purchased were trashed. Inquiries related to them, Exhibit 21, were not answered. In December 2003, Plaintiff was verbally berated in front of her classroom by Dr. Bridges after a Ballou student, who had completed his school day, and had passed Plaintiff, Ms. Gordon a lunch he had purchased for her with her funds through her classroom window. This was in December, 2003. In mid February 2004, when Plaintiff's classroom chair broke, Dr. Bridges advised her that there were no chairs in the building and that she had to bring in her own from home. Her students eventually found her a chair at the school.

They also found her a desk when that broke and the school did not replace it. Exhibit 2 at p. 5.

A hostile work environment is a continuing violation of the ADA just as it is of other civil rights law. Plaintiff's work environment was clearly toxic. The hostile work environment must be viewed from the perspective of Plaintiff, the victim. Ellison v. Brady, 924 D.2d 872 (9th Cir. 1991), Cf. EEO Policy Guidance on Current Issues of Sexual Harassment No. 915-050 (1990). MORGAN, DAVIDON, EEOC Compliance Manual, all infra at p. 22.

It is clear that Plaintiff's absence from school is not a bar to her claim of a hostile work environment. Greer v. Paulson, 505 F.3d 1306 (D.C. Cir. 2007). In accord Jensen v. Henderson 315 F3d 854 (8th Cir. 2002), Bray v. Pharmacia Corp/Pfizer, 231 Fed App 132 (3rd Cir. 2007), Duncan v. Mgr. Dept. of Safety, 397 F3d 1300 (10th Cir. 2005), Cornwall v. Robinson 23 F3d.694 (2d Cir.1994).  In GREER, the Court observes that hostility and harassing incidents may occur by telephone or in person during an employee's communication with her employer while she is not working or away. The Court also notes that communication while on leave may form an essential part of a hostile work environment. Richards v. Dept. of Army, 2007 Fed. App.0119N 2007 WLS 57949 (6th Cir. 2007); JENSEN, supra at 861-62. That is precisely what happened here. Plaintiff's attempts (and those of her daughter) to communicate by telephone were ignored. Exhibits 2 at pp. 2-4, 11 at 2-3. This was part of a sad, continuing pattern. Previously, Defendant, including Principal Bridges, substantively ignored Plaintiff's communications related to her work situation and those of others related to problems of lack of heat in her room. Exhibit 4. While out on leave she was

told she was a "liability" and later threatened with being put on AWOL. Complaint herein at para. 16, Exhibit 26. Her internal complaint to Defendant was closed without Plaintiff being interviewed. Exhibits 2 at p. 4, 15, 17. GREER and the related cases in accord are a recognition that in the 2lst century the traditional workplace at the employer's space is impacted by what happens on and offsite. There has been an erosion of psychological boundaries between "home" and "office". After Plaintiff returned to Ballou, she was publicly berated at length, humiliated in front of her class and was not given basic equipment to teach, such as a  teacher's chair and desk or tables for students. Exhibit 2, p. 5. After she returned she found her supplies and personal items had been discarded.  Exhibit 21.

Plaintiff's workplace both before and after she filed her internal complaint with Defendant, Exhibit 15, and contacted EEOC in 2003, Exhibit 14, was different from that of her able-bodied colleagues. The able-bodied teachers could do what we take for granted, come to and work in a functionally heated/cooled environment, go to the bathroom independently –without being dependent on someone to let them in-- (which allowed them to drink coffee or whatever whether with lunch or whenever), not fear for their safety in an emergency,  reach their supplies, and not feel they were a "liability". Plaintiff's workplace was not safe or accessible or emotionally functional. Plaintiff's workplace was permeated with ongoing hostile, discriminatory acts. Cf. Harris v. Forklift Sys. 510 U.S.17, 21 (1993).

While Defendant may not have formally downgraded Plaintiff's performance because she did  not attend meetings on the second floor (Renewed Motion at p. 9), Plaintiff's workplace was significantly adversely affected. Plaintiff became clinically

depressed, making her feel scared, devalued, and unworthy. She had accidents and could not take fluids which would cause her to have to urinate. Defendant made it difficult for Plaintiff to do her job. Exhibit 2 pp. 1,5, Report of Dr. Mayer, Rule 26(a) Statement Docket Nos.35-37, Exhibit 3, Deposition of Dr. Mayer 60:22-61:5, 83:11-20, 87:17-21, Exhibit 13, Deposition of Keith Miller, 63:13, 64:12-65:11. By not allowing Plaintiff to return to work she exhausted her sick leave and had a negative sick leave balance. Exhibit 12 at pp. 7-9. There was real harm. Defendant's theory at p. 9 of its Memorandum, if accepted here, would be an open invitation to employers to be malevolent on a daily basis and then cover up such maliciousness with a good rating and not terminating/disciplining an employee who it, the employer, had psychologically abused in a hostile, unaccommodating, retaliatory, unsafe workplace. Reality here is that Plaintiff was harmed. See references in this paragraph to depositions of Keith Miller and Dr. Mayer, and Mayer Report.

