Gordon v. District of Columbia, No.05-1907 (EGS)

# Exhibit 7

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MURIELENE GORDON,

      Plaintiff,

v.                                    CA No. 05-1907
                                         (EGS)
DISTRICT OF COLUMBIA,

      Defendant.

June 29, 2006

DEPOSITION OF:

MURIELENE GORDON

called for examination by counsel for the

Defendant, pursuant to notice, at the law

offices of Charles D. Goldman, Suite 1004,

1155 15th Street, Northwest, Washington, D.C.,

at 10:13 a.m., when were present on behalf of

the respective parties:

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVENUE, N.W.
(202) 234-4433          WASHINGTON, D.C. 20005          (202) 234-4433

190

1    contacting him, he had -- he -- he said he

2    didn't want me there, that he was going to

3    transfer me, he was going downtown to get --

4    to fill out the transfer papers and feeling

5    that he didn't want me there and he had more

6    power than I did, I did not know.  I didn't

7    write any memos.

8         Q    Okay.

9         A    No.  That's what he wanted.

10         Q    And you never just showed up for

11    work when you were done with your sick leave,

12    just walk in through the door and say I'm here

13    for work?

14         A    When he said I don't want you

15    there, don't come in?

16         Q    Yes.

17         A    That I'm -- no.

18         Q    You never did that?

19         A    No, I did not.

20         Q    Okay.  In your request for your

21    sick leave you had stated that you were going

22    to undergo extensive physical therapy in

191

1    August and September of 2002?  Is that right?

2    And again, I'm basing this on what you allege

3    in your complaint in Exhibit 9.

4         A    Okay.   September I contacted Dr.

5    Bridges  by  phone  to  request  what  was  my

6    teacher status.   This was after he had said

7    that I was a liability.  Sit tight.  I'm going

8    to transfer you to another school.  Okay?  And

9    I'll  notify  you  as  to  where  you're  going,

10   whether it's elementary or secondary.

11        Q    Okay.

12        A    All right?

13        Q    Ms.    Gordon,    I'm    sorry    to

14   interrupt.  I'm not asking a question about

15   what Dr. Bridges said?

16        A    What are you asking?

17        Q    I'm  asking  a  question  about  the

18   therapy that you received while you were out,

19   the  reason  why  you  had  initially  requested

20   sick leave to be out for that period of time

21   from  September  2002  until  late  October  of

22   2002.

201

1    A    -- her response led me to believe

2    that it wouldn't be any use in -- in doing

3    that.  That was her -- her response.

4        Q    Okay.

5        A    But I first went initially through

6    her.

7        Q    For the time period in 2002,

8    beginning of 2002/2003 school year up until

9    the point that you were placed on leave

10   without pay status, you were on sick leave, is

11   that correct?

12       A    When I was not at Ballou?

13       Q    Yes.

14       A    Is that what you're saying?

15       Q    In 2002 to 2003, prior to the time

16   that you were placed on leave without pay

17   status you were on sick leave, is that

18   correct?

19       A    Sick Leave Bank, yes.

20       Q    Okay.

21       A    Yes.

22       Q    Okay.    And when your therapy

202

1    concluded in October of 2002, you sought to

2    return to work, is that correct?

3           A    (No audible response.)

4           Q    Ms. Gordon, can I ask what you're

5    looking at?

6           A    My -- it's my time line.

7           Q    That's your time line?

8           A    Yes, sir.

9           Q    When did you make out that time

10   line?  When did you write that?

11          A    What do you mean when did I write

12   it?

13          Q    When in time did you write your

14   time line?

15          A    I don't remember when.

16          Q    Did you write these things down as

17   they were happening?

18          A    Yes.

19          Q    Okay.

20               MR. BRUCKHEIM:   Counsel, I'd like

21   a copy of that time line.

