**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MURIELENE GORDON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-1907 (EGS) |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant District of Columbia (the "District"), by and through undersigned counsel and pursuant to FRCP 56(b), hereby submits the following Reply to Plaintiff's Opposition to its Renewed Motion for Summary Judgment.

**I.   PLAINTIFF'S CLAIMS ARE TIME BARRED UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT**

Plaintiff seeks to hold the District liable under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq.*, because it allegedly failed to accommodate her disability. *See generally*, Plaintiff's Complaint. In her opposition to the District's dispositive motion, plaintiff shifts her theory of the case from that of the District's alleged failure to accommodate to one of hostile work environment.[1] *See generally,* Plaintiff's Opposition, Court Docket, #44. Plaintiff has not met her burden to defeat the District's entitlement to summary judgment.

---

[1] Plaintiff has not pled a cause of action for hostile work environment in her Complaint. *See generally,* Plaintiff's

### a) The Actions Alleged in Plaintiff's Complaint are Time Barred.

Despite the volume of inadmissible materials submitted by plaintiff in opposition to the District's motion, several facts remain undisputed that ultimately prove fatal to plaintiff's claim. First, it is undisputed that plaintiff did not file her EEOC complaint until April 18, 2003. Exhibit #1, Deposition of Murielene Gordon, p. 110:12-111:7. Pursuant to the procedures set forth in 42 U. S. C. § 2000e-5(e), an administrative complaint, or "charge," must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unfair employment practice, unless the complainant has first instituted proceedings with a state or local agency, in which case the limitations period is extended to a maximum of 300 days. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 127 S.Ct. 2162 (2007) (citing 42 U.S.C. § 2000e-5(e)(1). *See also, Lorance v. AT&T Technologies*, 490 U.S. 900, 904 n. 2 (1989).

Under the 180-day rule, plaintiff would be barred from pursuing any claims that allegedly occurred prior to October 18, 2002, since she did not file her charge until April 18, 2003. Because she never amended her complaint, she is also barred from pursuing any claims that allegedly occurred after April 18, 2003.[2] Plaintiff cannot sustain any allegations about whether she was accommodated in October, 2002, because it is undisputed that plaintiff **never** appeared for work between June, 2002 and August, 2003. *See* Exhibit #1, Deposition of Murielene Gordon, p.233:10-19. *See also*, Exhibit #4, Plaintiff's Response to Interrogatory #14 (in which she avers that she was not cleared to work during the 2002-2003 school year until October 2002, but did not return to work until the fall of 2003).

---

Complaint.
[2] Plaintiff ignored this point in her opposition as she continued to argue alleged instances of "discrimination" that occurred in 2004 and 2005. Not only did plaintiff fail to amend her EEOC complaint, she also failed to amend her Complaint before this Court. Plaintiff's Complaint only refers to allegations contained within the 2002-03 school year. Thus, plaintiff's failure to amend her complaints at either level precluded those claims from litigation before this Court.

Thus, plaintiff cannot attest to what accommodations may have been in place for her during the 2002-03 school year because she has no personal knowledge. By her own admission, she was absent from work. The last time plaintiff appeared for work was June, 2002. Because she did not file her EEOC complaint until April 18, 2003, any accommodations that allegedly were not provided prior to June, 2002, are also summarily time-barred.

Plaintiff attempts to overcome her time bar by reliance on the continuing violation theory for her claims against this defendant. *See Lempres v. CBS, Inc.*, 916 F. Supp. 15, 21 (D.D.C. 1996). A continuing violation can be established if: (i) an actual violation of the DCHRA occurred during the statutory period; and (ii) the discriminatory act that serves as the basis of the complaint was part of a series of related discriminatory acts, or was caused by a discriminatory system in effect both before and during the limitations period. *Lempres,* 916 F. Supp. at 21. In *McPartland v. American Broadcasting Companies, Inc.*, 623 F.Supp. 1334, 1339 (1985), citing. *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C. Cir. 1982) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 232 (1979)), the Court held that a plaintiff "may not circumvent Title VII's stringent time limits merely by characterizing a completed act of discrimination as a 'continuing violation,' . . ." Moreover, "[c]onclusory allegations of discrimination are insufficient to satisfy the requirements of Fed. R. Civ. P. 56(e) that the party opposing summary judgment must set forth specific facts demonstrating that a genuine issue of material fact exists." *Id*.

