**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MURIELENE GORDON, : 
: 
Plaintiff, : 
: 
v. : Civil Action No. 05-1907 (EGS)
: 
DISTRICT OF COLUMBIA, : 
: 
Defendant. : 

## DEFENDANT DISTRICT OF COLUMBIA'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia (the "District"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby moves this Court to grant it summary judgment on all claims set forth in plaintiff's Complaint.  As grounds therefore, the District states the following: 1) plaintiff's claims under the American With Disabilities Act ("ADA") and Rehabilitation Act ("RA") are time-barred; 2) plaintiff's accommodation claims under the D.C. Human Rights Act ("DCHRA") are precluded due to her failure to comply with D.C. Official Code § 12-309 (2001 ed.), and 3) plaintiff has failed to plead viable claims under the D.C. Human Rights Act during the period October 11, 2002, through April 11, 2003, for which she is entitled to relief; 4) plaintiff has not shown that she is disabled as contemplated by the ADA, RA, or the D.C. Human Rights Act, and 5) plaintiff has not shown that she was discriminated against on the basis of her disability.

A Memorandum of Points and Authorities, along with a Statement of Undisputed

Material Facts and a proposed Order, are attached hereto.

                                       Respectfully submitted,

                                       PETER J. NICKLES
                                       Acting Attorney General for the District of Columbia

                                       GEORGE C. VALENTINE
                                       Deputy Attorney General
                                       Civil Litigation Division

                                       \s\ Patricia A. Jones
                                       PATRICIA A. JONES [428132]
                                       Chief, General Litigation Sec. IV

By:      \s\ Michael P. Bruckheim
                                       MICHAEL P. BRUCKHEIM [455192]
                                       Chief, Criminal Section
                                       Public Safety Division
                                       441 4TH Street, NW, 6th Floor-South
                                       Washington, D.C.  20001
                                       202-727-3807
                                       E-mail:  Michael.bruckheim@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MURIELENE GORDON,                    :
                                                             :
                     Plaintiff,             :
                                                             :
v.                                                          :          Civil Action No. 05-1907 (EGS)
                                                             :
DISTRICT OF COLUMBIA,           :
                                                             :
                     Defendant.          :

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT DISTRICT OF COLUMBIA'S RENEWED MOTION FOR SUMMARY**
**JUDGMENT**

In support of its motion for summary judgment, defendant District of Columbia (the

"District") states as follows.

**I.        PRELIMINARY STATEMENT**

On or about September 28, 2005, plaintiff filed suit against the District for its alleged

violations of:  (1) the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, (2)

Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq.,* and (3) the District of

Columbia Human Rights Act (DCHRA), D.C. Official Code §§ 2-1401, *et seq.*  Plaintiff claims

that she has degenerative arthritis.  Exhibit #1, Deposition of Murielene Gordon, at 272:11-20.

Plaintiff seeks declaratory and compensatory damages as the result of the District's alleged

failure to accommodate her disability.  *See* Plaintiff's Complaint, Prayer for Relief.

Plaintiff avers that she began working as an art teacher at Ballou High School in 1990.

Exhibit #1, Deposition of Murielene Gordon, 32:22-33:1-4. She alleges that while at Ballou

during 1999-2002, she did not have access to an accessible bathroom, that she did not have keys

to locked emergency doors, that the heating and cooling system was non-functional, that shelves

were too high, and that she did not have access to a copier.  *See generally,* Plaintiff's Complaint.

Plaintiff also claims that she was required to attend meetings on the second floor, and that she "periodically" requested reasonable accommodations from her supervisor, but no reasonable accommodations were provided to her.  *Id.*

Plaintiff alleges that she filed a complaint with the D.C. Office of Human Rights (hereafter "OHR") and Equal Employment Opportunity Commission (hereafter "EEOC") on April 18, 2003.  Exhibit #1, Deposition of Murielene Gordon, 108:22-112:22.  Within her OHR and EEOC complaint, plaintiff avers that "between 1999 and 2002, [she] requested and was denied various reasonable accommodations."  *See* OHR/EEOC Complaint, identified by plaintiff at deposition as Exhibit 9 (see *Id.*  at 108:22-112:22), and hereto attached as Exhibit #2.  Plaintiff never requested any accommodation in June 2002.  See Exhibit #1, Deposition of Murielene Gordon, 236:19-237:16.  In fact, the complaint does not identify any discrete acts of discrimination during the relevant time period June 22, 2002, through April 18, 2003.  *Id.*  Plaintiff never filed an amendment to the charge she filed with either OHR or EEOC.  Exhibit #1, Deposition of Murielene Gordon at 114:6-10.  Plaintiff claims she filed notice of her intent to sue the District of Columbia pursuant to D.C. Official Code § 12-309 (2001 ed.) on April 11, 2003.  *See* Plaintiff's Complaint, ¶ 19.

As will be shown below, the District is entitled to judgment as a matter of law because: 1) plaintiff's claims under the ADA and RA are time-barred, 2) plaintiff's accommodation claims under the D.C. Human Rights Act are precluded due to her failure to comply with D.C. Official Code § 12-309 (2001 ed.), 3) plaintiff has not shown that she is disabled as contemplated by the ADA, RA, and/or DCHRA; and 4) plaintiff has not shown that she was discriminated against on the basis of her disability under the ADA, RA, and/or DCHRA.

