UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MURIELENE GORDON, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 05-1907 (EGS) |
| | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| Defendant. | : |

**DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

Defendant District of Columbia (the "District"), by and through undersigned counsel, herein opposes plaintiff's Partial Motion for Summary Judgment. In support of its opposition, this defendant states as follows:

1. Plaintiff has inter-mixed her opposition to the District's Motion for Summary Judgment with her Partial Motion for Summary Judgment. Herein, the District will only respond to plaintiff's partial motion for summary judgment.

2. Plaintiff has failed to establish that she is entitled to summary judgment in this case. While she claims that this Court addressed whether she is disabled in its prior rulings, this defendant believes that this Court did not determine as a matter of law that she is disabled under the American With Disabilities Act ("ADA"). To the extent that it did, defendant believes it was not this Court's intention to do so, or the Court did so in error. Instead, the Court intended to deny the District's motion for summary judgment believing that plaintiff had presented sufficient evidence regarding her alleged disability to defeat the grant of summary judgment to the District.

      3.      To succeed on a claim under the ADA, a plaintiff first must prove that she was disabled within the meaning of the ADA.  The Supreme Court has held that to establish a disability under the ADA, a plaintiff must show that she has an impairment that **substantially** limits a major life activity.  *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 195 (2002).  According to the Court:

> "substantially limited" means "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same life activity."

*Id.* at 195-96 (quoting EEOC Regulations, 29 C.F.R. s 1630.2(j) (2001)).  The Court further noted that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled."  *Id.* at 196 (citing 42 U.S.C. § 12101(a)(1), emphasis added).

      To prevail under both the ADA and the Rehabilitation Act ("RA), plaintiff must not only show that she had a permanent or long-term impairment that substantially limits a major life activity, but that with a reasonable accommodation she could perform the essential functions of the job.  *See Stewart v. St. Elizabeth's Hospital*, 2007 U.S. Dist. LEXIS 56234 (D.C. Cir. 2007).  It is not sufficient for a plaintiff to provide evidence that his or her disability is capable of causing such limitations.  Instead, "a plaintiff must prove a substantial limit with specific evidence that *his particular* impairment substantially limits *his particular* major life activity."  *Waldrip v. General Electric Co.*, 325 F.3d 652, 656 (5th Cir. 2003) (emphasis in original).  The Fifth Circuit Court of Appeals explained:

> The ADA requires those 'claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.'" Toyota, 534 U.S. at 198 (quoting Albertson's, 527 U.S. at 567) (alterations omitted). A plaintiff cannot survive summary judgment by showing that an impairment like his own could substantially limit a major life activity of another person or in his own future.

>Rather, he must show that his impairment has actually and substantially limited the major life activity on which he relies.

*Id.*

When determining whether a plaintiff has shown a "substantial" limitation of a major life activity—such as walking, standing, bending, or lifting—"the central inquiry must be whether the claimant is **unable** to perform the variety of tasks central to most people's daily lives." *Toyota Motor*, 534 U.S. at 200-01, emphasis added.  According to the Supreme Court, courts making such a determination should focus on whether a plaintiff can perform household chores and personal hygiene because these are "the types of manual tasks of central importance to people's daily lives." *Id.* at 201.  These cases did not hold that if plaintiff has to bear some pain while performing this task, that she is automatically disabled.

For example, in *Black v. Roadway Express, Inc.*, 297 F.2d 445, 451 (6th Cir. 2002), the plaintiff alleged that due to several knee surgeries, he was substantially limited in the major life activities of "walking, kneeling, stooping, jogging, lifting, sitting in confined, restricted positions, running, [and] climbing."  In support of this allegation, the plaintiff attested that he could not kneel or stoop, could not sit for any extended period of time where movement was restricted, was able to walk—with a constant limp—only short distances, could not stand for long periods, could not exercise a full range of motion with his leg, and could not run or jog at all.  *Id.* at 450-51.  The Sixth Circuit Court of Appeals affirmed summary judgment for the defendants, holding that the plaintiff's "alleged inability to perform certain tasks or functions on a repeated or prolonged basis is **not enough**, as a matter of law, for him to meet the threshold requirement of proving that he is 'disabled.'"  *Id.* at 450, emphasis added.  The Sixth Circuit explained that "[m]oderate difficulty or pain experienced while walking does not rise to the level of a disability."  *Id* at 451.  The Court primarily based its decision on the fact that the plaintiff

