UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MURIELENE GORDON,   :
           :
   Plaintiff,   :
           :
v.         :   Civil Action No. 05-1907 (EGS)
           :
DISTRICT OF COLUMBIA,  :
           :
   Defendant.   :


**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION
TO ITS MOTION FOR SUMMARY JUDGMENT**

Defendant District of Columbia (the "District"), by and through undersigned counsel, herein

replies to plaintiff's opposition to its motion for summary judgment. In support of its Reply, this

defendant states as follows:

  A.  Plaintiff Is Not Disabled Within the Meaning of the American With Disabilities Act
     or Rehabilitation Act.

Contrary to plaintiff's argument, she is not entitled to summary judgment based on the law

in this jurisdiction or this Court's Order denying a previously filed motion for summary judgment

by the District. To succeed on a claim under the American With Disabilities Act (hereafter

"ADA"), a plaintiff first **must prove** that she was disabled within the meaning of the ADA. This

is not an easy burden to meet. In fact, the Supreme Court has held that to establish a disability

under the ADA, a plaintiff must show that she has an impairment that **substantially** limits a

major life activity. See *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 195 (2002),

emphasis added. According to the Court in the *Toyota* case:

> "substantially limited" means "unable to perform a major life activity that the
> average person in the general population can perform"; or "significantly restricted
> as to the condition, manner or duration under which an individual can perform a

major life activity as compared to the condition, manner, or duration under which
the average person in the general population can perform the same life activity."

*Id.* at 195-96 (quoting EEOC Regulations, 29 C.F.R. s 1630.2(j) (2001)).  The Court further

noted that "these terms need to be interpreted strictly to create a demanding standard for

qualifying as disabled."  *Id.* at 196 (citing 42 U.S.C. § 12101(a)(1), emphasis added).

Similarly, to prevail under the Rehabilitation Act ("RA"), plaintiff must not only show

that she had a permanent or long-term impairment that **substantially** limits a major life activity,

but that with a reasonable accommodation she could perform the essential functions of the job.

*See Stewart v. St. Elizabeth's Hospital*, 2007 U.S. Dist. LEXIS 56234 (D.C. Cir. 2007).  It is not

sufficient for a plaintiff to provide evidence that his or her disability **is capable** of causing such

limitations.  Instead, "a plaintiff must prove a substantial limit with specific evidence that *his*

*particular* impairment substantially limits *his particular* major life activity."  *Waldrip v. General*

*Electric Co.*, 325 F.3d 652, 656 (5th Cir. 2003) (emphasis added).  The Fifth Circuit Court of

Appeals explained:

> The ADA requires those 'claiming the Act's protection to prove a disability by
> offering evidence that the extent of the limitation caused by their impairment in
> terms of their own experience is substantial.'" *Toyota Motor*, 534 U.S. at 198
> (quoting *Albertson v. Kirkingburg,* 527 U.S. 555, 567 (1999)) (alterations
> omitted). A plaintiff cannot survive summary judgment by showing that an
> impairment like his own could substantially limit a major life activity of another
> person or in his own future. Rather, he must show that his impairment has actually
> and substantially limited the major life activity on which he relies.

*Id.*

When determining whether a plaintiff has shown a "substantial" limitation of a major life

activity—such as walking, standing, bending, or lifting—"the central inquiry must be whether

the claimant is **unable** to perform the variety of tasks central to most people's daily lives."

*Toyota Motor*, 534 U.S. at 200-01, emphasis added.  According to the Supreme Court, courts

making such a determination should focus on whether a plaintiff can perform household chores and personal hygiene because these are "the types of manual tasks of central importance to people's daily lives." *Id.* at 201.  These cases did not hold that if plaintiff has to bear some pain while performing this task, that she is automatically disabled.