### 2. Ongoing Discrimination

Plaintiff here has alleged multiple ongoing situations/actions of discrimination in her complaint to the Equal Employment Opportunity Commission  which  complaint became the basis for the complaint herein. Buggs-Barbero v. Ranstad US LP, 271 F.Supp2d 120 (D.D.C. 2003). Plaintiff is and has been for years an otherwise qualified individual who was mobility impaired. OPINION.  Exhibit 5, Deposition of Dr. Bridges,31:8-32:14.  Defendant had an ongoing duty to provide Plaintiff reasonable accommodations.  29 CFR Sec.1630.9, EEOC Guidance on Reasonable Accommodation No. 915.002 (2002). This Defendant is and has been well aware of the ongoing need for  accommodation as far back as 1999 and that the lack of

accommodations was an ongoing problem for Plaintiff. See letter and photographs pre-complaint to Defendant, Exhibits 4, 2 at pp.1-3, and RULE 26 PHOTOS as pp.1- 5. Defendant knew for years that Plaintiff was seeking a wide array of accommodations. Exhibits 4, 15, 16, 17, 18. It just chose to ignore Plaintiff's requests. Exhibits 4, 2 at 2-6, Exhibit 11 at pp. 2-3, 16, 23, 25.

Plaintiff sent numerous documents to Defendant before and after filing her complaint with EEOC that related ongoing problems, particularly as related to her being transferred as an accommodation as well as the temperature in her classroom being extremely hot (85 degrees) or cold (42 degrees). Exhibits 2 p. 2, 4, 15, 24. Temperature control is an accepted form of reasonable accommodation for persons, such as Plaintiff, who have arthritis. See, Plaintiff's Rule 26(a) statement, Docket Nos.35-37, at Exhibit 6, materials of the Job Accommodation Network. Also see photographs of classroom (including children wearing coats in Plaintiff's classroom) at RULE26PHOTOGRAPHS pp 1-5. They were part of the information sent to Defendant (including Dr. Bridges) to which there was no substantive response when originally sent or when resent. Exhibits 2 at p. 2, 4.

Defendant was also well aware that the bathrooms at Ballou were a problem. Some were closed, Exhibit 5, Bridges Deposition, 83:1, and the teacher's bathroom toilet seat was and is too high and sink does not have levered handles. See Exhibit 2 at pp.1, 5, RULE26 PHOTOGRAPHS at p11, Exhibit 6, Deposition of David Atkinson, Ballou Facilities, Foreman 46:8-21, 134:20-135:10, Exhibit 3, Deposition of Dr Mayer, 55:22, 65:15-18. While Plaintiff complained in 2003 internally, Exhibit 15 and externally to EEOC complaint, Exhibit 2 to Defendant's Renewed Motion other work was done on

bathrooms –in 2005! Browser report Exhibit 22 p. 6. These bathrooms were not

accessible to Plaintiff. She was not given both keys to the health suite, Exhibits 8, 9, and

could not use the toilet there unless someone was there. Exhibit 6, Deposition of David

Atkinson, 134:20-135:10. The teacher's bathrooms were inaccessible. Id at 46:8-21,

Exhibit 3, Deposition of Dr. Mayer as previously noted in this paragraph, .Exhibit 2,

pp. 1, 5

     An ADA safety mat for Plaintiff's classroom was ordered in 2003 and not

obtained until 2005! Id. RULE26PHOTOS p. 6. Exhibit 22, p. 6. Defendant was

obviously aware of this problem for some time and took an extended period to fix it..

     Plaintiff has also shown, RULE 26 PHOTOS at pp. 12-17, that the exit doors to

her classroom remained locked (some with chains) even after she had filed her complaint

with the EEOC in April, 2003, Defendant's Renewed Motion Exhibit 2, and had received

assurances that they would be unlocked as an accommodation. Exhibit 20. These locked

doors persisted through 2005, even though Defendant was well aware of  the  problem.

Exhibits 2, p. 5, 18, 20.

     It is clear from other civil rights laws, such as Civil Rights Act of 1964, 42 U.S.C.