22               MR. GOLDMAN:   We'll make it for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVENUE, N.W.
(202) 234-4433                 WASHINGTON, D.C. 20005                 (202) 234-4433

206

```
1      and tell me if you recognize that letter?

2              A    Okay.

3              Q    Do you recognize this letter?

4              A    Sure.

5              Q    Okay.

6              A    Yes.

7              Q    This is a letter dated February

8      26th, 2003 addressed to you, signed from

9      principal Dr. Bridges.   Is this the letter

10     that you were talking about before that

11     informed you that you were on leave without

12     pay since February 3rd, 2003?

13             A    Yes.

14             Q    Okay.   And this letter informed

15     you that being absent without leave is grounds

16     for disciplinary proceedings, is that correct?

17             A    Yes.

18             Q    Okay.   And in the third paragraph

19     of this letter you were directed to report for

20     duty by 8:30 a.m. on Monday March 10th, 2003,

21     is that correct?

22             A    That's correct.
```

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVENUE, N.W.
WASHINGTON, D.C. 20005
(202) 234-4433                                    (202) 234-4433

321

1    all, Dr. Bridges would come into my classroom, and he

2    would berate me in front of my students in my face.

3    He would get in my face and holler at me in my face.

4          Q      When is this?

5          A      When?

6          Q      Yes.

7          A      The incident when I fell, when the chair

8    broke, my teacher chair broke and I couldn't get up.

9          Q      Okay.

10         A      And when he found out about it, he came

11   into the classroom, and told me that I had to keep my

12   door open at all times, that I wasn't to lock my door.

13   I asked him about getting a chair because I didn't

14   have a teacher chair.  I was sitting in one of those

15   hard plastic chairs the students sit in.  He said --

16    he hollered at me and said there was no chairs in the

17   building, that I could bring a chair from home.  When

18   the table broke, my desk broke, which the legs on the

19   desk was broke.

20         Q      Okay.  When was that?

21         A      This was shortly after the chair broke,

22   that incident, it's documented.  They refused to get

322

1    me a teacher desk to work on.  I had to work out of

2    boxes, cardboard boxes around my desk.  This is how I

3    had to work and do my lessons until my students felt

4    sorry for me, went scouting for a desk for me to work

5    with, and they went and got a desk.  I was told that

6    I couldn't use my microwave, that I had to - please

7    excuse me.  I'm just revisiting, that's all.

8              MR. GOLDMAN:  Do you need a moment to go

9    off the record?  We'll take a break.  Do you need a

10   minute?  We'll go off the record for a minute,

11   counsel.

12             MR. BRUCKHEIM:  Sure.

13             MR. GOLDMAN:  Okay.  Thank you.

14             (Whereupon, the proceedings went off the

15   record at 1:18:10 p.m. and went back on the record at

16   1:18:34 p.m.)

17             MR. GOLDMAN:  Okay.  Back on.

18             BY MR. BRUCKHEIM:

19        Q    You just told me about the microwave.

20             MR. GOLDMAN:  You just started to talk

21   about it.  You hadn't said anything.

22             THE WITNESS:  Yes.  I did not want to slip

332

1    A    No, but I may have had an infection

2  because I had to hold my urine because there was no

3  way I could go to the bathroom.

4    Q    But you did just testify that you used the

5  facilities in the nurse's suite.  Correct?

6    A    When she was there, yes.

7    Q    Okay.

8    A    I had to figure out when she was there.

9    Q    And then you would go, if you had to go.

10    A    Yes.

11    Q    Okay.  I'm going to show you what's been

12  marked as exhibit --

13        MR. GOLDMAN:  I'm sorry, counsel.  Are you

14  done with this document?

15        MR. BRUCKHEIM:  Yes, I am.

16        MR. GOLDMAN:  Okay.  Thank you.  Pardon

17  me.

18        MR. BRUCKHEIM:  This has been marked as

19  Exhibit 30.  I'd ask you to take a look at that.

20        THE WITNESS:  Yes.

21              (Whereupon, Exhibit No. 30 was

22              marked for identification.)

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVENUE, N.W.
(202) 234-4433          WASHINGTON, D.C. 20005          (202) 234-4433