In this instance, plaintiff is arguing that specific instances of defendant's alleged failure to accommodate her dates back to 1999. Plaintiff has clearly disregarded the law of the District. A discrete retaliatory or discriminatory act, such as a "termination, failure to promote, denial of transfer, or refusal to hire occurred on the day that it happened." *Morgan*, 536 U.S. at 110. In

*Mayers v. Laborers' Health and Safety Fund of North America,* 478 F.3d 364 (D.C. Cir. 2007), this Circuit found that the defendant employer's "failure to provide [an accommodation] was a discrete act of discrimination…" *Mayers,* 478 F.3d at 368.

Plaintiff's argument therefore must fail. The alleged failures to accommodate her were not part of a continuing violation, but rather separate and discrete acts. As noted *supra,* Plaintiff's EEOC complaint contains no specific allegations that she requested and was denied an accommodation within the relevant time frame of October 18, 2002 through April 18, 2003. In the absence of any such allegations, plaintiff's claims are untimely and the District is entitled to judgment as a matter of law with respect to plaintiff's allegations that the District failed to accommodate her disability.[3]

### b) Plaintiff Cannot Maintain Nor Prove A Hostile Work Environment Claim Against this Defendant.

In an attempt to save her claims from dismissal, plaintiff shifts gears in her opposition, and for the first time in this litigation, characterizes her complaint as one of "hostile work environment." See Complaint, generally. No where in her Complaint, filed on September 28, 2005, is there a claim for a hostile work environment under either the American with Disabilities Act, Rehabilitation Act, or the D.C. Human Rights Act. See Docket Entry #1. Because plaintiff's Complaint does not comply with the notice requirements of Fed. R. Civ. P. 8 for any

---

[3] Even if accepted by this Court, plaintiff's allegation of hostile work environment could not survive. Aside from the fact that plaintiff's Complaint reveals that there is no claim of hostile work environment pending before this Court, plaintiff can only establish a *prima facie* case of hostile work environment if she can demonstrate that: (1) she is a member of a protected class; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on membership in the protected class; and (4) the harassment is severe or pervasive enough to affect a term, condition, or privilege of employment. *Daka, Inc. v. Breiner*, 711 A.2d 86, 92 (D.C. 1998) citing *Howard University v. Best*, 484 A.2d 958, 978 (D.C. 1984). In this instance, there is no evidence that plaintiff was subject to unwelcome harassment based on her disability. There is no evidence of comments or statements or any type of negative treatment by defendant. In fact, most of plaintiff's complaint on this issue alleges that plaintiff was *ignored* with no communication at all. Moreover, plaintiff cannot prove that her allegations constant severe and pervasive conduct to affect her employment. A lone alleged statement that she was referred to as a "liability" does not meet the standard of pervasiveness. Furthermore, her employment remained unaffected as she continued to remain employed despite her insubordination until her voluntary retirement in 2006.

hostile work environment claim against this defendant, this Court should summarily disregard plaintiff's arguments seeking to establish a hostile work environment claim.

"A violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-3, can occur when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment." *See Okoroji v. District of Columbia,* 1998 U.S. Dist. LEXIS 10704 (July 8, 1998). In *Okoroji,* plaintiff claimed that her supervisor regularly insulted her national heritage, and often ridiculed her as a Nigerian. The Court found that plaintiff offered scant evidence or testimony to support her allegations. "She did not present any credible testimony to bolster her Complaint, and, although she filed a complaint with the EEOC against [her supervisor], her case was never concluded, and the EEOC never made any findings. Plaintiff's bare allegations alone are insufficient to prove her claim of hostile workplace discrimination, especially in light of her inability to present consistent, credible testimony in her favor." In this case, while plaintiff makes conclusory allegations that a hostile work environment existed, there is an absence in this record of evidence to support her claim. *See* Opposition, generally. Plaintiff avers that on one occasion Dr. Bridges informed her that she was a liability. She avers that her classroom was cold in the winter and hot at other times, and that she did not have access to an accessible bathroom, or keys to her classroom. Plaintiff's claims do not evidence any intent or evil motive, nor are they sufficiently severe to rise to the level of a hostile work environment.