## II.    STANDARD OF REVIEW

Summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Although the party moving for summary judgment has the burden of demonstrating the absence of any material facts and the right to judgment as a matter of law, the movant is not obligated to present supporting evidence. *Furguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993).  Instead, the moving party need only assert that there is a lack of necessary evidence to support plaintiff's case.  At that point, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.; Beard v. Area Transit Authority,* 631 A.2d 387, 390 (D.C. 1993).  Theoretical speculations, unsupported assumptions, and conclusory allegations do not rise to the level of a genuine issue of fact. *Id.*

## III.    PLAINTIFF'S CLAIMS ARE TIME BARRED UNDER THE AMERICANS WITH DISABILITIES ACT.

Plaintiff seeks to hold the District liable under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq.*, because it allegedly failed to accommodate her disability.  *See generally*, Plaintiff's Complaint. While the ADA does not contain its own statute of limitations, it is well-settled that the procedures of Title VII, specifically the limitations period set forth in § 2000e-5, are applicable to actions brought under the ADA.[1]  See 42 U.S.C. § 12117(a).  The Rehabilitation Act is to be applied in a manner consistent with the ADA.  See 42 U.S.C. § 12117(b).  Pursuant to the

---

[1] Title I of the ADA, which governs employment discrimination cases, expressly incorporates "the powers, remedies, and procedures set forth in [Title VII]."  42 U.S.C. § 12117(a).  This incorporation includes the statute of limitations for Title VII actions.  *Conner v. Reckitt & Colman*, 84 F.3d 1100, 1012 (8th Cir. 1996) (applying 300-day statute of limitations to ADA claim); *Rodriquez v. Salinas City Sch. Dist.*, 2000 U.S. App. LEXIS 5900, *2 (9th Cir. 2000) (same).

procedures set forth in 42 U. S. C. § 2000e-5(e), an administrative complaint, or "charge," must

be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the

alleged unfair employment practice, unless the complainant has first instituted proceedings with

a state or local agency, in which case the limitations period is extended to a maximum of 300

days.  *See Hobby v. D.C., et al.,* No. 1:07-vc-01061-RMC,[2] hereto attached as Exhibit #3, *citing*

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 127 S.Ct. 2162 (2007) (citing 42 U.S.C. §

2000e-5(e)(1).  *See also, Lorance v. AT&T Technologies*, 490 U.S. 900, 904 n. 2 (1989).

In this case, plaintiff simultaneously filed her charge with the D.C. Office of Human

Rights ("OHR") and EEOC "on or about April 18, 2003."  Exhibit #1, Deposition of Murielene

Gordon, 110:12-111:7.   Because plaintiff did not file her complaint with the local agency prior

to filing it with EEOC, the 180-day limitations period is applicable.  In her OHR/EEOC

complaint, plaintiff alleges that she requested and was denied various accommodations between

1999 and 2002.  *Id.* at 112:17-114:2.  Under the 180-day rule, plaintiff would be barred from

pursuing any claims that allegedly occurred prior to October 18, 2002, since she did not file her

charge until April 18, 2003.   Because she never amended her complaint, she is also barred from

pursuing any claims that allegedly occurred after April 18, 2003.

Plaintiff's OHR/EEOC complaint does not identify any specific acts committed by the

District or any claims that the District failed to act to accommodate her disability between the

period October 18, 2002, and April 18, 2003 (the 180-day period).[3]  *See* EEOC Complaint,

identified by plaintiff at deposition as Exhibit 9 (*see* Exhibit #1 at108:22-112:22), and hereto

attached as Exhibit #2.  According to the record evidence, plaintiff did not work during the 2002-

2003 school year, which is the period from August 2002, through August 2003.  *See* Exhibit #1,

---

[2] The District recognizes that this Court is not bound by the *Hobby* decision, but believes it is persuasive authority.

[3] Plaintiff avers that she was placed on leave without pay status on or about February 27, 2003.  As will be discussed more fully herein, plaintiff cannot recover under the ADA, RA, or DCHRA for this claim.

Deposition of Murielene Gordon, p.233:10-19. *See also*, Plaintiff's Response to Interrogatory #14, hereto attached as Exhibit #4 (in which she avers that she was not cleared to work during the 2002-2003 school year until October 2002, but did not return to work until the fall of 2003). Therefore, it was impossible for the District to accommodate her during a period of time when she was absent from work. Because plaintiff failed to timely file her EEOC charge for incidents occurring prior to October 18, 2002, she is precluded from pursuing her claims against this defendant under the ADA and/or RA.

Even assuming *arguendo* that the 300-day period is applicable, plaintiff's claims prior to June 22, 2002, would be barred as untimely. The 2002-2003 school year ended in June, 2003, and plaintiff was not at work during that entire period. Exhibit #4, Plaintiff's Response to Interrogatory #14, hereto attached as Exhibit #4. In fact, plaintiff did not work for the period June 22, 2002, through and including April 18, 2003. *Id.* Therefore, any claims that pre-existed June 22, 2002, are also time-barred.

## IV. THIS COURT SHOULD USE THE ONE-YEAR STATUTE OF LIMITATIONS PERIOD FOR PLAINTIFF'S REHABILITATION ACT CLAIMS.

Judges in this jurisdiction continue to split over which statute of limitations should be used for Rehabilitation Act cases since it does not have an explicitly prescribed statute of limitations period. In *Gupta v. Northrop Grumman Corp.*, 462 F.Supp.2d 56 (D.C. Cir. 2006), the Court recognized that while the American With Disabilities Act (hereafter "ADA") adopts the statue of limitations for Title VII cases, there is a disagreement amongst the Courts, even in this jurisdiction, as to whether the statute of limitations applicable to Title VII claims is to be used for RA claims, or the three year statute of limitations for personal injury claims. The Court recognized that claims filed under both the ADA and RA are virtually identical. *Gupta*, 462 F.Supp.2d at 58. However, the *Gupta* Court did not resolve the issue as to which statute of

limitations was more appropriate, instead holding that "even if the employee's RA claim was subject to the District of Columbia's three-year statute of limitations for filing a lawsuit alleging personal injury claims, that claim was unexhausted because the charge of discrimination was not filed before the three-year period expired, and plaintiff failed to provide sufficient proof to establish equitable tolling of the applicable statute of limitations."  *Gupta*, 462 F.Supp.2d at 60.