could perform many tasks central to daily life. In his deposition, the plaintiff testified that, on an average day, he could clean his house, do the chores around the house, and "get a little exercise." *Id.* The Court concluded that "no reasonable jury could find the plaintiff disabled in any major life activity other than working." *Id.*

Similarly, in *Marinelli v. City of Erie*, 216 F.2d 354, 362 (3rd Cir. 2000), the plaintiff alleged that his back injury substantially limited his ability to engage in a major life activity because he was "unable to perform household chores, such as cleaning his floors," and he was "unable to lift objects on greater than a sedentary scale." The Third Circuit held that these allegations, even if true, could not satisfy the rigid standards for an ADA disability, writing:

> "courts have generally held that "cleaning," or, more generally, "doing housework," does not qualify as a major life activity. Although the EEOC regulations list "caring for oneself" as a major life activity, courts interpreting this regulation have held that such relates only to basic activities such as washing dishes and picking up trash. … In other words, "cleaning" is only considered a major life activity to the extent that such an activity is necessary for one to live in a healthy or sanitary environment. On the other hand, merely "performing housework other than basic chores" does not qualify as a major life activity."

*Id.* (internal citations omitted); *see also Toyota Motor*, 534 U.S. at 200-01 (holding that plaintiff had not established an ADA-protected disability as a matter of law because she "could still brush her teeth, wash her face, bathe, tend to her flower garden, fix breakfast, do laundry, and pick up around the house"); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (holding that plaintiff could not establish an ADA-protected disability based on his inability to shovel snow, garden, and mow his lawn); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that plaintiff could not establish ADA-protected "walking" disability based on her claim that she "walks with a limp and moves at a significantly slower pace than the average person," and that extreme cold exacerbates these conditions).

Courts also have **refused** to expand the scope of the ADA to include situations in which daily activities can be performed only with severe discomfort or pain. In *Weigert v. Georgetown University*, 120 F. Supp. 2d, 1, 10-11 (D.D.C. 2000), this Court held that a plaintiff's discomfort with the glare from fluorescent lights, sunlight, and other bright lights did not constitute a substantial limitation of a major life activity. The Court adopted reasoning set forth in *Lajaunie v. Hibernia Corp.*, 2000 U.S. Dist. LEXIS 1209 (E.D. La. Feb. 8, 2000), explaining that the *Lajuanie* plaintiff:

> was not materially hampered in the performance of life activities under circumstances similar to the plaintiff's. In *Lajaunie*, the plaintiff was diagnosed with corneal disease, which gave her problems with glare. The court determined that she was neither substantially limited nor materially hampered, although it was clear that because of the glare "she [could] no longer work in the garden, ride a bicycle and do crossword puzzles." 2000 U.S. Dist. LEXIS 1209, *18. The court relied on the plaintiff's doctor's report, which stated that the plaintiff's condition did not cause "ocular damage," notwithstanding the fact that her condition "could be extremely uncomfortable and quite distracting." *Id.* In dismissing her claims, the court held that to find that the plaintiff was "substantially limited" would dilute the meaning of "substantially limited" to simply "limited." *See id.*

*Weigert*, 120 F. Supp. 2d, at 11.