In *Black v. Roadway Express, Inc.*, 297 F.2d 445, 451 (6th Cir. 2002), the plaintiff alleged that due to several knee surgeries, he was substantially limited in the major life activities of "walking, kneeling, stooping, jogging, lifting, sitting in confined, restricted positions, running, [and] climbing."  In support of this allegation, the plaintiff attested that he could not kneel or stoop, could not sit for any extended period of time where movement was restricted, was able to walk—with a constant limp—only short distances, could not stand for long periods, could not exercise a full range of motion with his leg, and could not run or jog at all.  *Id.* at 450-51.  The Sixth Circuit Court of Appeals affirmed summary judgment for the defendants, holding that the plaintiff's "alleged inability to perform certain tasks or functions on a repeated or prolonged basis is **not enough**, as a matter of law, for him to meet the threshold requirement of proving that he is 'disabled.'"  *Id.* at 450, emphasis added.  The Sixth Circuit explained that "[m]oderate difficulty or pain experienced while walking does not rise to the level of a disability." *Id* at 451.  The Court primarily based its decision on the fact that the plaintiff could perform many tasks central to daily life.  In his deposition, the plaintiff testified that, on an average day, he could clean his house, do the chores around the house, and "get a little exercise."  *Id.*  The Court concluded that "no reasonable jury could find the plaintiff disabled in any major life activity other than working."  *Id.*  In this case, plaintiff has also testified that she can perform many of the activities of daily life.

Similarly, in *Marinelli v. City of Erie*, 216 F.2d 354, 362 (3rd Cir. 2000), the plaintiff

alleged that his back injury substantially limited his ability to engage in a major life activity

because he was "unable to perform household chores, such as cleaning his floors," and he was

"unable to lift objects on greater than a sedentary scale."  The Third Circuit held that these

allegations, even if true, could not satisfy the rigid standards for an ADA disability, writing:

> "courts have generally held that "cleaning," or, more generally, "doing
> housework," does not qualify as a major life activity.  Although the EEOC
> regulations list "caring for oneself" as a major life activity, courts interpreting this
> regulation have held that such relates only to basic activities such as washing
> dishes and picking up trash. … In other words, "cleaning" is only considered a
> major life activity to the extent that such an activity is necessary for one to live in
> a healthy or sanitary environment.  On the other hand, merely "performing
> housework other than basic chores" does not qualify as a major life activity."

*Id.* (internal citations omitted); *see also Toyota Motor*, 534 U.S. at 200-01 (holding that plaintiff

had not established an ADA-protected disability as a matter of law because she "could still brush

her teeth, wash her face, bathe, tend to her flower garden, fix breakfast, do laundry, and pick up

around the house"); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (holding that

plaintiff could not establish an ADA-protected disability based on his inability to shovel snow,

garden, and mow his lawn); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999)

(holding that plaintiff could not establish ADA-protected "walking" disability based on her claim

that she "walks with a limp and moves at a significantly slower pace than the average person,"

and that extreme cold exacerbates these conditions).

Courts also have **refused** to expand the scope of the ADA or RA to include situations in

which daily activities can be performed only with severe discomfort or pain.  In *Weigert v.

Georgetown University*, 120 F. Supp. 2d, 1, 10-11 (D.D.C. 2000), this Court held that a

plaintiff's discomfort with the glare from fluorescent lights, sunlight, and other bright lights did

not constitute a substantial limitation of a major life activity.  The Court adopted reasoning set

forth in *Lajaunie v. Hibernia Corp.*, 2000 U.S. Dist. LEXIS 1209 (E.D. La. Feb. 8, 2000),

explaining that the *Weigert* plaintiff:

> was not materially hampered in the performance of life activities under
> circumstances similar to the plaintiff in *Lajaunie*.  In *Lajaunie*, the plaintiff was
> diagnosed with corneal disease, which gave her problems with glare.  The court
> determined that she was neither substantially limited nor materially hampered,
> although it was clear that because of the glare "she [could] no longer work in the
> garden, ride a bicycle and do crossword puzzles."  2000 U.S. Dist. LEXIS 1209,
> *18.  The court relied on the plaintiff's doctor's report, which stated that the
> plaintiff's condition did not cause "ocular damage," notwithstanding the fact that
> her condition "could be extremely uncomfortable and quite distracting."  *Id.*  In
> dismissing her claims, the court held that to find that the plaintiff was
> "substantially limited" would dilute the meaning of "substantially limited" to
> simply "limited."  *See Id.*

*Weigert*, 120 F. Supp. 2d, at 11.