2000(e) et seq., which were the basis of ADA remedies, 42 U.S.C. Sec. 12117,

that continuing failure to take corrective action is a continuing violation of the law. See,

Jensen v. USPS, 315 F.3d.854 (8th Cir. 2002). See, also Choi v. Chemical Bank. 939

F.Supp.304 (SD NY 1996) in which the court noted that  evidence showing continuing

violations tolled the statute and allowed the court to consider incidents outside the 300

day filing period. Experiences at work can be the basis of a continuing violation. Fleming

v. Verizon, Inc., 419 F. Supp. 2d 456 (SD NY 2005), a principal which is applicable to

public employers, such as Defendant, Svennington v. College of Staten Island, 2003WL

21143076 (unpublished) (E.D.NY 2003). Plaintiff clearly alleged a continuing violation.

Here, Plaintiff has alleged and shown more than isolated incidents. She has alleged

violations that daily affected workplace conditions and situations, such as the ability to go

to the bathroom like any  other teacher or to feel safe in an emergency and feeling too

cold/too hot  in her classroom that are ongoing situations. Where physical access is the

issue, which it is here with issues relating to the bathroom and toileting, emergency exit

doors being locked, extreme cold/heat in the classroom, shelves too high for this disabled

Plaintiff, the need for application of remedial legislation such as the ADA (and the Rehab

Act and DCHRA), **III b. supra**, is particularly important to address ongoing violations.

     The ongoing actions of Defendant in not accommodating this admittedly

mobility impaired Plaintiff with a  transfer, not providing a safe (no safety mat),

one where the emergency exit doors were unlocked, temperature appropriate classroom,

an accessible bathroom, and not assigning her to work/training on the second floor were

all part of the ongoing unlawful discriminatory practice. These conditions were ongoing

aspects, part of the regular, often daily, fabric of Plaintiff's workplace. National Railroad

Passenger Corp. v. Morgan, 536 U.S.101 at 122. Davidson v. America Online, Inc. 337

F3d.1179 (10th Cir.2003). In accord, see EEOC Compliance Manual, Threshold Issues

(Q&A related to reasonable accommodation). Contrary to Defendant's characterization of

 Plaintiff's complaint as untimely, reality is that the issues noted herein are the same

ones which came before and after Plaintiff's EEOC filing. There was never a discussion

with Plaintiff until after she filed with EEOC.  Independent access to an accessible

bathroom, emergency exits,  classroom  temperature and safety mat remained issues well

into 2004 and 2005. RULE26PHOTOS at pp.12-17, Exhibits 2 at p. 5, 22 Browser at p. 6,

24, Exhibit 6, Deposition of David Atkinson, Ballou Facilities Foreman, 46:8-21,134:20-

135:10. There were continuing violations. Duncan v. Mgr., Dept. of Safety, 397 F3d 1300

(10th Cir.2005).

    At the least, as noted <u>infra in 3e</u>, there are disputed questions of material facts

as to whether these are single incidents or ongoing discrimination. Stalter v. Board of

Coop. Educational Services of Rockland County, 235 F.Supp. 2d 323 (SD NY 2002),

Bloom v. New York City Board of Education Teachers Retirement System of the City of

New York, 2003 WL 1740528 (SDNY 2003).

d. Plaintiff Timely Filed: Defendant's Argument On Timeliness Is A Quagmire In Search
of A Morass

    Plaintiff initially filed an internal complaint of discrimination with Defendant

(sic. DCPS) in February 2002, Ex. 15. She was not interviewed at all and then timely

filed her complaint with EEOC. Defendant's Renewed Motion, Exhibit 2. EEOC

has an agreement with the  District of Columbia Office of Human Rights, with whom

Plaintiff's EEOC complaint was cross-filed. 29 CFR Part 1601 at Sec.1601.74. This

complaint clearly states it is a complaint for ongoing discrimination. The box

"Continuing Action" is checked and the complaint recites that "Respondent has

continuously denied me (sic. Plaintiff, here) reasonable accommodation…."  It goes on

at page 2 to note that Defendant here has "created a very hostile work environment for

me." Id. The basic timeframe here is clearly 300 days. EEOC v. Commercial Office

Products, 486 U.S.107, 100 L.Ed2d 96, 108  S.Ct.1666 (1986). See EEOC v. Hacienda

Hotel, 881 F2d. 1504 (9th Cir. 1989), 29 CFR Sec, 1601.74. Defendant acknowledges

this at pp.4-5 of its Memorandum of Points and Authorities. As elaborated upon herein,

infra at pp. 27-28, in connection with Plaintiff's distinguishing of Ledbetter v. Goodyear Tire and Rubber Company, 127 S.Ct.2162 (007) major incidents of discrimination, including the hostile work environment, occurred within the 300 day timeframe and were ongoing discrimination.