II. **PLAINTIFF HAS FAILED TO ESTABLISH THAT THE DISTRICT DISCRIMINATED AGAINST HER BASED ON HER ALLEGED DISABILITY IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT, THE REHABILITATION ACT, AND/OR THE D.C. HUMAN RIGHTS ACT**

    a) **Plaintiff Has Not Shown that Her Claimed Disability Affected Her Ability to Work, and this Defendant Is Liable to Her.**

In the present case, plaintiff seeks to hold the District liable for its alleged failure to accommodate her claimed disability. *See* Opposition, generally. The purpose of accommodations to an employee is to assist that employee to perform his/her job functions. Nowhere in her opposition, or the evidence adduced during discovery, does plaintiff assert that her condition affected her ability to work. In fact, she avers that she maintained her full-time status at Ballou until she retired in January 2006. *See* Court Docket #20, District of Columbia's Motion for Summary Judgment, Attachment #1, Gordon dep., at 32:15-33. Plaintiff described herself as an "excellent teacher," and testified that she did not have to walk or stand in order to teach her class. *See id.,* Gordon dep., at 88:13-17; 90:13-22; 92:1-22. Plaintiff stated that she was capable of performing her job at a high level despite her arthritis and her use of a cane. *See id.,* Gordon dep., at 106:6-10. Although plaintiff claims not to have had a key for her classroom, plaintiff testified that she was always able to leave her classroom in an emergency situation. *See id.,* Gordon dep., at 158:7-12. There is no evidence that this defendant discriminated against plaintiff on the basis of her condition, or that its alleged failure to accommodate her alleged disability prevented her from performing her job functions. More importantly, there is no evidence that the requested accommodations were needed for her to perform her work at DCPS. Based on this record, no reasonable juror could find that the District violated either the ADA, RA, or the DHRA.

### b) **Plaintiff Has Not Shown that She Was Discriminated Against Because of Her Disability.**

Despite dedicating nearly 100 pages in paper to oppose the District's motion, plaintiff has failed to address the issue of why she never reported to work despite *wanting* to report to work…and then insubordinately refused to report to work *after* she was ordered to do so. During deposition, plaintiff admitted that she never received anything in writing that notified her that she was not permitted to return to work. Exhibit #1, Deposition of Murielene Gordon, p. 186:17 -187:2. Plaintiff further testified that she made no attempt to return to work. *Id.,* at 187:13-188:7. Plaintiff admits that by letter, dated February 26, 2003, Dr. Bridges instructed her to report to duty by March 10, 2003, but she refused and/or failed to do so. *Id.,* at 205:16 through 207:18.

In order to prevail on her disparate treatment claim against the District, plaintiff must set forth a *prima facie* case of discrimination, and prove the following factors: (1) that she belongs to one or more protected classes; (2) that she was qualified for her position; (3) that she was subjected to an adverse action; and (4) that the District took adverse action against her because she is a member of a protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The D.C. Circuit Court of Appeals has held that, "to establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" *Stewart*, 275 F.3d at 1134 (quoting *Brown*, 199 F.3d at 452). In this instance, plaintiff did not suffer a change in her employment status related to any alleged discriminatory misconduct by this defendant. At her deposition, plaintiff testified that not only had she applied for and received extended sick leave through October 2002, due to her plans to have surgery, but she also remained absent on sick leave up until the point in 2003 when her sick leave ran out.

While plaintiff exhausted her sick leave, there is no evidence that the District was required to continue to pay her during a time when she was away from the office, and was cleared to return to work.

Plaintiff claims to have "thought of going to Ballou, but [she] had not been able to reach Dr. Bridges to make an appointment." Plaintiff's Opposition, Exhibit #2, Affidavit, p.4. As noted *supra,* plaintiff had received nothing in writing telling her to stay home from work. In fact, plaintiff received a letter from Ballou, dated February 26, 2003, which informed her that she was currently on absent without leave status. Exhibit #1, Deposition of Murielene Gordon, at 205:16-207:18. Plaintiff was directed to report to work by March 10, 2003. *Id.* Although she was medically cleared by her doctor to return to work in October 2002, she did not report to work although instructed to do so. *Id., see also,* Exhibit #1, Deposition of Murielene Gordon, at 207:20-208:2. Plaintiff, by her own admission, refused to return to work for the remainder of the school year. As is shown by the evidence, plaintiff was not placed on leave without pay status because of her alleged disability, but because she had exhausted her leave, and had already been medically cleared to return to work. *Id.,* at 121:10-122:7. Plaintiff claims that her calls to Dr. Bridges were not returned. There is no evidence in this record that Dr. Bridges received plaintiff's phone calls. Moreover, there is an absence in this record that plaintiff sought clarification of Dr. Bridges' order to her to return to work. Based on this record, no reasonable jury could find that the District discriminated against plaintiff because of her disability, and/or that she suffered any adverse consequences as a result of the District's alleged actions. Plaintiff's claims are utterly lacking in legal validity or credibility[4], and as such, the District is

---

[4] The District recognizes that summary judgment is not the time for the factfinder to make credibility determinations. However, in this instance, only the credibility of plaintiff's actions are at issue. Clearly, her actions, supported by her own testimony, do not indicate that she responded or acted reasonably given her version of the facts.

entitled to judgment.