In *Stewart v. District of Columbia,* No. 04-1444, 2006 U.S. Dist. LEXIS 12991 (D.D.C. March 12, 2006), Judge Kollar-Kotelly was presented with the issue as to which statute of limitations to apply to plaintiff's RA claim. Judge Kolar-Kotelly also recognized the split among the judges about whether to adopt the statute of limitations for Title VII claims or use the local law statute of limitations for personal injury claims.  *See Stewart,* \*26, citing *Turner v. District of Columbia*, (Urbina, J.) (assuming that because the Rehabilitation Act incorporates the ADA's "standards," and because the ADA incorporates Title VII's statute of limitations, then the Rehabilitation Act also incorporates Title VII's limitations period).  *See also Doe v. Southeastern Univ.*, 732 F.Supp 7, 9 (D.D.C. 1980) (Harris, J.), and *Gallon v. D.C. Dept. of Human Servs.*, 1992 U.S. Dist. LEXIS 1941, Civ. No. 91-2587, 1992 WL 44360, at #l (D.C.C. 1992) (Harris, J.) (applying the state statute of limitations for personal injury actions).  Judge Kolar-Kotelly gave more weight to the less recent decisions which applied the personal injury statute of limitations to RA claims because she felt they were more persuasive and sound.

This Court is not bound by the decision in *Stewart.*  As this Court is aware, for all other purposes, the RA mirrors the ADA in applying the procedures for Title VII claims.  *See Gupta*, 462 F.Supp.2d at 58.  *See also Lorance v. AT&T Techs.,* 490 U.S. 900, 904 n. 2, 109 S. Ct. 2261, 10-4 L.Ed.2d 961 (1980); 42 U.S.. § 20003-5(e)(1), *Ajuluchuku v. Oswald,* No. 05-732, 2006 U.S. Dist. LEXIS 7707, at #1-2 (D.D.C. Feb. 10, 2006)(holding that complaints filed under the ADA must follow the same administrative exhaustion procedures as those filed under Title VII).

There is no reason why this Court should not apply the same statute of limitations for plaintiff's

RA claim that as applied to ADA and Title VII claims. In fact, use of the District's one-year

limitations period for intentional torts or for D.C. Human Rights Act claims is more appropriate

since plaintiff's claims are more akin to intentional tort or discriminatory claims under OHR,

than for personal negligence actions. See D.C. Official Code § 2-1403.04(a). *See also. Berger v.*

*Iron Workers Reinforced Rodmen, Local 206,* 843 F.2d 1395, 1410 (D.C. Cir. 1988), discussing

whether § 1981 violations are more akin to intentional torts than general torts, and leaving the

question open as to whether the three-year or one year statute should be used. Because plaintiff

essentially avers that the District intentionally discriminated against her based on her disability

and/or by failing to accommodate her disability, the one-year statute of limitations period for her

RA claim is more appropriate. Accordingly, this Court should grant the District's motion for

summary judgment and find that her RA claims are time-barred.

## V.    PLAINTIFF FAILED TO COMPLY WITH D.C. OFFICIAL CODE § 12-309 AND HER CLAIMS UNDER THE D.C. HUMAN RIGHTS ACT ARE BARRED.

In order to maintain any action against the District of Columbia for unliquidated

damages, a claimant/plaintiff must satisfy the mandatory notice requirement of D.C. Official

Code § 12-309 (2001 ed.) prior to filing suit. See, *Hill v. District of Columbia*, 345 A.2d 867,

869 (D.C. 1975). In particular, § 12-309 provides that:

> An action may not be maintained against the District of Columbia
> for unliquidated damages to person or property unless, within six
> months after the injury or damage was sustained, the claimant, his agent,
> or attorney has given notice in writing to the Mayor of the approximate
> time, place, cause, and circumstances of the injury or damage.

As indicated by a long line of cases, § 12-309 is to be strictly construed. *Pitts v. District of*

*Columbia*, 391 A.2d 803, 807 (D.C. 1978); *Toomey v. District of Columbia*, 315 A.2d 565, 566 n.1

(D.C. 1974); *District of Columbia v. World Fire & Marine Ins. Co.*, 68 A.2d 222, 225 (D.C. 1949);

*Boone v. District of Columbia*, 294 F. Supp. 1156, 1157 (D.D.C. 1968).  "... [C]ompliance with the statutory notice requirement is mandatory," and is a "condition precedent to filing a suit against the District." *Hill*, 345 A.2d at 869; *Gwinn v. District of Columbia*, 434 A.2d 1376 (D.C. 1981).  More important, notice must be received within six months of the events which allegedly have caused a claimant's injury, not merely mailed or transmitted to the District within six months.  *DeKine v. District of Columbia*, 422 A. 2d 981, 984 (D.C. 1980).  Notice received even one day past due is considered untimely, and completely bars recovery against the District.  *Id*. at 986.