In *Carlene Thompson v. District of Columbia*, C.A. No. 01-1400 (March 27, 2006), U.S. District Court for the District of Columbia, Judge Henry Kennedy presiding, plaintiff, a D.C. employee, filed suit against the District because it allegedly failed to accommodate her disability under the ADA. Plaintiff claims she was injured in a car accident and suffers from "lumbrata disease" which causes her to walk with a cane. Plaintiff submitted that she notified the District of her inability to climb stairs and the District's only response was to assign her a temporary parking permit. The District filed a motion for summary judgment on the basis that plaintiff failed to show that she suffered from a disability within the meaning of the ADA. Plaintiff lived on the third floor of an apartment building, climbed the stairs to her apartment, vacuumed, ran

errands, climbed the steps to her job, and performed every task she was required to for her job. By Court Order, dated March 27, 2006, the Court granted the District's motion for summary judgment because plaintiff was not disabled within the meaning of the ADA.[1] See C.A. No. 01-1400, Docket Entry # 34; see Exhibit #3, Court Order.

In the instant case, plaintiff simply has not demonstrated that she has a substantial limitation of the major life activity of either walking or working. According to the record evidence, plaintiff's impairment **does not** prevent her from conducting those activities that have been deemed "of central importance to people's daily lives." *Toyota Motor*, 534 U.S. at 201. Plaintiff testified that she is fully capable of bathing and taking care of her personal hygiene. See Exhibit #1, Gordon dep., at 10:2-9; 303:20-304:1. The fact that plaintiff needs to walk up steps to enter her home, and needs to use even more stairs to reach her bedroom on the second level, evidences that she is not disabled. Gordon dep., at 11:2-21; 12:1-4. In addition, plaintiff walks down stairs to use the laundry room in the basement. Gordon dep., at 13:3-6; 16:12-16. Moreover, prior to 2004, plaintiff was using regular city buses to get to work everyday. She had to walk from her home to the bus stop, and then from the bus stop to work. Gordon dep., at 299:21-301:9; 329: 8-18 . In fact, she did not start using Metro Access until January of 2004. Gordon dep., at  301:19-302:17. As was shown in both the *Black Marinelli*, and *Thompson* decisions, supra, plaintiff's "painful" walking does not rise to the level of a disability for which she may be compensated.

Plaintiff argues that this defendant has not shown that she is not restricted in the major life activity of walking as compared to the average person in the general population. It is not this defendant's burden to do so. See Mtn., at pg. 18-19. Plaintiff filed this action against this

---

[1] The District recognizes that the *Thompson* case is not binding authority on this Court. However, the facts in *Thompson* and this case are substantially similar, and just as in *Thompson,* the District is entitled to summary judgment as a matter of law.

defendant and has the burden to prove her case, i.e., that she is disabled within the meaning of the ADA and RA, and that the District failed to accommodate her disability. Not only has plaintiff failed to show that she is disabled within the meaning of the ADA and RA, she has not shown that the requested accommodations were reasonable and/or would have assisted her in performing her duties. For example, plaintiff submits a letter from Dr. Samuel Scott dated April 7, 2003, to the D.C. Public Schools, as proof that she is disabled. This letter is in inadmissible format. See Fed. R. Civ. P. 56, providing that a party may use supporting and opposing affidavits made on personal knowledge to support a motion for summary judgment. *See also Patricia Hall v. District of Columbia, et al.,* C.A. No. 00-2313 (RCL), at Docket Entry # 44, pgs. 12-13, in which this Court refused to consider evidence that plaintiff could have reduced to admissible format but did not offer any reason for her failure to do so. Plaintiff failed to produce any affidavit from Dr. Scott and has proffered no reason why she failed to do so. See Motion, generally. Therefore, this Court should not consider the April 7, 2003, letter purportedly from Dr. Scott in determining any issue in this case.

To the extent the letter is considered, plaintiff still has not met her burden to show that she was disabled as a matter of law. The ADA and RA requires a **substantial** limitation of a major life activity. According to Dr. Scott, "Ms. Gordon has arthritis of her knees and hips with limits her physical mobility." The doctor did not indicate that it was a **substantial** limitation. See Dr. Scott's letter, hereto attached as Exhibit A. Moreover, according to the letter, accommodations were to include "no standing for more than five minutes at a time, no walking up and down stairs, no walking more than 50 yards at a time, no bending or stopping, no reaching above her shoulder level, and no lifting or carrying of 10 lbs. or greater." Exhibit A, at pg. 2.