In *Carlene Thompson v. District of Columbia*, C.A. No. 01-1400 (March 27, 2006),  U.S.

District Court for the District of Columbia, Judge Henry Kennedy presiding, plaintiff, a D.C.

employee, filed suit against the District because it allegedly failed to accommodate her disability

under the ADA.   Plaintiff claims she was injured in a car accident and suffers from "lumbrata

disease" which causes her to walk with a cane.  Plaintiff submitted that she notified the District

of her inability to climb stairs and the District's only response was to assign her a temporary

parking permit.  The District filed a motion for summary judgment on the basis that plaintiff

failed to show that she suffered from a disability within the meaning of the ADA.  Plaintiff lived

on the third floor of an apartment building, climbed the stairs to her apartment, vacuumed, ran

errands, climbed the steps to her job, and performed every task she was required to for her job.

By Court Order, dated March 27, 2006, the Court granted the District's motion for summary

5

judgment because plaintiff was not disabled within the meaning of the ADA.[1]  See C.A. No. 01-1400, Docket Entry # 34; see Exhibit #3, Court Order.

In the instant case, plaintiff simply has not demonstrated that she has a substantial limitation of the major life activity of either walking or working.  According to the record evidence, plaintiff's impairment **does not** prevent her from conducting those activities that have been deemed "of central importance to people's daily lives."  *Toyota Motor*, 534 U.S. at 201. In Plaintiff Gordon testified that she is fully capable of bathing and taking care of her personal hygiene.  See Exhibit #1, Gordon dep., at 10:2-9; 303:20-304:1.  The fact that plaintiff needs to walk up steps to enter her home, and needs to use even more stairs to reach her bedroom on the second level, evidences that she is not disabled.  Gordon dep., at 11:2-21; 12:1-4.  In addition, plaintiff walks down stairs to use the laundry room in the basement.  Gordon dep., at 13:3-6; 16:12-16.  Moreover, prior to 2004, plaintiff was using regular city buses to get to work everyday.  She had to walk from her home to the bus stop, and then from the bus stop to work.  Gordon dep., at 299:21-301:9; 329: 8-18 .  In fact, she did not start using Metro Access until January of 2004.  Gordon dep., at  301:19-302:17.  Plaintiff claims that because MetroAccess is for persons with disabilities, this is proof that she is disabled.  Plaintiff fails that under the ADA and RA, a person must not only be disabled, but the disability must substantially affect a major life activity.  As was shown in both the *Black Marinelli*, and *Thompson* decisions, supra, plaintiff's "painful" walking does not rise to the level of a disability that substantially affects a major life activity and for which she may be compensated.

---

[1] The District recognizes that the *Thompson* case is not binding authority on this Court.  However, the facts in *Thompson* and this case are substantially similar, and just as in *Thompson,* the District is entitled to summary judgment as a matter of law.

Plaintiff argues that this defendant has not shown that she is not restricted in the major

life activity of walking as compared to the average person in the general population.  It is not this

defendant's burden to do so.  See Mtn., at pg. 18-19.  Plaintiff filed this action against this

defendant and has the burden to prove her case, i.e., that she is disabled within the meaning of

the ADA and RA, and that the District failed to accommodate her disability.  Not only has

plaintiff failed to show that she is disabled within the meaning of the ADA and RA, she has not

shown that the requested accommodations were reasonable and/or would have assisted her in

performing her duties.  For example, plaintiff submits a letter from Dr. Samuel Scott, dated April

7, 2003, to the D.C. Public Schools, as proof that she is disabled.  This letter is in inadmissible

format.  See Fed. R. Civ. P. 56, providing that a party may use supporting and opposing

affidavits made on personal knowledge to support a motion for summary judgment.  *See also*

*Patricia Hall v. District of Columbia, et al.,* C.A. No. 00-2313 (RCL), at Docket Entry # 44, pgs.