Plaintiff respectfully submits that all of the incidents, here are reasonably related and or grow out of the Plaintiff's filing with EEOC, Buggs-Barber, v. Ranstad US LP, 271 F.Supp 2d 120 (D.D.C.). The incidents of a hostile work environment with Defendant, particularly her Principal, Dr. Bridges, occurred before and after she filed. The situation with the problems with the temperature, excessive cold and excessive heat, occurred before and after the complaint. The inaccessible bathrooms were a problem before and after the complaint. Exhibits 2 at pp. 1, 5, 4, Exhibit 7, Deposition of Murielene Gordon 332:8, Exhibit 3, Deposition of Dr. Mayer, 60:22, 61:5, Deposition of David Atkinson, Ballou Facilities Foreman, Exhibit 6, 46:8-21,134:20-135:10. See EEOC Guidance Threshold Issues EEOC Guidance 915.003. Defendant was well aware here of the scope and nature of Plaintiff's needs and claims. Exhibits 20, 18, 16, 15, 4, 2 at pp.1-3. Also see c1, 2 supra.

Defendant at Point II of its argument claims Plaintiff's complaint is untimely as she did not amend it at EEOC or in court. Defendant glosses over the obvious, namely that Plaintiff alleged ongoing discrimination at EEOC, which complaint is the basis of the instant suit. Buggs-Barber v. Ranstad US LP, 271 F.Supp.2d 120 (D.D.C. 2003). Defendant's position would require Plaintiff to file new or amended charges each time she was not accommodated, even when there was a previous outstanding request for accommodation on the same issue.

Defendant's position is out of sync with reality, the law and would create a procedural nightmare. It would lead to a major obfuscation and frustration of the ADA and Rehab Act, procedurally negating their remedial aim, IIIb supra.

Plaintiff, as the Court found in its OPINION, is an otherwise qualified individual with a disability She was so previously. Exhibit 5, Bridges Depos 39:5-40:9. As EEOC makes clear in its Guidance on Reasonable Accommodation, 31:22-32:15 EEOC Guidance 915.002 ("GUIDANCE") (2002) at Questions 4 and authorities cited therein, Plaintiff could seek accommodation at **ANY** time during the period of employment (emphasis added). It does not matter that she sought different or did not previously seek accommodations. Id. Nor does it matter that at times Plaintiff did not use the words "reasonable accommodation" or that others, such as students, wrote and described conditions adverse to Plaintiff's health and sought changes in the classroom, GUIDANCE, Questions 1, 2. The Court at footnote 2 of its OPINION noted the application of the EEOC rules here.

Let us consider Defendant's theory in the context of Plaintiff's day. She comes to Ballou and finds the emergency exit doors locked and her room has an excessive temperature (too hot such as 85 degrees or too cold at 42 degrees, Exhibit 24). She decides to go to the bathroom while she waits for someone to unlock the doors and the temperature in her room to be adjusted so that she is comfortable. Exhibit 5, Bridges Deposition, 39:5-40:9. The bathroom is inaccessible. Under Defendant's theory Plaintiff would have to notify EEOC or the District of Columbia Office of Human Rights first (to exhaust her administrative remedy) or if she had filed in court, file an amendment to her complaint in the morning if her room was too hot and the bathroom was inaccessible to

her because it had not been fixed and no one was in the health suite to let her in to use the

toilet.  Each day this happened it would be actionable, meaning another filing at EEOC

or an amendment to the court complaint.. Under Defendant's theory if Plaintiff had to go

to the bathroom in the afternoon such as before going home and the bathroom was still

inaccessible when Plaintiff sought to use it, it would be another event, requiring another

paper to be filed with EEOC and the Court. Every time Plaintiff did not feel comfortable

in her classroom, Id., and the temperature was not adjusted as an accommodation, see e.g.

Plaintiff's Rule 26 Docket Nos. 35-37, Exhibit 6, Job Accommodation Network

materials, under Defendant's theory Plaintiff would have to file a new document with

EEOC or the Court. Likewise, each day the emergency exits were locked and every time

Plaintiff could not attend her reading group on the second floor, Exhibit 23 or attend a

training on the second floor, Exhibit 25, because of  her  being disabled and not having a

key to the elevator, Exhibit 2 p. 6, would mean yet  another filing.  There would be a

paper avalanche at EEOC and in the Court. The Courts and EEOC would be micro-

managing every employer-employee relationship where accommodation was requested.

　　　　Defendant's reliance on Hobby v. District of Columbia, Civil No. 0701061 RMC,

Defendant Exhibit 3, is misguided at best. As Defendant notes, in footnote 2 of its brief,

HOBBY is NOT (emphasis added) binding on this Court. Moreover, HOBBY is

clearly distinguishable on the facts of the instant matter. Ms. Hobby did not file with

EEOC and the D.C. Office of Human Rights for more than TEN years after the

events about which she complained. Here, Plaintiff wrote to and then timely complained

to EEOC (after initially complaining to no avail(no response) to DCPS, see 4 DCMR

Sec.150) about the ongoing situations in issue. There is no ten year lag as in HOBBY.