### III. PLAINTIFF HAS CONCEDED THAT SHE FAILED TO COMPLY WITH D.C. OFFICIAL CODE § 12-309.

Plaintiff has failed to argue that her claims under the D.C. Human Rights Act should not be precluded due to her failure to comply with D.C. Official Code § 12-309 (2001 ed.). Plaintiff avers that she filed notice of her intent to sue the District on April 11, 2003. See Complaint, at ¶ 19. Therefore, plaintiff's claimed damages must have occurred on October 11, 2002, six months prior to her sending the Mayor notice of her claims. Any misconduct that allegedly occurred prior to October 11, 2002, and after April 11, 2003, must be dismissed. Plaintiff has not set forth any viable claims against this defendant during the period October 11, 2002, through April 11, 2003, for which she may obtain relief from this defendant. *See generally*, Plaintiff's Complaint. Accordingly, dismissal of those claims is appropriate.

### IV. PLAINTIFF IS NOT ENTITLED TO FEES AND/OR SANCTIONS.

Plaintiff seeks sanctions for having to respond to the District's renewed motion for summary judgment. However, she is not entitled to the requested relief. The District's motion is meritorious and filed in good faith. Moreover, there is no pending motion for fees/sanctions before this Court. A party may not receive sanctions sought in an opposition to a motion. See Fed. R. Civ. P. 37. Accordingly, plaintiff's requested relief should be summarily denied.

                                              Respectfully submitted,

                                              PETER J. NICKLES
                                              Interim Attorney General for the District of Columbia

                                              GEORGE C. VALENTINE
                                              Deputy Attorney General
                                              Civil Litigation Division

\_\_\_\_\_\s\_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV



\_\_\_\_\_\s\_____
MICHAEL P. BRUCKHEIM [455192]
Assistant Attorney General
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-724-6649; 202-727-6295
E-mail: Michael.bruckheim@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MURIELENE GORDON,            :
                             :
         Plaintiff,          :
                             :
v.                           :        Civil Action No. 05-1907 (EGS)
                             :
DISTRICT OF COLUMBIA,        :
                             :
         Defendant.          :

**DEFENDANT DISTRICT OF COLUMBIA'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.**

Defendant District of Columbia (the "District"), by and through undersigned counsel and pursuant to FRCP 56(b), hereby submits the following Response to Plaintiff's Statement of Material Facts Not in Dispute:

1. Plaintiff is an individual with a disability. She is mobility impaired, substantially impaired in the major life activity of walking. Opinion of the Court March 26, 2007, Docket No. 34 ("OPINION").

Response: This is a legal conclusion, not a statement of fact. Moreover, it is not supported by the evidence.

2. Plaintiff has degenerative arthritis and has been employed by Defendant at Ballou Senior High School since 1990. Id. Plaintiff used a cane to ambulate in 2002, 2003 and into 2004 when she began using a walker. Id.

Response: Admitted, but not a material fact.

3. Plaintiff was employed at Ballou until her retirement in January, 2006. Id.

Response: Admitted.

4. Plaintiff was assigned to Room 111 for the period of time through school year 2002-03. Thereafter she was assigned to Room 112. Complaint herein, See Exhibit 1, Nos. 197 and 198. While assigned to Room 111, Plaintiff who is 5'9" tall and stoops over because of her health conditions, Exhibit 2,p.1 could not reach the shelves where she was to store her art supplies. See Plaintiff's Photograph's filed with her 2007 Rule 26(a) Statement, Docket Nos. 35-37 ("RULE 26 PHOTOS") at pp.7-91, Exhibit 3, Deposition of Dr. Samuel Mayer at 61:10-15, 62:1-8, 64:3-9, Report of Dr. Mayer with Plaintiff's Rule 26(a) Statement Docket Nos. 35-37 ("MAYER REPORT").