In this case, plaintiff seeks unliquidated damages from the District under the D.C. Human Rights.  Plaintiff's claims under the D.C. Human Rights Act are not "creations of federal law."  In fact, "when a federal court exercises pendent jurisdiction over a claim based on state law, it must apply an applicable notice-of-claim provision."  *See Glenn Giardino, et al. v. D.C., et al.,* No. 1:06-cv-00469-JMF, citing *Felder v. Casey*, 487 U.S. 131, 151 (1988), holding federal courts entertaining state-law claims against Wisconsin municipalities are obligated to apply the notice-of-claim provision."  See also, *Hewett v. Inland Hosp.,* 39 F.Supp. 2d 84, 86-88 (D. Me. 1999); *INX Int'l Ink co. v. Delphi Energy & Engine Mgmt. Sys.,* 943 F.Supp. 993, 997-99 (D.D. Sis. 1996).

In her complaint, plaintiff avers that she filed notice of her intent to sue the District on April 11, 2003.  See Complaint, at ¶ 19.  Therefore, plaintiff's claimed damages must have occurred between the period October 11, 2002, six months prior to her sending the Mayor notice of her claims, and April 11, 2003.  See D.C. Official Code § 12-309.  Therefore, any alleged misconduct that allegedly occurred prior to October 11, 2002, and after April 11, 2003, must be dismissed.

VI.    **PLAINTIFF'S CLAIMS UNDER THE D.C. HUMAN RIGHTS ACT BETWEEN THE PERIOD OCTOBER 11, 2002, AND APRIL 11, 2003, MUST BE DISMISSED AS A MATTER OF LAW.**

Plaintiff avers that she sought to return to work in October 2002, but was denied the opportunity to do so.  As a result, she was forced to use additional leave and/or be in a leave without pay status.  Complaint, at ¶ 16.   In February 26, 2003, according to plaintiff, she was advised that she was absent without leave (AWOL) and threatened with disciplinary action and made to undergo a fitness for duty examination.  See Complaint, ¶ 17.  Plaintiff avers that on March 3, 2003, she filed an internal complaint of discrimination, and the complaint was closed without her being contacted.  Complaint, at ¶ 18.  She filed a notice of claim pursuant to § 12-309 on April 18, 2003.  Complaint, at ¶ 19.  While this Court need not weigh credibility determinations at this stage of the litigation, this Court is the gatekeeper of admissible evidence and must determine whether plaintiff has presented sufficient evidence to submit to the jury which supports her discrimination claim.

Plaintiff cannot maintain her claims under the DCHRA for the incidents that she alleges occurred between the period October 11, 2002, and April 11, 2003.  Plaintiff admits that she was medically qualified to return to work in October 2002, but did not do so because in September 2002, Dr. Bridges told her that she was a liability at Ballou and he was going to transfer her to another school.  See Exhibit #1, Deposition of Murielene Gordon, 191:4-10.  After this alleged conversation, plaintiff did not follow-up in writing or take any other action to return to work.  In fact, she was paid during the entire period she claims she was told not to report to work.  Plaintiff concedes that by letter, dated February 2003, she was informed that she had run out of sick leave and was instructed to return to work, but again she failed and/or refused to return to work. Exhibit #4, Plaintiff's Response to Interrogatory #14, hereto attached as Exhibit #4.   Moreover,

plaintiff did not work for the period June 22, 2002, through and including April 18, 2003, despite the February 2003, letter instructing her to return to work.  *Id.*

In plaintiff's OHR/EEOC complaint filed on March 3, 2003, she did not identify any specific acts committed by the District or any claims that the District failed to act to accommodate her disability between the period October 18, 2002, and April 18, 2003 (the 180-day period).[4]  *See* EEOC Complaint, identified by plaintiff at deposition as Exhibit 9 (*see* Exhibit #1 at108:22-112:22), and hereto attached as Exhibit #2.  No reasonable juror could find that the District prevented plaintiff from returning to work in October 2002, or that she suffered adverse consequences, particularly since she was paid for her non-duty status.  Plaintiff has simply failed to set forth any viable claims against the District that allegedly occurred between October 2002, and April 11, 2003, for which she is entitled to relief under the D.C. Human Rights Act.

**VII.    PLAINTIFF HAS NOT SHOWN THAT SHE IS DISABLED AS CONTEMPLATED BY THE ADA, RA, OR DCHRA AND/OR THAT THE FAILURE TO REASONABLY ACCOMMODATE HER DISABILITY PREVENTED HER FROM PERFORMING THE ESSENTIAL FUNCTIONS OF HER JOB.**

As held by the *Gupta* Court, claims filed under both the ADA and RA are virtually identical.  *Gupta*, 462 F.Supp.2d at 58. To succeed on a claim under the ADA, a plaintiff first must prove that she was disabled within the meaning of the ADA.  The Supreme Court has held that to establish a disability under the ADA, a plaintiff must show that she has an impairment that substantially limits a major life activity.  *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 195 (2002).  According to the Court:

> "substantially limited" means "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a

---

[4] Plaintiff avers that she was placed on leave without pay status on or about February 27, 2003.  As will be discussed more fully herein, plaintiff cannot recover under the ADA, RA, or DCHRA for this claim.

> major life activity as compared to the condition, manner, or duration under which
> the average person in the general population can perform the same life activity."

*Id.* at 195-96 (quoting EEOC Regulations, 29 C.F.R. s 1630.2(j) (2001)).  The Court further

noted that "these terms need to be interpreted strictly to create a demanding standard for

qualifying as disabled."  *Id.* at 196 (citing 42 U.S.C. § 12101(a)(1)).