Although plaintiff claims that the District failed to accommodate her disability, she has not shown that the requested accommodation that she requested through her doctor was not provided and/or was needed to assist her with the performance of her job. In fact, plaintiff testified that she continued to work at her job at a high level up to her non-disability retirement, and also performed those tasks central to daily life **without assistance or substantial limitation**. Gordon dep., at 32:15-33. Plaintiff testified that she is an "excellent teacher" always capable of achieving the highest possible performance rating. Gordon dep., at 101:10-16. Furthermore, plaintiff testified that **she did not need to walk or stand in order to teach her class.** Gordon dep., at 88:13-17; 90:6-22; 92:1-12. While plaintiff claims that by letter, she requested a key to leave her classroom during emergencies, the letter on which she relies is again in inadmissible format. See Pl.'s Exhibit 18, at Docket 45-5. More importantly, plaintiff testified that **she was always able to leave her classroom in an emergency situation**. Gordon dep., at 158:7-12. While plaintiff claims that she asked that meetings be scheduled in a location more accessible to her, she has not shown in this record that she missed any meeting because it was on a different floor, or that any meetings were scheduled on a floor which required her to walk up and down floors. In fact, plaintiff testified that her arthritis and use of a cane **never** prevented her from performing her job at a high level. Gordon dep., at 106:6-10. Plaintiff's own testimony demonstrates that her limitations did not affect a major life activity, nor did her limitations prohibit her from both completing her job and from performing her job at an "acceptable" level. *See Croy v. Cobe Laboratories, Inc.,* 345 F.3d 1199, 1204 (10th Cir. 2003) (holding that a plaintiff who shows an ability to work and who acknowledges performing at a satisfactory level of performance ultimately fails to show that her alleged impairment substantially limits a major life activity).

Plaintiff claims that it matters not that she was not at work during a period when she allegedly requested accommodations that were not provided. She attempts to broaden her claims to a "hostile work environment" claim. See Mtn., at pgs. 21-22. There simply is no merit to these arguments. Plaintiff has not pled any hostile work claim, and has not shown that the District failed to provide her with any accommodations that were necessary for her to perform her job. See Mtn., generally. If absent from work, this defendant would have no basis to provide plaintiff with any requested accommodations because she was not there to benefit from them. While plaintiff claims to have attempted to contact Dr. Bridges will she was out on leave, she has not shown that Dr. Bridges received any of her alleged phone calls, or was otherwise available to meet and/or speak with her. See Mtn., generally. Plaintiff admits that she received a letter from Dr. Bridges instructing her to return to work, but failed to show that she sent him a letter in return seeking other arrangements in lieu of returning to work as instructed. See Mtn, generally. Plaintiff's failure to establish that she suffers a **substantial** limitation of a major life activity, requires this Court to deny her Partial Motion for Summary Judgment.

5.   Plaintiff has not suffered any adverse action as a result of the District's alleged violation of the ADA or RA. Plaintiff avers that she told her supervisor Dr. Bridges that she would return to teach in September 2002, but was not medically qualified to return to work until October 2002. Exhibit #1, Deposition of Murielene Gordon, 186:6-190:13. Plaintiff was paid for her sick leave until February 3, 2003, when she no longer had leave. Exhibit #1, Deposition of Murielene Gordon, at 205:3-7. While plaintiff recognized that the District had to have someone teach her class in her absence, she claims that her supervisor Dr. Bridges orally told her that he did not want her at Ballou, and intended to transfer her to another school. *Id.* at 187:3 through 190:13. Within her OHR/EEOC Complaint, plaintiff avers that the District: 1) refused