12-13, in which this Court refused to consider evidence that plaintiff could have reduced to

admissible format but did not offer any reason for her failure to do so.  Plaintiff failed to produce

any affidavit from Dr. Scott and has proffered no reason why she failed to do so.  See Motion,

generally.  Therefore, this Court should not consider the April 7, 2003, letter purportedly from

Dr. Scott in determining any issue in this case.

To the extent the letter is considered, plaintiff still has not met her burden to show that

she was disabled as a matter of law.  The ADA and RA requires a **substantial** limitation of a

major life activity.  According to Dr. Scott, "Ms. Gordon has arthritis of her knees and hips with

limits her physical mobility."  The doctor did not indicate that it was a **substantial** limitation.

See Dr. Scott's letter, hereto attached as Exhibit A.  Moreover, according to the letter,

accommodations were to include "no standing for more than five minutes at a time, no walking

up and down stairs, no walking more than 50 yards at a time, no bending or stopping, no

reaching above her shoulder level, and no lifting or carrying of 10 lbs. or greater." Exhibit A, at

pg. 2.

B.      Plaintiff Has Not Established that the District Failed to Accommodate Her Alleged
        Disability and/or that the Failure to Accommodate Her Alleged Disability Prevented Her
        From Performing Her Job.

Although plaintiff claims that the District failed to accommodate her disability, she has

not shown that the requested accommodation that she requested through her doctor was not

provided and/or was needed to assist her with the performance of her job.  In fact, plaintiff

testified that she continued to work at her job at a high level up to her non-disability retirement,

and also performed those tasks central to daily life **without assistance or substantial limitation**.

Gordon dep., at 32:15-33.  Plaintiff testified that she is an "excellent teacher" always capable of

achieving the highest possible performance rating.  Gordon dep., at 101:10-16.  Furthermore,

plaintiff testified that **she did not need to walk or stand in order to teach her class.**  Gordon

dep., at 88:13-17; 90:6-22; 92:1-12.  While plaintiff claims that by letter, she requested a key to

leave her classroom during emergencies, the letter on which she relies is again in inadmissible

format.  See Pl.'s Exhibit 18, at Docket 45-5.  More importantly, plaintiff testified that **she was**

**always able to leave her classroom in an emergency situation**.  Gordon dep., at 158:7-12.

While plaintiff claims that she asked that meetings be scheduled in a location more accessible to

her, she has not shown in this record that she missed any meeting because it was on a different

floor, or that any meetings were scheduled on a floor which required her to walk up and down

floors.  See record, generally.  In fact, plaintiff testified that her arthritis and use of a cane **never**

prevented her from performing her job at a high level.  Gordon dep., at 106:6-10.

Plaintiff's own testimony demonstrates that her limitations did not **substantially** affect a major life activity, nor did her limitations prohibit her from both completing her job and from performing her job at an "acceptable" level. *See Croy v. Cobe Laboratories, Inc.,* 345 F.3d 1199, 1204 (10th Cir. 2003) (holding that a plaintiff who shows an ability to work and who acknowledges performing at a satisfactory level of performance ultimately fails to show that her alleged impairment substantially limits a major life activity).

Plaintiff claims that it matters not that she was not at work during a period when she allegedly requested accommodations that were not provided. She attempts to broaden her claims to a "hostile work environment" claim. See Mtn., at pgs. 21-22. There simply is no merit to these arguments. Plaintiff has not pled any hostile work claim, and has not shown that the District failed to provide her with any accommodations that were necessary for her to perform her job. See Mtn., generally. If absent from work, this defendant would have no basis to provide plaintiff with any requested accommodations because she was not there to benefit from them. While plaintiff claims to have attempted to contact Dr. Bridges while she was out on leave, she has not shown that Dr. Bridges received any of her alleged phone calls, or was otherwise available to meet and/or speak with her. See Mtn., generally. Plaintiff has not alleged nor shown that because she was unable to contact Dr. Bridges, she wrote him correspondence seeking information or any other requested relief. In fact, plaintiff admits that she received a letter from Dr. Bridges instructing her to return to work, but failed to show that she sent him a letter in return seeking other arrangements in lieu of returning to work as instructed. See Mtn, generally. Plaintiff's failure to establish that she suffers a **substantial** limitation of a major life activity, requires this Court to grant the District's Motion for Summary Judgment.