Defendant knew what the issues were Exhibit 20. Here, unlike HOBBY, it was the

employer, Defendant, not Plaintiff, who failed to be responsive and failed to act to timely

redress issues of which it was aware. Exhibits 2 at pp. 1-3, 4, 11 at pp. 2-3, 15, 17,

Exhibit 6, Deposition of David Atkinson, Ballou Facilities Foreman, 46:8-21,134:20-

135:10, Exhibit 9, Exhibit 22, Browser Report, p. 6, RULE26PHOTOS.

Ledbetter v. Goodyear Tire and Rubber, Co. Inc. 127 S.Ct.2162 (2007), relied on

by Defendant at Point  III  of Its Memorandum of Points and Authorities is also clearly

distinguishable. LEDBETTER raises questions of the scope of Title VII of the Civil

Rights Act of 1964's application when intentionally discriminatory decisions occurred

outside the statute of limitation but the effect of such a discriminatory decision occurs

within the period of limitations. In this case the discriminatory actions were a series of

incidents which Plaintiff asserts were hostile work environment and ongoing

discrimination.  See, c 1, 2, supra.  In LEDBETTER, there were no issues of a hostile

work environment, no issues of the physical situs of Plaintiff's workplace. Plaintiff

Ledbetter was not called a "liability" and publicly berated. Unlike the Plaintiff in

Ledbetter, Mrs. Gordon had basic work supplies of hers discarded and when her basic

equipment, such as  her  classroom chair broke, Defendant did not replace it. Exhibits 2 at

p. 4, 5, 21. Heating issues related to Plaintiff's classroom and providing her reasonable

accommodation, on which there were multiple communications, Exhibit 4, in

contrast to the situation in  LEDBETTER  were communicated to the Defendant on many

occasions, including in October 2002,  well within the 300 day time  period before

which Plaintiff contacted EEOC, Exhibit 14. Also well within the 300 day timeframe is

Dr. Bridges calling Plaintiff a "liability", Complaint herein at para.16 and the efforts of

Plaintiff and her daughter in connection with her seeking to return to work. Exhibits 2,

11. Plaintiff's RULE26PHOTOS pp 1-17 show conditions, such as related to locked

emergency exit doors, inaccessible shelves, inaccessible bathroom, and cold classroom

that existed within the 300 day period before Plaintiff filed. Exhibit 2. The situation here,

unlike LEDBETTER, involves ongoing failures of Defendant to remove barriers,

literally bricks and mortar and other construction related issues.[2] Application of the ADA

to all events here would be consistent with the legislative intent to eliminate barriers and

the remedial purpose of the law, **IIIb. supra**. MORGAN, DAVIDSON, GREER, all

supra.

Let us now examine Defendant's argument in the context of what the EEOC has

provided as guidance in applying the applicable EEOC rules. See, OPINION footnote 2.

EEOC requires the reasonable accommodation process be an interactive,

informal one. 29 CFR Sec.1630.2 (a)(3), 29 CFR Pt.1630, App.1630.9,  EEOC Guidance

on Reasonable  Accommodation  No.915.002 (2002) ("GUIDANCE") at footnote  29.

The employer should engage in an "informal process to clarify what the individual needs

and identify the appropriate reasonable accommodation." GUIDANCE at Question 5,

Buttlemeyer v. Fort Wayne County Schools, 100 F3d.1281 (7th Cir. 1996). Defendant's

view would totally negate all of this. Under Defendant's theory, the informal dialog

reasonable accommodation process would be turned into a requirement for a formal,

legalistic, and constant paper flow to EEOC and to the court each time a charging

---

[2] A strict application of LEDBETTER, which Plaintiff clearly argues here is incorrect, would be highly inequitable to this Plaintiff, who retired in January 2006, more than a year before LEDBETTER was decided. Applying LEDBETTER retroactively would be prejudicial, a sunburst of new law with an adverse impact on old events.

party/Plaintiff was not being accommodated, including where as here, the individual with a disability had a need for ongoing accommodation, such as to be able to independently use an accessible bathroom,  a room temperature properly adjusted, the ability to exit in an emergency, shelves she could reach, to have all activities, including school committees and training on the first floor and not to be considered a "liability."

Instead of an employer responding promptly to a request for reasonable accommodation as EEOC sets forth, GUIDANCE at Questions 10, 27, Defendant would excuse a Defendant from dialoging, contrary to the EEOC Guidance and  regulatory materials cited hereinabove and require the employee file with EEOC and court again and again and again.