Response:  This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory.  Further answering, it is not a material fact.

5. In Room 111 there are emergency exit doors which lead directly to concrete path that leads to the street (4th Street SE.) During Plaintiff's tenure at Ballou in the period after 1999 the emergency exit doors were locked and /or locked and chained during the time Plaintiff was working in the room. Plaintiff did not have a key to the emergency exit doors. RULE 26PHOTOS pp.12-17. Exhibit 2, pp.1, 3.

Response:  This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory.  Further answering, it is not a material fact.

6. Room 111 is not air-conditioned. Exhibit 2, p1.

Response:  This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory.  Further answering, it is not a material fact.

7. There was no safety mat near the sink in the art room to prevent slipping and falling while she was working at the sink in the normal course of her duties. RULE26PHOTOS p.6, Exhibit 2, p5.

Response: This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory. Further answering, it is not a material fact, and is irrelevant.

8. Plaintiff's classroom experienced problems with cold air in the winter. This was repeatedly brought to the attention of Defendant. Exhibit 4, Collection of memoranda sent separately by Plaintiff and others commencing in 1999 (and including by her students in 2000) on or about the dates noted therein and collectively to Defendant

1 Page references to photographs exclude the cover page and refer to pages of photographs only.

(Ballou Principal Dr. Bridges) by Plaintiff in October 2002. Exhibit 4. (The photographs attached to said memoranda are included with the RULE26PHOTOS pp.1-5 and were part of the transmittal to Dr. Bridges. Note particularly the photos of students wearing coats in Plaintiff's classroom, p.4.) Also see No. 18 herein, infra.

Response: This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory. Further answering, it is not a material fact.

9. Plaintiff received no response to these memoranda. When Plaintiff attempted to follow up with Dr. Bridges there was no substantive response. Exhibit 2, p2. As noted infra at no.18, these documents were re-sent to Dr. Bridges at his request.

Response: This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory. Further answering, it is not a material fact, and is irrelevant

10. In September 2001 Plaintiff lost her key to her classroom. It was not replaced until December 2001. The classroom key opened the teachers' bathroom. Plaintiff could not go to the bathroom during this time unless she found someone to let her into it. Exhibit 2, pp 1-2. Also see Nos. 11-13 herein, infra. Dr. Bridges had locked bathrooms in Ballou. Exhibit 5, Deposition of Dr. Arthur Bridges, Ballou Principal, 83:8.

Response: This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory. Further answering, it is not a material fact for purposes of summary judgment.

11. None of the teachers' bathrooms are or were accessible to Plaintiff while she was employed there. Exhibit 6 Deposition of David Atkinson (Ballou Facilities Foreman) at 46:8-21. The teacher's bathroom seat is at 16 inches, too low for a person with a disability. It has knob handles on the sink which persons with disabilities cannot use. The door is too narrow for a mobility impaired person. RULE26 PHOTOS at p.11, Exhibit 3, Deposition of Dr. Mayer at 55:22, 59:12-13, 65:15-18, MAYER REPORT, Plaintiff's Rule 26(a) Statement, Docket Nos. 35-37.

Response: This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory. Further answering, it is not a material fact. Moreover, there is no evidence that no bathroom was accessible to plaintiff.

12. Unless someone was in the health suite, Plaintiff was not able to use the health suite (Exhibit 1 at no. 237) bathroom. Exhibit 7 Deposition of Plaintiff Murielene Gordon, 332:4-8, Exhibit 2 pp. 1-2, Exhibit 6, Deposition of David Atkinson (Ballou Facilities Foreman) 134:20-135:10. The health suite had two locks. Plaintiff did not receive one of the keys to the health suite until the 2003-04 school year. Exhibit 8. The second key to the health suite at that time was a master key that Defendant did not give her. Exhibit 9.

Response: This statement does not comport with LCvR 7, as it is not supported by admissible evidence, and is conclusory. Further answering, it is not a material fact.

13. Commencing in school year 2000-2001, Plaintiff had accidents because she was unable to use the bathroom or get another teacher to cover her class. At other times

she had to hold her water during the day, refrain from urinating. She could not drink liquids during the day because she could not be assured that she could use a bathroom if she needed to toilet. She had to plan around not being able to use the toilet. She was in pain. Exhibit 7 Gordon Deposition 332:1-8, Exhibit 2, pp 1, 5 Exhibit 3, Deposition of Dr. Mayer, 60:22-61:5.