      To prevail under the RA, plaintiff must not only show that she had a permanent or long-

term impairment that substantially limits a major life activity, but that with a reasonable

accommodation she could perform the essential functions of the job.  *See Stewart v. St.*

*Elizabeth's Hospital*, 2007 U.S. Dist. LEXIS 56234 (D.C. Cir. 2007).  Similarly, to prevail under

the D.C. Human Rights Act, plaintiff must show that she suffered a disability which affected a

major life activity.  *See* D.C. Official Code § 2-1401.01, *et seq.*

      It is not sufficient for a plaintiff to provide evidence that his or her disability is capable of

causing such limitations.  Instead, "a plaintiff must prove a substantial limit with specific

evidence that *his particular* impairment substantially limits *his particular* major life activity."

*Waldrip v. General Electric Co.*, 325 F.3d 652, 656 (5th Cir. 2003) (emphasis in original).  The

Fifth Circuit Court of Appeals explained:

> The ADA requires those 'claiming the Act's protection to prove a disability by
> offering evidence that the extent of the limitation caused by their impairment in
> terms of their own experience is substantial.'" Toyota, 534 U.S. at 198 (quoting
> Albertson's, 527 U.S. at 567) (alterations omitted). A plaintiff cannot survive
> summary judgment by showing that an impairment like his own could
> substantially limit a major life activity of another person or in his own future.
> Rather, he must show that his impairment has actually and substantially limited
> the major life activity on which he relies.

*Id.*

      When determining whether a plaintiff has shown a "substantial" limitation of a major life

activity—such as walking, standing, bending, or lifting—"the central inquiry must be whether

the claimant is unable to perform the variety of tasks central to most people's daily lives."

*Toyota Motor*, 534 U.S. at 200-01.  According to the Supreme Court, courts making such a determination should focus on whether a plaintiff can perform household chores and personal hygiene because these are "the types of manual tasks of central importance to people's daily lives."  *Id.* 201.

In *Black v. Roadway Express, Inc.*, 297 F.2d 445, 451 (6th Cir. 2002), the plaintiff alleged that due to several knee surgeries, he was substantially limited in the major life activities of "walking, kneeling, stooping, jogging, lifting, sitting in confined, restricted positions, running, [and] climbing."  In support of this allegation, the plaintiff attested that he could not kneel or stoop, could not sit for any extended period of time where movement was restricted, was able to walk—with a constant limp—only short distances, could not stand for long periods, could not exercise a full range of motion with his leg, and could not run or jog at all.  *Id.* 450-51.  The Sixth Circuit Court of Appeals affirmed summary judgment for the defendants, holding that the plaintiff's "alleged inability to perform certain tasks or functions on a repeated or prolonged basis is not enough, as a matter of law, for him to meet the threshold requirement of proving that he is 'disabled.'"  *Id.* 450.  The Sixth Circuit explained that "[m]oderate difficulty or pain experienced while walking does not rise to the level of a disability."  *Id* 451.  The Court primarily based its decision on the fact that the plaintiff could perform many tasks central to daily life.  In his deposition, the plaintiff testified that, on an average day, he could clean his house, do the chores around the house, and "get a little exercise."  *Id.*  The Court concluded that "no reasonable jury could find the plaintiff disabled in any major life activity other than working."  *Id.*

Similarly, in *Marinelli v. City of Erie*, 216 F.2d 354, 362 (3rd Cir. 2000), the plaintiff alleged that his back injury substantially limited his ability to engage in a major life activity because he was "unable to perform household chores, such as cleaning his floors," and he was

"unable to lift objects on greater than a sedentary scale." The Third Circuit held that these allegations, even if true, could not satisfy the rigid standards for an ADA disability, writing:

> "courts have generally held that "cleaning," or, more generally, "doing housework," does not qualify as a major life activity. Although the EEOC regulations list "caring for oneself" as a major life activity, courts interpreting this regulation have held that such relates only to basic activities such as washing dishes and picking up trash. … In other words, "cleaning" is only considered a major life activity to the extent that such an activity is necessary for one to live in a healthy or sanitary environment. On the other hand, merely "performing housework other than basic chores" does not qualify as a major life activity."

*Id.* (internal citations omitted); *see also Toyota Motor*, 534 U.S. at 200-01 (holding that plaintiff had not established an ADA-protected disability as a matter of law because she "could still brush her teeth, wash her face, bathe, tend to her flower garden, fix breakfast, do laundry, and pick up around the house"); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (holding that plaintiff could not establish an ADA-protected disability based on his inability to shovel snow, garden, and mow his lawn); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that plaintiff could not establish ADA-protected "walking" disability based on her claim that she "walks with a limp and moves at a significantly slower pace than the average person," and that extreme cold exacerbates these conditions).

Courts also have refused to expand the scope of the ADA to include situations in which daily activities can be performed only with severe discomfort or pain. In *Weigert v. Georgetown University*, 120 F. Supp. 2d, 1, 10-11 (D.D.C. 2000), this Court held that a plaintiff's discomfort with the glare from fluorescent lights, sunlight, and other bright lights did not constitute a substantial limitation of a major life activity. The Court adopted reasoning set forth in *Lajaunie v. Hibernia Corp.*, 2000 U.S. Dist. LEXIS 1209 (E.D. La. Feb. 8, 2000), explaining that the *Lajuanie* plaintiff:

> was not materially hampered in the performance of life activities under circumstances similar to the plaintiff's. In *Lajaunie*, the plaintiff was diagnosed

with corneal disease, which gave her problems with glare.  The court determined
that she was neither substantially limited nor materially hampered, although it was
clear that because of the glare "she [could] no longer work in the garden, ride a
bicycle and do crossword puzzles."  2000 U.S. Dist. LEXIS 1209, *18.  The court
relied on the plaintiff's doctor's report, which stated that the plaintiff's condition
did not cause "ocular damage," notwithstanding the fact that her condition "could
be extremely uncomfortable and quite distracting."  *Id.*  In dismissing her claims,
the court held that to find that the plaintiff was "substantially limited" would
dilute the meaning of "substantially limited" to simply "limited."  *See id.*

*Weigert*, 120 F. Supp. 2d, at 11.