to permit her to return to work since late October 2002, and 2) placed her on absent without leave status in February, 2003, purportedly in violation of the American With Disabilities Act and Rehabilitation Act. *See* Exhibit #2. During deposition, plaintiff admitted that she never received anything in writing that notified her that she was not permitted to return to work. Exhibit #1, Deposition of Murielene Gordon, at186:17 -187:2. Plaintiff further testified that she made no attempt to return to work. Gordon dep. at 187:13-188:7. Plaintiff admits that by letter, dated February 26, 2003, Dr. Bridges instructed her to report to duty by March 10, 2003, but she refused and/or failed to do so. *Id.,* at 205:16-207:18.

In order to prevail on her disparate treatment claim against the District, plaintiff must set forth a *prima facie* case of discrimination, and prove the following factors: (1) that she belongs to one or more protected classes; (2) that she was qualified for her position; (3) that she was subjected to an adverse action; and (4) that the District took adverse action against her because she is a member of a protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If an employee succeeds in establishing a *prima facie* case, the burden "shifts to the employer to articulate legitimate, non-discriminatory reasons for the challenged employment decision." *Aka v. Washington Hosp. Ctr*, 156 F.3d 1284, 1288 (D.C. Cir. 1998)(en banc). If the employer articulates a legitimate, non-discriminatory reason for the termination, the presumption of discrimination raised by the *prima facie* case is rebutted and "drops from the case". See *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At that point, the employee must demonstrate that the employer's explanation is a mere pretext for discrimination. *See Aka*, 156 F.3d at 1288. Throughout, the employee retains "the ultimate burden of persuading the court that he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Plaintiff has not satisfied her *prima facie* case because she cannot prove that she was discriminated against because of her disability or that she suffered an adverse action. *See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). The D.C. Circuit Court of Appeals has held that, "to establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" *Stewart*, 275 F.3d at 1134 (quoting *Brown*, 199 F.3d at 452). The Circuit has defined a "tangible employment action," a phrase that is interchangeable with "adverse employment action," as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stewart*, 275 F.3d at 1135 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

Plaintiff has not shown that she was treated differently than her co-workers without disabilities. In fact, her motion does not address this argument, nor does the record support any adverse action she sustained. See Mtn., generally. When questioned whether she was aware of other teachers with problems with Dr. Bridges, plaintiff testified that there was one "young man, … [Dr. Bridges] was horrible to this gentleman. He was demeaning, he would call him over the PA system and call him names." Gordon dep. at 393:12-22. "Then there was a counselor, she complained of mold in the office. She had a health problem, and … [Dr. Bridges] fought her on [her] handicap space." Gordon dep. at 393:1-8. While she claims that she did not have access to an accessible bathroom, that she did not have keys to locked emergency doors, that the heating and cooling system was non-functional, that shelves were too high, and that she did not have access to a copier, she has not shown that the failure to provide her with her requests was based

on her disability, that others received the items she requested, or that the failure to provide her with the requested items violated her rights under the ADA, RA, or the DC HRA.  Moreover, plaintiff has now shown any adverse actions sustained as a result of the District's alleged misconduct.  As explained above, plaintiff testified that she was able to perform her job despite the absences of the requested items.  During deposition, plaintiff testified that not only had she had applied for and received extended sick leave through October 2002, due to her plans to have surgery, but she also remained absent on sick leave up until the point in 2003 when her sick leave ran out.  The following colloquy occurred at deposition:

> Q   In 2002 to 2003, prior to the time that you were placed on leave without pay status you were on sick leave, is that correct?
>
> A   Sick Leave Bank, yes.
>
> Q   Okay.
>
> A   Yes.

Exhibit #1, Deposition of Murielene Gordon, at 201:9-15.

Plaintiff further testified that for the entire time she was out on sick leave, she continued to receive her salary.

> Q   So you were receiving pay checks during that time between October 2002 up until the time you were placed on leave without pay status?  You were still getting paid, correct?
>
> A   Correct.