Plaintiff has not suffered any adverse action as a result of the District's alleged violation

of the ADA or RA.   Plaintiff avers that she told her supervisor Dr. Bridges that she would return

to teach in September 2002, but was not medically qualified to return to work until October

2002.  Exhibit #1, Deposition of Murielene Gordon, 186:6-190:13.  Plaintiff was paid for her

sick leave until February 3, 2003, when she no longer had leave.  Exhibit #1, Deposition of

Murielene Gordon, at 205:3-7.  While plaintiff recognized that the District had to have someone

teach her class in her absence, she claims that her supervisor Dr. Bridges orally told her that he

did not want her at Ballou, and intended to transfer her to another school.  *Id.* at 187:3 through

190:13. Within her OHR/EEOC Complaint, plaintiff avers that the District:  1) refused to permit

her to return to work since late October 2002, and 2) placed her on absent without leave status in

February, 2003, purportedly in violation of the ADA and RA.  *See* Exhibit #2.  During

deposition, plaintiff admitted that she never received anything in writing that notified her that she

was not permitted to return to work.  Exhibit #1, Deposition of Murielene Gordon, at186:17 -

187:2.  Plaintiff further testified that she made no attempt to return to work.  Gordon dep. at

187:13-188:7.  Plaintiff admits that by letter, dated February 26, 2003, Dr. Bridges instructed her

to report to duty by March 10, 2003, but she refused and/or failed to do so.  *Id.,* at 205:16-

207:18.

In order to prevail on her disparate treatment claim against the District, plaintiff must set

forth a *prima facie* case of discrimination, and prove the following factors:  (1) that she belongs

to one or more protected classes; (2) that she was qualified for her position; (3) that she was

subjected to an adverse action; and (4) that the District took adverse action against her because

she is a member of a protected class.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

802 (1973).  If an employee succeeds in establishing a *prima facie* case, the burden "shifts to the

employer to articulate legitimate, non-discriminatory reasons for the challenged employment

decision." *Aka v. Washington Hosp. Ctr*, 156 F.3d 1284, 1288 (D.C. Cir. 1998)(en banc).  If the

employer articulates a legitimate, non-discriminatory reason for the termination, the presumption

of discrimination raised by the *prima facie* case is rebutted and "drops from the case".  See *Texas*

*Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  At that point, the employee

must demonstrate that the employer's explanation is a mere pretext for discrimination. *See Aka*,

156 F.3d at 1288.  Throughout, the employee retains "the ultimate burden of persuading the court

that he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Plaintiff has not satisfied her *prima facie* case because she cannot prove that she suffered

an adverse action or that she was discriminated against because of her disability.  *See Stewart v.*

*Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir.

1999).  The D.C. Circuit Court of Appeals has held that, "to establish an adverse personnel

action in the absence of diminution of pay or benefits, plaintiff must show an action with

'materially adverse consequences affecting the terms, conditions, or privileges of employment.'"

*Stewart*, 275 F.3d at 1134 (quoting *Brown*, 199 F.3d at 452).  The Circuit has defined a "tangible

employment action," a phrase that is interchangeable with "adverse employment action," as "a

significant change in employment status, such as hiring, firing, failing to promote, reassignment

with significantly different responsibilities, or a decision causing a significant change in

benefits." *Stewart*, 275 F.3d at 1135 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742

(1998)).

Plaintiff was not fired from her position, nor did she lose pay because of the District's

alleged misconduct.  During deposition, plaintiff testified that not only had she had applied for

and received extended sick leave through October 2002, due to her plans to have surgery, but she

also remained absent on sick leave up until the point in 2003 when her sick leave ran out.  The

following colloquy occurred at deposition:

Q     In 2002 to 2003, prior to the time that you were placed on leave without pay status you

were on sick leave, is that correct?