Defendant's theory is particularly onerous when the rationale of the reasonable accommodation process is examined. The reason for an informal dialog is that each party, employer and employee has information the other does not have. Taylor v. Phoenixville School Dist. 184 F.3d. (3rd Cir. 1999).

Let us examine Defendant's theory in the context of Plaintiff's core request for reassignment, a transfer. EEOC recognizes reassignment as a form of reasonable accommodation. 29 CFR Sec.1630.2 (o)(2)(ii) GUIDANCE  text and Qs. 25-31. Defendant not Plaintiff has access to all information as to what appropriate vacancies may exist within the District of Columbia. GUIDANCE at Question 28.  Also see Exhibit 3, Deposition of Dr. Mayer, 89:6-18. At all times throughout the school year Defendant, not Plaintiff, knew if art teacher positions were available, whether a teacher during the school year  had resigned/taken a leave of absence. Under Defendant's theory Plaintiff would have to ask each day for a transfer and then file a new charge with EEOC or

amend her complaint in court each day she was not told of a vacant position or was not transferred.

EEOC has made clear that an employee need not submit multiple requests for reasonable accommodation each time accommodation is needed where the accommodation required  is one likely to be needed on a repeated basis. EEOC Guidance No. 915.003, Implementing Executive Order 13164 (2000) at q. 3.  While the latter was issued to guide agencies implementing Title V of  the  REHAB Act, no lesser standard applies under the ADA 42 U.S.C. Sec. 1201(a). Since employer's duty to reasonably accommodate a qualified individual with a disability is ongoing, failing to provide an accommodation needed on an ongoing basis is an ongoing violation . Here, Plaintiff's needs were ongoing, to be able to independently go to an accessible bathroom, to  reach shelves, to be able to leave through  emergency  exit doors, to have her program  and activities, including training, on the first  floor, to be  free of being considered a  "liability."  Since Plaintiff did not have to make a separate request for accommodation each time she  needed these  accommodations as her needs  were ongoing, she likewise did not have to  repeatedly (if not incessantly ) amend her  charge and her complaint each time these ongoing needs remained unfulfilled.

In summary, Defendant at Point II shirks its responsibility as an employer to engage in  an informal interactive  dialog with an employee seeking an accommodation (particularly an ongoing one, as here) that EEOC  mandates,  shifting it to the employee to the Court and the EEOC. This would result in EEOC and the courts getting far more involved,  being inundated with complaints and amendments, and becoming the manager of all requests for accommodation, de facto and de jure  the personnel director of each

entity, such as Defendant, to whom a request for accommodation was made. This is fundamentally wrong. It was not the legislative or regulatory intent. EEOC v. Convergys Consumer Management Group, Inc., 491F.3d 790, 35 NDLR 26 (8th Cir. 2007) (hereinafter "CONVERGYS"). Plaintiff timely filed.

e. Plaintiff Can Prevail Here: Genuine Issues of Material Fact Preclude Summary Judgment

Plaintiff submits that a reasonable jury could find in her favor and that she can establish violations of the ADA, meeting the four pronged test set forth by the Court in its OPINION. While certain crucial facts have not been disputed, it is abundantly clear that there are genuine issues of material fact, which under the authorities noted **supra** at **IIIa.** including Celotex, Anderson and Matsushita and the authorities noted by the Court in its OPINION, preclude summary judgment on Defendant's Renewed Motion. Moreover, summary judgment is not favored as a tool for resolving employment discrimination cases that involve questions of motive and intent. Breen v. Department of Transportation 283 F3d 839 (C.A.D.C. Cir. 2002), Does I-IV v. D.C, 962 F.Supp. 202 (D.DC 1997), Miller, Wright, Kane, Federal Practice Par. 2732.3.

Here it is undisputed that Plaintiff repeatedly requested accommodation and that she told authorities she had been called a "liability." Exhibits 2p.3, 4, 15, 16, Plaintiff and her EEOC Complaint, Defendant's Renewed Motion Exhibit 2, Complaint herein at parag.16. Defendant's Answer to the Complaint is a denial. Plaintiff contends further that she and her daughter tried to follow up with Defendant, sic. Principal Bridges, on the issues of her work status, including returning to work. Exhibits 2 at pp. 2-4, 11 at pp. 2-3. This is the classic "He said/she said" which precludes summary judgment.

Where the employer is responsible for a breakdown in the reasonable

accommodation process  the employer may be found  to have violated the Americans

with Disabilities Act for failing to accommodate an otherwise qualified individual..