Response:  This statement it is not a material fact, and the claim is time barred.

14. Plaintiff's class was to get new art tables in 2001. The tables had been ordered for the 2000-2001 school year. Defendant did not tell Plaintiff the art tables arrived. After learning of the tables' arrival, Plaintiff got students to help take the tables, which were clearly marked as art tables to her room. Defendant did not assemble them. Plaintiff and students did. Exhibit 2, p. 2.

Response:  This statement is not a material fact, and the claim is time barred.

15. During the summer of 2002, Plaintiff who has arthritis, had surgery and underwent rehabilitation on her knees. She provided Defendant (Ballou Principal Dr. Bridges) with medical information about her condition which made him aware she was not ambulatory like the average able bodied person. Exhibits 2 at pp.2-3, 10, Exhibit 5 Bridges Deposition.31:8-32:14.

Response:  Admitted, but not a material fact.  Plaintiff was granted approve sick leave for her time away from work.

16. Dr. Bridges told Plaintiff she was a liability and that she would be transferred in October, 2002. EEOC Complaint, Defendant's Renewed Motion Exhibit No.2 herein and Complaint herein at Paragraph No. 16.

Response:  This is a self-serving statement, and is insufficient to establish a hostile work

environment. Moreover, the claim is time barred.

17. Plaintiff and her daughter, Michelle Rennie, each made multiple efforts to reach Dr. Bridges in the fall 2002, into the winter 2002-03 in connection with Plaintiff seeking to return to work and be transferred. Messages were left for Dr. Bridges. He did not return their calls. Exhibits 2 at pp. 2-4, 11 at pp. 2-3. Calls were made to Dr. Bridges in October, November, December, 2002 and January, 2003. None were returned. Id.

Response:  This statement it is not a material fact, and there is no evidence that Dr. Bridges received plaintiff's phone calls.

18. At his request Plaintiff sent Defendant (specifically Dr. Bridges, Ballou Principal) numerous documents in October 2002, relating to heating/temperature in her classroom. The materials provided in October 2002 had been previously provided to Dr. Bridges and others at Ballou. Exhibit 4. Plaintiff did not receive any response. Exhibit 2, p. 2.

Response:  This statement it is not a material fact, and the claim is time barred.

19. Plaintiff exhausted all her sick leave and wound up with a significant negative sick leave balance after not being allowed to return to work. Exhibits 2 at p.2, 12 at pp.1-7 She also suffered emotional harm, i.e. became psychologically depressed, as a result of not being allowed to return to work at Ballou (and other events herein). See Report of Keith Miller at Plaintiff's 2007 Rule 26(a) Statement, Docket Nos. 35-37, Exhibit 13 Deposition of Keith Miller at 61:15-16, 63:3-11.

Response:  This statement it is not a material fact, and the claim is time barred.  Moreover, plaintiff was notified that she had exhausted her leave and was ordered to return to work during a time when she was medically qualified to return to work.

20. Plaintiff contacted the EEOC in early February 2003, Exhibit 14, and filed her

internal complaint with Defendant in March 2003 seeking accommodation and a transfer. Exhibit 15.

Response:  This statement is not supported by admissible evidence.

21. During the time her complaint with Defendant was pending, Plaintiff again requested reasonable accommodation from Defendant in March 2003. Exhibit 16. Plaintiff filed her EEOC complaint in April 2003, Defendant's Renewed Motion Exhibit 2. Also see no. 23, infra.

Response:  This statement it is not a material fact, and is not supported by admissible evidence.

22. Plaintiff was not contacted by Defendant about her complaint. She was not interviewed and was subsequently told by Defendant that she, Mrs. Gordon (Plaintiff) could file a complaint with the EEOC or District of Columbia Office of Human Rights. Exhibit 17, Exhibit 2, p. 4.

Response:  This statement is not a material fact.

23. In April 2003, Plaintiff filed her complaint with the EEOC stating, inter alia, that she was mobility impaired and gave notice to the Defendant. Renewed Motion, Statement of Fact No.2, Exhibit 2.

Response:  This statement is vague.  The District admits that plaintiff filed her EEOC Complaint in 2003.  The complaint speaks for itself.

24. At that time Plaintiff also gave separate notices and sent separate correspondence to Superintendent Vance of District of Columbia Public Schools and the District of Columbia Office of Human Rights. Exhibits 18, 19. She received no response to these letters. Exhibit 2.