In *Carlene Thompson v. District of Columbia*, C.A. No. 01-1400 (March 27, 2006),  U.S.

District Court for the District of Columbia, Judge Henry Kennedy presiding, plaintiff, a D.C.

employee, filed suit against the District because it allegedly failed to accommodate her disability

under the ADA.   Plaintiff claims she was injured in a car accident and suffers from "lumbrata

disease" which causes her to walk with a cane.   Plaintiff submitted that she notified the District

of her inability to climb stairs and the District's only response was to assign her a temporary

parking permit.   The District filed a motion for summary judgment on the basis that plaintiff

failed to show that she suffered from a disability within the meaning of the ADA.   Plaintiff lived

on the third floor of an apartment building, climbed the stairs to her apartment, vacuumed, ran

errands, climbed the steps to her job, and performed every task she was required to for her job.

By Court Order, dated March 27, 2006, the Court granted the District's motion for summary

judgment because plaintiff was not disabled within the meaning of the ADA.[5]  See C.A. No. 01-

1400, at Docket Entry # 34, hereto attached as Exhibit #5.

In the instant case, plaintiff has not demonstrated that she has a substantial limitation of

the major life activity of either walking or working.  Plaintiff's impairment does not prevent her

from conducting those activities that have been deemed "of central importance to people's daily

---

[5] The District recognizes that the *Thompson* case is not binding authority on this Court.  However, the facts in
*Thompson* and this case are substantially similar, and just as in *Thompson,* the District is entitled to summary
judgment as a matter of law.

lives." *Toyota Motor*, 534 U.S. at 201. Plaintiff testified that she is fully capable of bathing and taking care of her personal hygiene. See Exhibit #1, Deposition of Murielene Gordon, 10:2-9; 303:20-304:1.  The fact that plaintiff needs to walk up steps to enter her home, and needs to use even more stairs to reach her bedroom on the second level, evidences that she is not disabled. See Exhibit #1, Deposition of Murielene Gordon,11:2-21; 12:1-4.  In addition, plaintiff walks down stairs to use the laundry room in the basement.  See Exhibit #1, Deposition of Murielene Gordon, 13:3-6; 16:12-16.  Moreover, prior to 2004, plaintiff was using regular city buses to get to work everyday.  She had to walk from her home to the bus stop, and then from the bus stop to work.  See Exhibit #1, Deposition of Murielene Gordon, 299:21-301:9; 329: 8-18 .  In fact, she did not start using Metro Access until January of 2004.  See Exhibit #1, Deposition of Murielene Gordon, 301:19-302:17.  As was shown in both the *Black Marinelli*, and *Thompson* decisions, supra, plaintiff's "painful" walking does not rise to the level of a disability for which she may be compensated.

As to any claim that her disability affects the major life activity of working, plaintiff's claim fails.  More importantly, although plaintiff claims that the District failed to accommodate her disability, she has not shown that the requested accommodation was needed to assist her with the performance of her job.  In fact, plaintiff testified that she continued to work at her job at a high level up to her non-disability retirement, and also performed those tasks central to daily life without assistance or substantial limitation.  See Exhibit #1, Deposition of Murielene Gordon, 32:15-33.  Plaintiff testified that she is an "excellent teacher" always capable of achieving the highest possible performance rating.  See Exhibit #1, Deposition of Murielene Gordon, 101:10-16.  Furthermore, plaintiff testified that she did not need to walk or stand in order to teach her class.  See Exhibit #1, Deposition of Murielene Gordon, 88:13-17; 90:6-22; 92:1-12.  Plaintiff also testified that she was always able to leave her classroom in an emergency situation.  See

Exhibit #1, Deposition of Murielene Gordon, 158:7-12.  Moreover, plaintiff testified that her arthritis and use of a cane never prevented her from performing her job at a high level.  See Exhibit #1, Deposition of Murielene Gordon, 106:6-10. Plaintiff's own testimony demonstrates that her limitations did not affect a major life activity, nor did her limitations prohibit her from both completing her job and from performing her job at an "acceptable" level.  *See Croy v. Cobe Laboratories, Inc.,* 345 F.3d 1199, 1204 (10th Cir. 2003) (holding that a plaintiff who shows an ability to work and who acknowledges performing at a satisfactory level of performance ultimately fails to show that her alleged impairment substantially limits a major life activity). Accordingly, the District is entitled to summary judgment as plaintiff has not shown that she suffered from a disability as contemplated under the statutes under which she seeks to proceed.