*Id.,* at 205:3-7.

　　Plaintiff alleges that defendant placed her on absent without leave status in February, 2003, due to her disability.  The record evidence establishes that plaintiff was placed on leave without pay status not because of her disability, but because **she had no more leave**.  In fact,

plaintiff received a letter from Ballou, dated February 26, 2003, which informed her that she was currently on absent without leave status, and was directed to report to work by March 10, 2003. Gordon dep. at 205:16-207:18. Although she was medically cleared by her doctor to return to work in October 2002, she did not report to work although instructed to do so. Gordon dep. at 207:20-208:2. Based on this record, no reasonable jury could find that the District discriminated against plaintiff because of her disability, and/or that she suffered any adverse consequences as a result of the District's alleged misconduct.

For the foregoing reasons, the District of Columbia requests this Court to deny plaintiff's partial motion for summary judgment, and to grant it summary judgment as a matter of law.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

By: ___Michael P. Bruckheim_____
MICHAEL P. BRUCKHEIM [455192]
Chief, Criminal Section
Public Safety Division
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-727-3807
E-mail:  Michael.bruckheim@dc.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MURIELENE GORDON, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-1907 (EGS) |
| DISTRICT OF COLUMBIA, | : |
| Defendant. | : |

## DEFENDANT DISTRICT OF COLUMBIA'S RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In support of its opposition to Plaintiff's Statement of Material Facts Not In Dispute, the District states as follows:

1. The District disputes that plaintiff is substantially impaired in the major life activity of working. See Dr. Samuel Scott's letter, hereto attached as Exhibit A, in which the doctor indicates that she has limitation in mobility, but does not character it as a substantial impairment. See also, plaintiff's testimony that she is fully capable of bathing and taking care of her personal hygiene. See Exhibit #1, Gordon dep., at 10:2-9; 303:20-304:1. The fact that plaintiff needs to walk up steps to enter her home, and needs to use even more stairs to reach her bedroom on the second level, evidences that she is not disabled within the meaning of the ADA and/or RA. Gordon dep., at 11:2-21; 12:1-4. In addition, plaintiff walks down stairs to use the laundry room in the basement. Gordon dep., at 13:3-6; 16:12-16. Moreover, prior to 2004, plaintiff was using regular city buses to get to work everyday. She had to walk from her home to the bus stop, and then from the bus stop to work. Gordon dep., at 299:21-301:9; 329: 8-18.

2. .The District denies that it knew that plaintiff was disabled within the meaning of the ADA. See Statement No. 1, and its references.

3. The District denies that plaintiff was substantially limited in a major life activity when she worked with the District commencing in 2000-2001. See Response No. 1 and its references.

                            Respectfully submitted,

                            PETER J. NICKLES
                            Acting Attorney General for the District of Columbia

                            GEORGE C. VALENTINE
                            Deputy Attorney General
                            Civil Litigation Division

                            _Patricia A. Jones_____
                            PATRICIA A. JONES [428132]
                            Chief, General Litigation Sec. IV

By:    ___Michael P. Bruckheim_____
         MICHAEL P. BRUCKHEIM [455192]
         Chief, Criminal Section
         Public Safety Division
         441 4TH Street, NW, 6th Floor-South
         Washington, D.C.  20001
         202-727-3807
         E-mail:  Michael.bruckheim@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MURIELENE GORDON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-1907 (EGS) |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT DISTRICT OF COLUMBIA'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE WHICH REQUIRE DENIAL OF PLAINTIFF'S MOTION

In support of its opposition to Plaintiff's Statement of Material Facts Not In Dispute, the District states as follows:

1. Dr. Samuel Scott's letter, dated April 7, 2003, is not in Affidavit format or other admissible format. See Exhibit A.

2. Dr. Samuel Scott's letter, dated April 7, 2003, indicates that plaintiff is limited in physical mobility, but does not characterize her condition as substantially limiting. See Exhibit A.