A     Sick Leave Bank, yes.

Q     Okay.

A     Yes.

Exhibit #1, Deposition of Murielene Gordon, at 201:9-15.

Plaintiff further testified that for the entire time she was out on sick leave, she continued to

receive her salary.

Q     So you were receiving pay checks during that time between October 2002 up until the time

you were placed on leave without pay status?  You were still getting paid, correct?

A     Correct.

*Id.,* at 205:3-7.

Plaintiff alleges that defendant placed her on absent without leave status in February,

2003, due to her disability.  The record evidence establishes that plaintiff was placed on leave

without pay status not because of her disability, but because **she had no more leave**.  In fact,

plaintiff received a letter from Ballou, dated February 26, 2003, which informed her that she was

currently on absent without leave status, and was directed to report to work by March 10, 2003.

Gordon dep. at 205:16-207:18.  Although she was medically cleared by her doctor to return to

work in October 2002, she did not report to work although instructed to do so.  Gordon dep. at

207:20-208:2.  Based on this record, no reasonable jury could find that plaintiff she suffered any

adverse consequences as a result of the District's alleged misconduct.

Plaintiff has not shown that she was treated differently than her co-workers without disabilities.  Plaintiff fails to address this argument in her opposition to the District's motion for summary judgment, nor does the record support any adverse action she sustained.  See Mtn., generally.  When questioned whether she was aware of other teachers with problems with Dr. Bridges, plaintiff testified that there was one "young man, … [Dr. Bridges] was horrible to this gentleman.  He was demeaning, he would call him over the PA system and call him names."  Gordon dep. at 393:12-22.  "Then there was a counselor, she complained of mold in the office. She had a health problem, and … [Dr. Bridges] fought her on [her] handicap space."  Gordon dep. at 393:1-8.  Plaintiff does not identify the name of the person who allegedly had the health problem, does not indicate when this alleged incident took place, or explain the basis of her claimed knowledge.

While plaintiff claims that she did not have access to an accessible bathroom, that she did not have keys to locked emergency doors, that the heating and cooling system was non-functional, that shelves were too high, and that she did not have access to a copier, she has not shown that the failure to provide her with these requests was based on her disability, that others received the items she requested, or that the failure to provide her with the requested items violated her rights under the ADA, RA, or the DC HRA.  Plaintiff's failure to show that she was discriminated against based on her disability, requires that judgment be entered in favor of the District of Columbia.

For the foregoing reasons, the District of Columbia requests this Court to grant its motion

for summary judgment.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

  /s/  Patricia A. Jones                    
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

By:      /s/  Michael P. Bruckheim              
MICHAEL P. BRUCKHEIM [455192]
Chief, Criminal Section
Public Safety Division
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-727-3807
E-mail:  Michael.bruckheim@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MURIELENE GORDON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-1907 (EGS) |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT DISTRICT OF COLUMBIA'S RESPONSE TO PLAINTIFF'S RESPONSE**
**TO ITS STATEMENTS OF MATERIAL FACTS NOT IN DISPUTE**

The District herein responds to plaintiff's statements of claimed disputed issues set forth

in the District's Statement of Material Facts Not in Dispute.  The District will respond to those

statements that plaintiff claims is disputed, in like-numbered paragraphs, and states as follows:

2.      Plaintiff claims that she sent by fax her notice to the Mayor pursuant to D.C.

Official Code § 12-309 on or about April 4, 2003, alleging ongoing discrimination.  The law

requires that plaintiff not only send the Mayor written notice of her claim, but that the Mayor

timely receive the claim within six (6) months of injury.  See D.C. Official Code § 12-309.

Moreover, the notice is insufficient and does not provide the date of the alleged injury sustained

by plaintiff.  According to the letter, plaintiff began employment with the D.C. Public Schools in

1979.  Since September 19999, (and even before that date), she has been denied a safe

workplace.  See Pl.'s Exhibit 51-4.  The letter to the Superintendent dated April 4, 2003, fares no

better than the letter to the Mayor.  It provides no specific dates when the alleged discriminatory

conduct took place.  See Pl.'s Exhibit 45-5.  In fact, the letter does not describe any alleged

misconduct that occurred between October 11, 2002, and April 4, 2003, the date she allegedly

gave her notice to the Mayor.  *Id.*  Section 12-309 is in derogation of common law and must be strictly construed.