Pantazes v. Jackson, 366 F.Supp.3d 57 at 70 (D.D.C. 2005) (hereinafter "PANTAZES")

Wagers v. Arvinmeritor, Inc.__F. Supp. __. 34 NDLR 34 (CV-0121-SEB-VSS,

S.D.IND. 2007) (hereinafter "WAGERS"). STALTER, CONVERGYS, TORO,

DEMSCHICK, all supra, cf. Krinsky v. Abrams, __ F.Supp. __ (E.D NY), 34 NDLR 237

(O1CV5052 (SLT) (LB) 2007. In this case, contrary to the undocumented assertions of

Defendant, a reasonable jury could find this employer did not engage in the reasonable

accommodation dialog as required  by law. TORO, DEMSCHICK, CONVERGYS,

STALTER, PANTAZES.

      After Plaintiff filed her EEOC complaint, she met with Defendant at Ballou and

a number of accommodations  to be implemented by Ballou were agreed upon. Exhibit

20. However, the promises proved illusory. The failure to provide accommodation

continued and incidents recurred. There are genuine issues of material fact here.

      There are critical factual disputes around the temperature in Plaintiff's room

and Defendant's alleged efforts to accommodate her. Plaintiff asserts that her room was

too cold in winter months and too hot at other times. See heating materials provided

Principal Bridges at Exhibits 4, 24.  Defendant in response to interrogatories claims it

requested an air conditioning  unit for Plaintiff. See Exhibit 29. Interrogatory 12.

On deposition Ms. Wiseman the business manager admitted that she never purchased an

air conditioner, fan or heater for Plaintiff. Deposition of Ms. Wiseman, Ballou Business

Manager, Exhibit 30, 69:5-70:10. Plaintiff requested documents related to the

temperature in Plaintiff's classroom. Defendant did not produce a single document

Defendant prepared related to temperatures in her room, Exhibit 31, no. 3. According to

Ballou Building Engineer Mr. Hamlin the temperature should have been between 66 and

72 degrees, Exhibit 32 Hamlin Deposition, 199:20, 207:21, making Plaintiff, in Dr.

Bridges' word "comfortable." Exhibit 5, Bridges Deposition 39:15-40:9.

Temperature modification is an accepted form of reasonable accommodation for a

person, such as Plaintiff, who has arthritis. See materials of Job Accommodation

Network Plaintiff's Rule 26(a) Statement Docket Nos. 35-37 as Exhibit 6. Defendant has

maintained the temperature  issues were corrected and did produce the Browser Report at

Exhibit 22. Based on the evidence adduced to date, Plaintiff could succeed on the merits

as a reasonable jury could find a failure to accommodate her on this issue. WAGERS,

CONVERGYS, TORO, SALTER.

Contrary to Defendant (Memorandum at p.10) the same likelihood of a jury

verdict for Plaintiff on other issues related to accommodation is also present.

Bathrooms remained inaccessible and locked exit doors are also issues

notwithstanding the promises of Defendant Exhibit 20.  The teacher's bathroom was not

accessible as the toilet seat was and is too high. The sink has regular, not levered handles.

Rule26PHOTOGRAPHS p. 11. Exhibit 3, Deposition of Dr. Mayer, 55:22, 65:15-18.

Also see, United States Department of Justice regulations applicable to state and

local government agencies, such as Defendant here,  28 CFR Sec.35.105 and Appendix

A referenced therein, particularly Sec. 4.16.3 (min. height for toilet 17"-19"), Sec.

4.19.5 (levered and other types of accessible handles, not knobs as Defendant's toilets

had) and 4.13.5  minimum door width 32".  Plaintiff received a key to the Health Suite

but did not receive  a key to the second lock to open the bathroom inside it. Exhibits 2 at

p. 5, 9. Plaintiff could not use the toilet in the health suite unless someone was there. Deposition of Ballou Facilities Foreman David Atkinson, Exhibit 6, 134:20-135:10. Nor could she use the bathrooms in teachers' restroom. Id at 46:8-22.  Bathroom work at Ballou, ordered in 2003 was not completed until 2005. Browser Report Exhibit 22, p. 5. In terms of   liability there is a genuine issue of fact as to whether in that  time there was an accessible bathroom available to Plaintiff. A reasonable jury could certainly find there was not and Defendant was liable.

Notwithstanding the assurances of Defendant, Exhibit 20, Plaintiff encountered locked emergency exit doors in her classroom throughout 2004 and 2005. See Plaintiff's Rule26PHOTOGRAPHS at 12-17. The photographs show locked emergency exit doors in 2004 and 2005, notwithstanding the 2003 Jones letter, Exhibit 20. Defendant produced no photographs related to Plaintiff's classroom as requested in Plaintiff's Request for Production No. 33, nos. 1, 2, 3. Exhibit 2, p. 5. There may be a factual question as to precisely when the doors were locked/unlocked.  A reasonable jury could find for Plaintiff based on her evidence.