Response:  This statement is not a material fact, and the claim may be time barred.

25. In June 2003, Plaintiff met with Defendant at Ballou and some accommodations were promised. Exhibit 20 letter of Valarie Jones to Dr. Bridges ("JONES")

26. Dr. Bridges was in Ballou at the time of Plaintiff's meeting in June, 2003 (no. 25 herein) but did not attend. Exhibit 21. When Plaintiff was at Ballou for her meeting she saw that her art supplies in Room 111 and her coat had been discarded and notified Defendant at least twice. Id.

Response:  This statement is not a material fact, and the claim is time barred.

27. Work on the teacher's bathroom closest to Plaintiff's classroom was ordered by Defendant in July 2003 and not completed until October 2005. Exhibit No 22 (Browser work orders) p. 6. The work ordered did not include lowering the seat to ADA compliant height (or widening the door). As of the time Plaintiff retired in January, 2006, the height of the seat in the teacher's bathroom had not been lowered. Exhibit 2p.5. Because the bathrooms were inaccessible at times after she returned to Ballou, Plaintiff had the same problems relating to bathrooms and toileting as she had experienced before she left school in June, 2002. Plaintiff had to hold her urine during the day and could not drink fluids during the day as an able-bodied person might since she could not be assured there would be a bathroom she could use independently. See no. 13, supra.

Response:  This statement is not a material fact, and the claim is time barred.

28. After Plaintiff filed first with DCPS in March, 2003, at EEOC in April 2003, nos. 20,21 herein, in School Year 2003 –2004 (Aug. 2003-June 2004) Defendant assigned Plaintiff to work in a Reading Group of teachers meeting on the second floor in Room 209. Exhibit 23. Also, see no.15 herein.

Response:  This statement is not a material fact, and the claim is time barred.

29. A safety mat for Plaintiff's classroom was ordered in July 2003 but did not arrive until December 2005, about a month before Plaintiff retired! Exhibit 22, p. 6.

30. Room 112 to which Plaintiff was assigned when she returned is not air-conditioned. Exhibit 2. During school year 2003-04 the temperature in Plaintiff's classroom was as high as 85 degrees (October, 2003) and as low as 42 degrees (January, 2004). Exhibit 24.

31. Room 112 has emergency exit doors leading directly to the street. Exhibit 2, p 1. During the time Plaintiff was assigned there those doors were locked and/or locked and chained. Plaintiff did not have a key to the emergency exit doors. Exhibit 2, p. 5, RULE26PHOTOS pp. 12-17.

Response:  This statement is not a material fact, and the claim is time barred.

32. In December, 2003, Defendant's Principal Dr. Bridges berated Plaintiff in front of a full classroom of students (and did not privately discipline her) when a student who had completed his school gave Plaintiff a lunch the student had purchased for Plaintiff with Plaintiff's funds. Plaintiff felt like she was being publicly humiliated. Exhibit 2, p. 5. Dr. Bridges also berated Plaintiff in front of her students when her chair broke. Id., Exhibit 7, Deposition of Murielene Gordon, 321:1-322:5.

Response:  This statement is not a material fact, and the claim is time barred.

33. Plaintiff filed the Complaint herein on September 28, 2005, alleging discrimination, based on disability, reciting that she was mobility impaired. Complaint at para 8.

Response:  Admitted.

34. On November 2005, Plaintiff was assigned to training on the second floor at Ballou. Exhibit 25.

Response:  This statement is not a material fact, and is not supported by admissible evidence as required by Rule 56.

35. Plaintiff did not have a key to an elevator to the second floor. She was unable to and did not participate in either the group as assigned or receive the training, Nos. 28 and 34 herein Exhibit 2, pp.5-6.

Response:  This statement is not a material fact, and the claim may be time barred.

> Respectfully submitted,
>
> PETER J. NICKLES
> Interim Attorney General for the District of Columbia
>
> GEORGE C. VALENTINE
> Deputy Attorney General
> Civil Litigation Division
>
> _____\s_____
> PATRICIA A. JONES [428132]
> Chief, General Litigation Sec. IV
>
>
> _____\s_____
> MICHAEL P. BRUCKHEIM [455192]
> Assistant Attorney General
> 441 4TH Street, NW, 6th Floor-South
> Washington, D.C.  20001
> 202-724-6649; 202-727-6295
> E-mail: Michael.bruckheim@dc.gov