**VIII. PLAINTIFF HAS NOT SHOWN THAT THE DISTRICT DISCRIMINATED AGAINST HER BASED ON HER ALLEGED DISABILITY AND SHE DID NOT SUFFER ANY ADVERSE ACTION AS A RESULT OF THE DISTRICT'S ALLEGED VIOLATION OF THE AMERICAN WITH DISABILITIES ACT, THE REHABILITATION ACT, AND/OR THE D.C. HUMAN RIGHTS ACT**

Plaintiff avers that she told her supervisor Dr. Bridges that she would return to teach in September 2002, but was not medically qualified to return to work until October 2002.  Exhibit #1, Deposition of Murielene Gordon, 186:6-190:13.  Plaintiff was paid for her sick leave until February 3, 2003, when she no longer had leave.  Exhibit #1, Deposition of Murielene Gordon, 205:3-7.  While plaintiff recognized that the District had to have someone teach her class in her absence, she claims that her supervisor Dr. Bridges orally told her that he did not want her at Ballou, and intended to transfer her to another school.  *Id.* at 187:3 – 190:13. Within her OHR/EEOC Complaint, plaintiff avers that the District:  1) refused to permit her to return to work since late October 2002, and 2) placed her on absent without leave status in February, 2003, purportedly in violation of the American With Disabilities Act and Rehabilitation Act.  *See* generally Exhibit #2, OHR/EEOC Complaint.  During deposition, plaintiff admitted that she

never received anything in writing that notified her that she was not permitted to return to work. Exhibit #1, Deposition of Murielene Gordon, 186:17 -187:2. Plaintiff further testified that she made no attempt to return to work. See Exhibit #1, Deposition of Murielene Gordon, 187:13-188:7. Plaintiff admits that by letter, dated February 26, 2003, Dr. Bridges instructed her to report to duty by March 10, 2003, but she refused and/or failed to do so. *Id.,* at 205:16-207:18.

In order to prevail on her disparate treatment claim against the District, plaintiff must set forth a *prima facie* case of discrimination, and prove the following factors: (1) that she belongs to one or more protected classes; (2) that she was qualified for her position; (3) that she was subjected to an adverse action; and (4) that the District took adverse action against her because she is a member of a protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If an employee succeeds in establishing a *prima facie* case, the burden "shifts to the employer to articulate legitimate, non-discriminatory reasons for the challenged employment decision." *Aka v. Washington Hosp. Ctr*, 156 F.3d 1284, 1288 (D.C. Cir. 1998)(en banc). If the employer articulates a legitimate, non-discriminatory reason for the termination, the presumption of discrimination raised by the *prima facie* case is rebutted and "drops from the case". See *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At that point, the employee must demonstrate that the employer's explanation is a mere pretext for discrimination. *See Aka*, 156 F.3d at 1288. Throughout, the employee retains "the ultimate burden of persuading the court that he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Plaintiff cannot satisfy her *prima facie* case because she cannot prove that she was discriminated against because of her disability or that she suffered an adverse action. *See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). The D.C. Circuit Court of Appeals has held that, "to establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action

with 'materially adverse consequences affecting the terms, conditions, or privileges of

employment.'"  *Stewart*, 275 F.3d at 1134 (quoting *Brown*, 199 F.3d at 452).  The Circuit has

defined a "tangible employment action," a phrase that is interchangeable with "adverse

employment action," as "a significant change in employment status, such as hiring, firing, failing

to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits."  *Stewart*, 275 F.3d at 1135 (quoting *Burlington Indus., Inc. v.

Ellerth*, 524 U.S. 742 (1998)).

Plaintiff has not shown that she was treated differently than her co-workers without

disabilities.  When questioned whether she was aware of other teachers with problems with Dr.

Bridges, plaintiff testified that there was one "young man, … [Dr. Bridges] was horrible to this

gentleman.  He was demeaning, he would call him over the PA system and call him names."  See

Exhibit #1, Deposition of Murielene Gordon, 393:12-22.  "Then there was a counselor, she

complained of mold in the office.  She had a health problem, and … [Dr. Bridges] fought her on

[her] handicap space."  See Exhibit #1, Deposition of Murielene Gordon, 393 – 394:1-7.  While

she claims that she did not have access to an accessible bathroom, that she did not have keys to

locked emergency doors, that the heating and cooling system was non-functional, that shelves

were too high, and that she did not have access to a copier, she has not shown that the failure to

provide her with her requests was based on her disability, that others received the items she

requested, or that the failure to provide her with the requested items violated her rights under the

ADA, RA, or the DC HRA.  Moreover, plaintiff has not shown any adverse actions sustained as

a result of the District's alleged misconduct.  As explained above, plaintiff testified that she was

able to perform her job despite the absences of the requested items.  During deposition, plaintiff

testified that not only had she had applied for and received extended sick leave through October

2002, due to her plans to have surgery, but she also remained absent on sick leave up until the

point in 2003 when her sick leave ran out.  The following colloquy occurred at deposition:

Q     In 2002 to 2003, prior to the time that you were placed on leave without pay status you

were on sick leave, is that correct?

A    Sick Leave Bank, yes.

Q    Okay.

A    Yes.

Exhibit #1, Deposition of Murielene Gordon, at 201:15-21.

Plaintiff further testified that for the entire time she was out on sick leave, she continued to

receive her salary.

Q    So you were receiving pay checks during that time between October 2002 up until the time

you were placed on leave without pay status?  You were still getting paid, correct?

A    Correct.

*Id.,* at 205:9-13.

Plaintiff alleges that defendant placed her on absent without leave status in February,

2003, due to her disability.  The record evidence establishes that plaintiff was placed on leave

without pay status not because of her disability, but because she had no more leave.  In fact,

plaintiff received a letter from Ballou, dated February 26, 2003, which informed her that she was

currently on absent without leave status, and was directed to report to work by March 10, 2003.