4. Plaintiff received her salary for the entire time that she was out on sick leave. Exhibit #1, Deposition of Murielene Gordon, at 205:3-7.

5. Plaintiff testified that despite receiving no official notification in writing that she was in any way barred or suspended from working at Ballou, other than allegedly make phone calls to Dr. Bridges, she made no effort to return to work after the alleged verbal statement from the principal. Exhibit #1, Deposition of Murielene Gordon, 186:17-188:7.

6.     Plaintiff received a letter from Ballou, dated February 26, 2003, which informed her that she was currently on absent without leave status, and to report to work by March 10, 2003. Exhibit #1, Deposition of Murielene Gordon at 205:16-207:18.

7.     After receiving the letter of February 26, 2003, plaintiff did not report to work for the remainder of the school year.  Exhibit #2, Deposition of Murielene Gordon, 205:16-207:18.

8.     Plaintiff was medically cleared by her doctor to return to work by March 7, 2003. Exhibit #1, Deposition of Murielene Gordon, at 217:5-21.

9.     Plaintiff remained at her job in the same position of teacher until her voluntary retirement in January, 2006.  Exhibit #1, Deposition of Murielene Gordon, 58: 10-16.

10.    Plaintiff testified that she is fully capable of bathing and taking care of her personal hygiene.  See Exhibit #1, Gordon dep., at 10:2-9; 303:20-304:1.

11.    Plaintiff walks up steps to enter her home, and needs to use even more stairs to reach her bedroom on the second level.  Gordon dep., at 11:2-21; 12:1-4.

12.    Plaintiff walks down stairs to use the laundry room in the basement.  Gordon dep., at 13:3-6; 16:12-16.

13.    Prior to 2004, plaintiff was using regular city buses to get to work everyday.  She had to walk from her home to the bus stop, and then from the bus stop to work.  Gordon dep., at 299:21-301:9; 329: 8-18.

14.    Plaintiff did not start using Metro Access until January of 2004.  Gordon dep., at 301:19-302:17.

15.    Plaintiff did not work at Ballou during the period after the 2001 school year until October 2002, when she returned to Ballou.

16. Plaintiff's OHR/EEOC complaint does not identify any specific acts committed by the District or any claims that the District failed to act to accommodate her disability between the period October 18, 2002, and April 18, 2003 (the 180-day period).[2] *See* EEOC Complaint, identified by plaintiff at deposition as Exhibit 9 (*see* Exhibit #1 at108:22-112:22), and hereto attached as Exhibit #2.

                                                Respectfully submitted,

                                                PETER J. NICKLES
                                                Acting Attorney General for the District of Columbia

                                                GEORGE C. VALENTINE
                                                Deputy Attorney General
                                                Civil Litigation Division

                                                _Patricia A. Jones_____
                                                PATRICIA A. JONES [428132]
                                                Chief, General Litigation Sec. IV

By:    ___Michael P. Bruckheim_____
            MICHAEL P. BRUCKHEIM [455192]
            Chief, Criminal Section
            Public Safety Division
            441 4TH Street, NW, 6th Floor-South
            Washington, D.C.  20001
            202-727-3807
            E-mail:  Michael.bruckheim@dc.gov

---

[2] Plaintiff avers that she was placed on leave without pay status on or about February 27, 2003. As will be discussed more fully herein, plaintiff cannot recover under the ADA, RA, or DCHRA for this claim.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MURIELENE GORDON, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :  Civil Action No. 05-1907 (EGS) |
| | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| Defendant. | : |

## **ORDER**

Upon consideration of plaintiff Murielene Gordon's Partial Motion for Summary Judgment, the District of Columbia's opposition thereto, and the record herein, it is this \_\_\_\_ day of _____, 200\_,

ORDERED; that the said motion be, and hereby is, DENIED for the reasons set forth in the District's opposition.

_____
The Honorable Judge Sullivan
United States District Court
for the District of Columbia