5.      Plaintiff denies that she made no effort to return to work.  Plaintiff claims that she and her daughter made multiple attempts to contact Dr. Bridges about returning to work. Plaintiff's arguments are not material.  She has not shown that she left message for Dr. Bridges, or that he received or was aware that she and/or her daughter made attempts to contact him.  See Pl.'s opposition, generally.

10.     Plaintiff admits this statement, but denies that it is a full, accurate assessment of her ability to take care of herself as an able bodied person does.  Plaintiff claims that she is in pain during these activities.  Pain by itself is not dispositive of a substantial limitation of a major life activity.  *See Toyota Motor*, 534 U.S. 184, 200-01 (2002), see also *Black v. Roadway Express, Inc.*, 297 F.2d 445, 451.

11.     Plaintiff admits this statement, but denies that it states/implies that she walks like the average able bodies person in society.  Plaintiff's denial is not material.  Plaintiff has not shown that other than pain she experiences while walking, that her alleged disability substantially affects a major life activity.  Moreover, although Dr. Scott's letter is inadmissible, it does not show that plaintiff's disability affects a major life activity.  See Pl.'s Opposition, generally.

12.     Plaintiff admits this statement, but tries to clarify it by stating that she does not usually do her laundry, her daughter and grandson usually does it.  This is a distinction without a difference.  The fact that plaintiff has admitted that she does her laundry is sufficient to show that she can perform basic chores.  See District's motion and plaintiff's opposition, generally.

13.     Plaintiff admits that she took the bus to work, but denies that she got to the bus like the average able bodied person in society.  The District simply stated a fact, that plaintiff took the bus to work, and that she walked to the bus stop.  Plaintiff's attempt at clarification is insufficient to dispute the statement.  See Pl.'s statement, at ¶ 13.

14.     There is no dispute that MetroAccess is for disabled persons.  However, there is no evidence that the person's disability must affect a major life activity in order to participate in the MetroAccess program.  See www.amata.co/metroacess.

The District also responds to plaintiff's Statements that are allegedly not in dispute as follows:

1.     Whether plaintiff is disabled within the meaning of the ADA, the RA and/or the DCHRA is a legal question.  The Courts have established a heightened burden to show disability.  It must affect a major life activity.  Plaintiff has failed to show that her alleged disability affected a major life activity.  See Pl.'s Motion for Summary Judgment; although inadmissible, see also, Dr. Scott's letter regarding plaintiff's alleged disability.

2.     Plaintiff has not shown that the District knew that she was disabled within the meaning of the ADA, the RA and/or the DCHRA.  See Dr. Scott's inadmissible letter.  See also, the District's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment, and the District's Opposition thereto.

3.     This is a legal question for the court's determination.  Based on the record evidence in this case, this Court cannot find that plaintiff was disabled within the meaning of the ADA, RA or DCHRA as she has not shown that her alleged disability affected a major life

activity.  See Dr. Scott's inadmissible letter.  See also, the District's Motion for Summary

Judgment, Plaintiff's Motion for Summary Judgment, and the District's Opposition thereto.

          Respectfully submitted,

          PETER J. NICKLES
          Acting Attorney General for the District of Columbia

          GEORGE C. VALENTINE
          Deputy Attorney General
          Civil Litigation Division

          ___/s/  Patricia A. Jones_____
          PATRICIA A. JONES [428132]
          Chief, General Litigation Sec. IV

     By:  ___/s/__Michael P. Bruckheim_____
          MICHAEL P. BRUCKHEIM [455192]
          Chief, Criminal Section
          Public Safety Division
          441 4TH Street, NW, 6th Floor-South
          Washington, D.C.  20001
          202-727-3807
          E-mail:  Michael.bruckheim@dc.gov