Plaintiff has elaborated supra at III c 1, 2, a series of events which are part of ongoing violations in a hostile work environment, including a failure to reasonable accommodate, on which a jury could find for her. At the least, as noted **supra at c.2**, there are genuine factual questions as to whether these are single incidents or ongoing. Stalter v. Board of Coop. Educational Services of Rockland County, 235 F.Supp. 2d 323 (SD NY 2002), Bloom v. New York City Board of Education Teachers Retirement System of the City of New York, 2003. L 1740528 (SDNY 2003).

**IV. Conclusion**

  Plaintiff respectfully submits that the Defendant's Renewed Motion for Summary Judgment disregards clear genuine issues of material facts, relies on precedent which is clearly distinguishable and shifts all the responsibilities an employer has  for engaging in a dialog on reasonable accommodation to the employee under the guise of requiring the employee – even as here-where ongoing discrimination has been alleged – to file amended charges at EEOC and amended complaints in court over events which occur daily in an employee's workday. Defendant would create a virtual paper deluge of amended charges at EEOC and amended complaints in the courts where as here the case involves ongoing discrimination, including a hostile work  environment. The Renewed Motion should be denied.

  Plaintiff notes that this is the second time Defendant has sought summary judgment. Subsequent to the Court's denial of Defendant's initial Motion for Summary Judgment the parties came before the Court in a teleconference connected to a discovery dispute. Based on that dispute, the Court ordered production of documents and that added time for depositions. Docket No. 40.

  Plaintiff requests that in denying the instant Motion, the Court award her costs. Otherwise, there will be no incentive for the Defendant not to file added dilatory motions, further delaying this matter.  Also see, 42 U.S.C. Sec.1988.

  A proposed Order is attached.

          Respectfully submitted,
          /s/
          CHARLES D. GOLDMAN, ESQ. #201509
          Attorney for Plaintiff
          1155-15th Street N.W., #1004
          Washington, DC 2005
          202-4667550 202 4675085 (fax)
February 12, 2008        cdg.gsquared@att.net

Gordon v. District of Columbia, Civil No. 05-1907

Index of Exhibits

1. Schematic Number Map of Frank Ballou Senior High School
2. Affidavit of Plaintiff Murielene Gordon
3. Deposition of Dr. Samuel Mayer (excerpts)
4. Letters sent to Ballou officials (including Dr. Bridges) regarding conditions in Room 111, including cold
5. Deposition of Dr. Arthur Bridges (excerpts)
6. Deposition of David Atkinson, Ballou Facilities Foreman (excerpts)
7. Deposition of Plaintiff Murielene Gordon (excerpts)
8. Plaintiff's receipt of one of the keys to the health suite
9. Memorandum from Ballou Assistant Principal Gross regarding denying Plaintiff key to top lock of health suite
10. Letters sent in summer 2002 to Ballou regarding Plaintiff's health
11. Affidavit of Michelle Rennie
12. Plaintiff's pay slip documentation, including pay status and leave balances, 11/02-2/07 and 2/22/03-3/07/03, 4/19/03-5/02/03
13. Deposition of Keith Miller (excerpts)
14. Plaintiff's letter to EEOC and EEOC Questionnaire
15. Plaintiff's Pre-Complaint Questionnaire (Internal Complaint) DCPS
16. Plaintiff's Letter to Defendant (Dr. Bridges) March 3, 20003 (sic.2003)
17. Letter to Plaintiff from Defendant 4/03
18. Letter to Superintendent DCPS Vance 4/03
19. Letter to District of Columbia Office of Human Rights 4/03
20. Defendant letter to Ballou Principal Bridges 6/03
21. Plaintiff's Letters to Defendant (Ballou Principal Bridges) 6/03, 7/03
22. Service Order Browser Report
23. Ballou Mathematics and Reading Cluster Assignments SY 2003-2004
24. Memoranda from Plaintiff to Defendant (Ballou Principal Bridges 10/2/03 and 1/29/04
25. Training and Grade Entry from Defendant (Ballou Principal Smith) 11/7/05
26. Letter to Plaintiff from Defendant (Ballou Principal Bridges) 2/26/03
27. Letter from Plaintiff's doctor provided Defendant 3/03
28. Fitness for Duty Correspondence 4/7/03, 4/12/03
29. Defendant's Answers to Plaintiff's First Set of Interrogatories (excerpts)
30. Deposition of Patricia Wiseman, Ballou Business Manager (excerpts)
31. Defendant's Revised Answers to Plaintiff's First Request for Production (excepts|
32. Deposition of Ernest Hamlin, Ballou Engineer, Excerpts