See Exhibit #1, Deposition of Murielene Gordon, 205:16-207:18.  Although she was medically

cleared by her doctor to return to work in October 2002, she did not report to work although

instructed to do so.  See Exhibit #1, Deposition of Murielene Gordon, 207:20-208:2.  As is

shown by the evidence, plaintiff was not placed on leave without pay status because of her

alleged disability, but because she had exhausted her leave, and had already been medically

cleared to return to work. *Id.,* at 121:10-122:7. Based on this record, no reasonable jury could

find that the District discriminated against plaintiff because of her disability, and/or that she

suffered any adverse consequences as a result of the District's alleged misconduct.

## IX.    CONCLUSION

For the foregoing reasons, the District of Columbia moves this Court to grant it summary

judgment on all claims against it.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

By:    ___Michael P. Bruckheim_____
MICHAEL P. BRUCKHEIM [455192]
Chief, Criminal Section
Public Safety Division
441 4TH Street, NW, 6th Floor-South
Washington, D.C. 20001
202-727-3807
E-mail: Michael.bruckheim@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MURIELENE GORDON,    :
            :
    Plaintiff,    :
            :
v.            :    Civil Action No. 05-1907 (EGS)
            :
DISTRICT OF COLUMBIA,   :
            :
    Defendant.   :

**DEFENDANT DISTRICT OF COLUMBIA'S**
**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

   In support of its Renewed Motion for Summary Judgment, the District submits its

Statement of Material Facts Not In Dispute, and states as follows:

1.  The plaintiff admits that her charge was not filed with the OHR/EEOC until "on or about

April 18, 2003." *See* Exhibit #1, Deposition of Murielene Gordon, 108:22-112:22.

2.  Plaintiff sent her notice of her intent to sue pursuant to D.C. Official Code § 12-309

(2001 ed.) on April 11, 2003. *See* Plaintiff's Complaint, ¶ 19.

3.  Plaintiff applied for and received extended sick leave through October due to her plans to

have surgery, but she also remained absent on sick leave up until the point in 2003 when her sick

leave ran out. Exhibit #1, Deposition of Murielene Gordon, 201:9-15.

4.  Plaintiff received her salary for the entire time that she was out on sick leave. Exhibit #1,

Deposition of Murielene Gordon, at 205:3-7.

5.  Plaintiff testified that despite receiving no official notification in writing that she was in

any way barred or suspended from working at Ballou, she made no effort to return to work after

the alleged verbal statement from the principal. Exhibit #1, Deposition of Murielene Gordon,

186:17-188:7.

6.  Plaintiff received a letter from Ballou, dated February 26, 2003, which informed her that

she was currently on absent without leave status, and to report to work by March 10, 2003. Exhibit #1, Deposition of Murielene Gordon at 205:16-207:18.

7.    After receiving the letter of February 26, 2003, plaintiff did not report to work for the remainder of the school year.  Exhibit #1, Deposition of Murielene Gordon, 205:16-207:18.

8.    Plaintiff was medically cleared by her doctor to return to work by March 7, 2003. Exhibit #1, Deposition of Murielene Gordon, at 217:5-21.

9.    Plaintiff remained at her job in the same position of teacher until her voluntary retirement in January, 2006.  Exhibit #1, Deposition of Murielene Gordon, 58: 10-16.

10.    Plaintiff testified that she is fully capable of bathing and taking care of her personal hygiene.  See Exhibit #1, Deposition of Murielene Gordon, 10:2-9; 303:20-304:1.

11.    Plaintiff walks up steps to enter her home, and needs to use even more stairs to reach her bedroom on the second level.  See Exhibit #1, Deposition of Murielene Gordon, 11:2-21; 12:1-4.

12.    Plaintiff walks down stairs to use the laundry room in the basement.  See Exhibit #1, Deposition of Murielene Gordon, 13:3-6; 16:12-16.

13.    Prior to 2004, plaintiff was using regular city buses to get to work everyday.  She had to walk from her home to the bus stop, and then from the bus stop to work.  See Exhibit #1, Deposition of Murielene Gordon, 299:21-301:9; 329: 8-18.

14.    Plaintiff did not start using Metro Access until January of 2004.  See Exhibit #1, Deposition of Murielene Gordon, 301:19-302:17.

15.     Plaintiff did not work at Ballou during the period after the 2001 school year until

October 2002, when she returned to Ballou.

16.     Plaintiff's OHR/EEOC complaint does not identify any specific acts committed by the

District or any claims that the District failed to act to accommodate her disability between the

period October 18, 2002, and April 18, 2003 (the 180-day period). *See* EEOC Complaint,

identified by plaintiff at deposition as Exhibit 9 (*see* Exhibit #1 at108:22-112:22), and hereto

attached as Exhibit #2.

<div style="margin-left: 40%;">

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

By:     ___Michael P. Bruckheim_____
MICHAEL P. BRUCKHEIM [455192]
Chief, Criminal Section
Public Safety Division
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-727-3807
E-mail:  Michael.bruckheim@dc.gov

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MURIELENE GORDON,                          :
                                           :
                Plaintiff,                 :
                                           :
v.                                         :        Civil Action No. 05-1907 (EGS)
                                           :
DISTRICT OF COLUMBIA,                      :
                                           :
                Defendant.                 :

## <u>ORDER</u>

This matter, having come before the Court on defendant District of Columbia's Renewed

Motion for Summary Judgment, its supporting Memorandum of Points and Authorities, and the

entire record herein, plaintiff's opposition thereto, if any, and the record herein, it is, this _____

day of _____, 200_,

ORDERED; that the said motion be, and hereby is, GRANTED for the reasons set forth

in the motion; and it is,

FURTHER ORDERED; that the judgment be entered on behalf of the defendant District

of Columbia.

_____
The Honorable Judge Sullivan
United States District Court
for the District of Columbia