## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                  )
MURIELENE GORDON,                 )
                                  )
              Plaintiff,          )
                                  )  Civil Action No. 05-1907 (EGS)
              v.                  )
                                  )
DISTRICT OF COLUMBIA,             )
                                  )
              Defendant.          )
                                  )
```

### MEMORANDUM OPINION

Plaintiff Murielene Gordon brings this action against the District of Columbia ("the District") for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*, alleging that the District failed to accommodate her disability while she was employed by the District as an art teacher.  Currently pending before the Court are defendant's motion for summary judgment and plaintiff's motion for partial summary judgment.  Upon consideration of the motions, and responses and replies thereto, the applicable law, and the entire record, this Court **GRANTS IN PART** defendant's motion for summary judgment with respect to the statutes of limitations

under the ADA and DCHRA and **DENIES** plaintiff's cross-motion for partial summary judgment.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party.  *Tao*, 27 F.3d at 638.

## II.  BACKGROUND

Murielene Gordon was employed by the District as a teacher from 1979 until her retirement in 2006.  Beginning in 1990, she was employed as an art teacher at Ballou Senior High School.  Plaintiff has degenerative arthritis, which affects her mobility and manual dexterity.  She alleges that while at Ballou, she did not have access to an accessible bathroom, she did not have keys

2

to locked emergency doors, the heating and cooling system was
non-functional, the shelves were too high, she did not have
access to a copier, and mandatory meetings were held on the
second floor of the buildings which she could not access.  Compl.
¶¶ 7-8, 11-14.

Plaintiff is able to navigate the stairs into her house, up
to her second floor, and down to her basement.  *See* Def.'s Mot.
Ex. 1 ("Gordon Dep.") at 10-13.  Until 2004, she used public
transportation to commute to work and was able to walk to and
from the bus stop, which were distances up to a city block.
Plaintiff was capable of bathing and dressing herself without
assistance.  *Id.* at 299-304.  With respect to her ability to
work, plaintiff stated that she maintained her full-time status
until retirement and that she was at all times capable of
performing her job at a high level despite her arthritis.  *See*
*id.* at 88-92.

According to plaintiff, she required the use of a cane to
walk in 2002 and 2003, and thereafter required the use of a
walker.  *See* Pl.'s 2/11/08 Opp'n Ex. 2[1] ("Gordon Aff.") at 1.
When she used a cane, it took her at least five minutes to

---

[1] As discussed below, there have been multiple rounds of
summary judgment briefing in this case.  In the current round of
briefing, plaintiff incorporated the exhibits previously filed
with the Court.  Unless otherwise noted, all citations to court
documents in this Memorandum Opinion refer to the most recent
round of briefing.

traverse a single flight of stairs.  With her walker, it takes at least seven or eight minutes to do so.  In either case, traversing staircases causes "extreme pain."  *Id*.  In 2002 to 2003, plaintiff would go down to the basement in her house at most once a month, and since then does so even more rarely, if ever.  The bathroom in her house is located on the second floor. At least since 2003, plaintiff has used a portable toilet so that she does not have to climb the stairs.  She also stated that if she ever forgets something upstairs after coming downstairs, she either asks someone else to retrieve it, or does without it.  *See* Gordon Dep. at 16.

Plaintiff admitted that she could walk to and from the bus stop until 2004, but explained that she could do so only at a sharply diminished pace.  *See* Gordon Dep. at 300.  A city block that able-bodied people could walk in less than ten minutes would take plaintiff at least twenty to twenty-five minutes with her cane, and thirty-five to forty minutes with her walker.  It would take even longer in inclement weather.  During these one-block walks, plaintiff would have to take a break and rest at least once.  If sidewalks were icy or slippery, plaintiff could not walk at all and would call in sick to work.  *See* Gordon Aff. at 3.

While plaintiff can bathe herself and brush her teeth, both activities cause great pain and take more time than average.  For

instance, plaintiff cannot brush her teeth for more than one minute without taking a break. *See id.* at 1.  Due to pain, plaintiff has not worn makeup since 2000 and cannot style her own hair. *See id.*  Since 2001, she has required assistance in order to shampoo her hair.  Plaintiff cannot wear clothes or shoes that are fastened with buttons or laces.  Finally, plaintiff was limited in her ability to cook, and thus only ate meals that required less than five minutes of preparation or that could be prepared using a microwave oven. *See id.* at 2.

Plaintiff was approved for sick leave in July 2002 for physical therapy relating to her arthritis. *See* Compl. ¶ 16.  On August 9, 2002, plaintiff called principal Art Bridges and informed him that she would not return to Ballou for the start of the new school year due to her health problems. *See* Gordon Aff. at 2.  According to plaintiff, Bridges told plaintiff to "sit tight," that he was going to transfer her to another school, and that she was a "liability" because she could not run out of the school if there was a fire. *Id.* at 3.  According to Bridges, he expected plaintiff to return. *See* Pl.'s 2/11/08 Opp'n Ex. 5 ("Bridges Aff.") at 39.

On September 16, 2002, plaintiff faxed Bridges information that her sick leave bank request had been approved and called Bridges to inquire as to her teacher status, to which Bridges responded that he was going downtown to fill out the transfer

forms.  Plaintiff told Bridges that she may not be able to run
out of the building in case of a fire, but that if she had a key
to unlock the exit doors in her classroom she would not need to
run.  Bridges did not respond.  *See* Gordon Aff. at 3.  In
November 2002, plaintiff started to make numerous phone calls to
Bridges about returning to work and about the status of her
transfer, but she was never able to reach him despite leaving
messages for him.  *Id.* at 3-4.  On February 26, 2003, plaintiff
received a letter from Ballou informing her that she was on
absent without leave ("AWOL") status and that she must report to
work by March 10, 2003.  Plaintiff did not report to work.  *Id.*
at 4.

Plaintiff filed a complaint with the Equal Employment
Opportunity Commission ("EEOC") on April 18, 2003, alleging
disability and age discrimination under the ADA and Age
Discrimination in Employment Act.  This EEOC complaint followed
the filing of an internal discrimination complaint that was
dismissed as unsubstantiated.  *See* Pl.'s Opp'n at 3; Pl.'s
2/11/08 Opp'n at Exs. 14, 15.  Also, in March 2003, plaintiff was
ordered by the District to undergo a "fitness for duty"
examination.  Pl.'s 2/11/08 Opp'n at Ex. 10.  After performing a
physical examination, Dr. Samuel J. Scott confirmed that
plaintiff suffered from arthritis that "severely affected" her
mobility.  *Id.*  Dr. Scott concluded that plaintiff was fit for

duty with accommodations that included no standing for more than
five minutes at a time, no walking up or down stairs, and no
walking more than fifty yards at a time.  *Id.*

Plaintiff brought suit in this Court on September 28, 2005,
alleging that defendant violated the ADA, the RA, and the DCHRA
by failing to accommodate her disability.  On August 1, 2006,
during discovery, defendant filed a motion for summary judgment,
arguing that plaintiff was not disabled under the ADA and that
plaintiff failed to show that the District failed to accommodate
plaintiff's disability.  On March 26, 2007, this Court denied
defendant's motion for summary judgment.  The parties completed
discovery, and on January 11, 2008, defendant renewed its motion
for summary judgment on different grounds.  On July 16, 2008,
this Court denied the motion for summary judgment without
prejudice, ordering the parties to address the split among
District Court judges regarding the RA's statutory time
limitations.  On August 14, 2008, defendant again renewed its
motion for summary judgment.  Plaintiff opposed defendant's
motion and, on September 8, 2008, filed her own motion for
partial summary judgment.

## III.  DISCUSSION

Defendant bases its claim for summary judgment on five
grounds: (1) plaintiff's claims are time-barred; (2) plaintiff's
accommodation claims under the DCHRA are precluded due to

plaintiff's failure to comply with D.C. Code § 12-309; (3)
plaintiff failed to plead viable claims under the DCHRA during
the period of October 11, 2002, through April 11, 2003; (4)
plaintiff has not shown that she is disabled under the ADA, RA,
or DCHRA; and (5) plaintiff has not shown that she was
discriminated against on the basis of her disability.

### A.   Time-Bar

Defendant claims that plaintiff's claims under the ADA, the
RA, and the DCHRA are time-barred according to corresponding
statutes of limitation and notice rules.

#### i.   ADA Claims

The ADA does not include its own statute of limitations.
Instead, the ADA adopts the procedures set forth in Title VII of
the 1964 Civil Rights Act ("Title VII"), as amended, 42 U.S.C. §
2000e *et seq.*, in particular the statute of limitations period
set forth in 42 U.S.C. § 2000e-5.  *See* 42 U.S.C. § 12117(a) ("The
powers, remedies, and procedures set forth in sections 2000e-4,
2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the
powers, remedies, and procedures this subchapter provides . . .
to any person alleging discrimination on the basis of disability
in violation of any provision of this chapter.").  An
administrative complaint must be filed with the EEOC within 180
days of the alleged unfair employment practice.  *Id.* § 2000e-
5(e)(1).  If the complainant has first instituted proceedings

8

with a state or local agency, the limitations period is extended
to a maximum of 300 days, or within thirty days after receiving
notice that the state or local agency has terminated proceedings
under the state or local law, whichever is earlier.  *Id.*

Plaintiff simultaneously filed her complaint with the D.C.
Office of Human Rights ("DCOHR") and the EEOC "on or about April
18, 2003."  *See* Compl. ¶ 19.  Plaintiff did not file her
complaint with the DCOHR first, so the 300-day extended
limitations period is inapplicable.  Therefore, plaintiff's
claims under the ADA are limited to the 180-day period from
October 18, 2002 to April 18, 2003; all other claims are time-
barred.  Summary judgment is **GRANTED** on this issue.

### ii.  RA Claims

Plaintiff makes claims under § 504 of the RA, 29 U.S.C. §
794.  *See* Compl. ¶ 1.  The RA, like the ADA, does not have an
explicitly prescribed statute of limitations period.  There is
some disagreement in this jurisdiction over which statute of
limitations should be used for RA cases: the limitations period
used in cases brought under the ADA (which in turn incorporates
the Title VII limitations period), or a limitations period "drawn
from the appropriate state statute" – in this case, the
District's limitations period for personal injury claims.  *See*
*Stewart v. District of Columbia*, No. 04-1444, 2006 WL 626921, at
*9-10 (D.D.C. Mar. 12, 2006) (describing the split among judges

on this Court and collecting cases).  Plaintiff urges the Court
to adopt the three-year statute of limitations period for
personal injury actions, while Defendant argues that the Court
should use the period applied to ADA and Title VII claims.[2]

The disagreement about the appropriate limitations period
arises from a tension between two sections of the RA.  First, the
RA explicitly adopts the "*remedies, procedures, and rights* set
forth in Title VI of the Civil Rights Act of 1964" ("Title VI")
for claims brought under § 504.  29 U.S.C. § 794a(a)(2) (emphasis
added).  Second, the RA was amended in 1992 to state, "[t]he
*standards* used to determine whether [Section 504] has been
violated in a complaint alleging employment discrimination shall
be the standards applied under title I of the Americans with
Disabilities Act."  29 U.S.C. § 794(d) (emphasis added).  The
question thus hinges on whether or not "standards" includes
"powers, remedies, and procedures."

In *Turner v. District of Columbia*, the court adopted the
limitations period used in the ADA.  383 F. Supp. 2d 157, 176-77
(D.D.C. 2005).  The court in *Turner* assumed that the term

---

[2] Defendant also urges the Court to go even further and
apply the District's one-year limitations period for intentional
torts or DCHRA claims rather than the three-year period for
personal negligence actions, because "plaintiff's claims are more
akin to intentional tort or discriminatory claims."  Def.'s Mot.
at 9.  The Court rejects this argument.  *See Doe v. Se. Univ.*,
732 F. Supp. 7, 8-9 (D.D.C. 1990) (rejecting the same argument
and applying the District's three-year limitations period to an
RA claim).

"standards" logically includes the terms "powers," "remedies," and "procedures." *See id.* The court did not address § 794a(a)(2)'s incorporation of Title VI's "remedies, procedures, and rights." *See id.*

In *Stewart*, on the other hand, another judge on this Court adopted the District's three-year limitations period. *Stewart*, 2006 WL 626921, at \*11. The court held in that case that the tension between § 794a(a)(2) and § 794(d) can be explained by interpreting § 794(d) as doing "nothing more than incorporat[ing] the ADA's standards of liability." *Id.* at \*10. In particular, the *Stewart* court pointed out that the standards adopted in § 794(d) are only adopted for the purpose of determining whether § 504 has been *violated*. *Id.; see also* 29 U.S.C. § 794(d) ("The standards used to determine whether [Section 504] has been violated . . . shall be the standards applied under title I of the [ADA].").

This Court is persuaded by the analysis set forth in *Stewart* and holds that the District's three-year statute of limitations for personal injury claims applies to RA claims. Accordingly, plaintiff's claims under the RA are limited to the period from April 18, 2000 to April 18, 2003. Summary judgment is **DENIED** on this issue.

   iii.  **DCHRA Claims**

Defendant argues that plaintiff's claims under the DCHRA are limited to events that occurred between October 11, 2002, and April 11, 2003.  Plaintiff has failed to respond to this argument in any of her filings, including those in response to defendant's earlier motions for summary judgment, except to clarify that she sent her notice by fax and mail on or about April 4 rather than April 11, 2003.  Because of her failure to respond, plaintiff concedes the point.  *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Plaintiff's claims under the DCHRA are therefore limited to the period from October 4, 2002, to April 4, 2003.

## B.  Disability Under the ADA, RA, and DCHRA

Defendant contends that plaintiff is not disabled under the ADA, RA, or DCHRA.  Plaintiff notes that this Court decided this issue in March 2007.  Defendant filed a motion for summary judgment on August 1, 2006, arguing, *inter alia*, that plaintiff is not disabled under the ADA.  On March 26, 2007, this Court denied that ground of defendant's motion and ruled that "plaintiff can demonstrate . . . that she is disabled within the meaning of the ADA and [the RA]."  *See Gordon v. District of*

12

*Columbia*, 480 F. Supp. 2d 112, 117 (D.D.C. 2007).  In denying

defendant's motion, this Court held that there was sufficient

evidence, drawing all inferences in plaintiff's favor, to defeat

a grant of summary judgment on the issue of plaintiff's

disability.  Defendant presents no new evidence to alter that

conclusion.  Therefore, this Court's previous ruling is

controlling and summary judgment on this issue must be **DENIED**.

### C.  Failure to Accommodate

Defendant contends that plaintiff has not shown that

defendant's failure to reasonably accommodate her disability

prevented her from performing the essential functions of her job.

This Court, however, already decided this issue in its earlier

denial of summary judgment noting that defendant misread the ADA.

*See id.* at 118.  In the present motion for summary judgment,

defendant makes exactly the same argument as it presented in its

previous motion, presenting no new arguments nor identifying any

change of law.  This Court's previous ruling is controlling and

summary judgment on this issue must be **DENIED**.

### D.  Disparate Treatment

To sustain a claim under the ADA, RA, or DCHRA, plaintiff

must show that (1) she suffered an adverse employment action (2)

because of her disability.  *Adeyemi v. District of Columbia*, 525

F.3d 1222, 1226 (D.C. Cir. 2008) (ADA); *Barth v. Gelb*, 2 F.3d

1180, 1186 (D.C. Cir. 1993) (RA); *Hamilton v. Howard Univ.*, 960

13

A.2d 308, 314 (D.C. 2008) (DCHRA).  Defendant argues that
plaintiff cannot prove disparate treatment because she cannot
satisfy either element of the *prima facie* case.

An adverse employment action is "a significant change in
employment status, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a
decision causing significant change in benefits."  *Broderick v.
Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006).  An adverse
action occurs "when an employee 'experiences materially adverse
consequences affecting the terms, conditions, or privileges of
employment or future employment opportunities such that a
reasonable trier of fact could find objectively tangible harm.'"
*Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting
*Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002)).

In its motion for summary judgment, defendant addresses only
two of plaintiff's claims.[3]  In her OHR/EEOC complaint, plaintiff
avers that the District: (1) refused to permit her to return to
work since late October 2002, and (2) placed her on absent
without leave status in February 2003.  Both complaints fall
within the ADA, the RA, and the DCHRA's statutes of limitations.
*See supra* Section III.B.

With regard to whether the District refused to permit

---

[3]  Defendant's motion fails to address plaintiff's numerous
failure-to-accommodate claims dating from 1999.  *See* Compl. ¶¶
11-15.

plaintiff to return to work, there is a genuine issue of material fact that precludes granting summary judgment.  Plaintiff insists that Bridges told her to "sit tight," that he was going to transfer her to another school, and that she was a "liability" because she could not run out of the school if there was a fire.  Plaintiff also claims that she made repeated calls to Bridges about her teacher status and about her transfer.  Bridges, on the other hand, stated that he expected plaintiff to return, but that she did not.  The precise exchange that occurred between plaintiff and Bridges is material because it may be sufficient to sustain a disparate treatment claim.  While plaintiff continued to receive paychecks during that time, plaintiff was forced to use sick pay to continue receiving those paychecks.

Being forced to use sick pay is an objective and tangible harm and may therefore constitute an adverse employment action.  *See Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 178-79 (D.D.C. 2005) (concluding that a genuine issue of material fact existed as to whether plaintiff had suffered an adverse employment action where she alleged that she was denied the use of sick days to which she was qualified); *Washington v. White*, 231 F. Supp. 2d 71, 78 (D.D.C. 2002) ("A leave restriction presumably limits the circumstances under which an employee may take leave that has been earned, and might be considered an adverse personnel action insofar as it restricts plaintiff's

15

ability to take leave to which he would otherwise be entitled."). Moreover, if Bridges forced plaintiff to use her sick pay because her disability was a "liability" to Ballou, then the adverse action was suffered because of plaintiff's disability.  Whether plaintiff was placed on AWOL is not an independent claim but a direct result of her claim that the District did not permit her to return to work.  Plaintiff would not have been placed on AWOL status had her sick leave not run out, but she alleges her sick leave ran out because she was forced to use it.

Plaintiff can demonstrate that she has suffered disparate treatment on the basis of her disability.  Summary judgment on this issue is **DENIED**.

### E.  Plaintiff's Cross-Motion for Partial Summary Judgment

In her cross-motion, plaintiff moves for partial summary judgment solely on the ground that she is a qualified individual with a disability under the ADA, RA, and DCHRA.  Plaintiff argues that this Court previously decided that she is disabled.  This is a misreading of the Court's March 26, 2007 opinion.  In the opinion denying summary judgment, this Court found that "*plaintiff can demonstrate* . . . that she is disabled within the meaning of the ADA and Rehabilitation Act."  *Gordon*, 480 F. Supp. 2d. at 117 (emphasis added) (footnote omitted).  Furthermore, that ruling was based on accepting the non-moving party's (plaintiff's) evidence as true.  In the context of the present

16

motion, however, the non-moving party is the defendant. Therefore the decision of the Court on defendant's earlier motion for summary judgment is not dispositive.

More fundamentally, this Court's earlier denial of summary judgment for defendant is irrelevant to plaintiff's current motion because of the different standards of proof to which the parties are held.  Indeed, the flaw in plaintiff's reasoning is highlighted by her argument that she is entitled to partial summary judgment because "a reasonable jury could find in her favor" on the issue of her disability.  Pl.'s Reply at 5. Although the Court agrees with this assessment, *see Gordon*, 480 F. Supp. 2d. at 115-17, such a conclusion is sufficient only to preclude a grant of summary judgment for defendant, *not* to support a grant of summary judgment in plaintiff's favor.  *See Anderson*, 477 U.S. at 251-52 (explaining that the summary judgment standard mirrors that of a directed verdict, and concluding that "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  Rather, plaintiff is entitled to a finding that she is disabled as a matter of law only if *no* reasonable jury could agree with defendant that she does not have "'a physical or mental impairment that substantially limits one or more major life activities.'"  *Gordon*, 480 F. Supp. 2d at 116

17

(quoting 42 U.S.C. § 12102(2)(A)); *see also Anderson*, 477 U.S. at 252 ("[T]he judge must ask himself . . . whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented."). The Court does not believe that plaintiff has met this burden.

Plaintiff testified that she walks up steps to enter her home and needs to use even more stairs to reach her bedroom on the second level and the laundry room in the basement. *See* Gordon Dep. at 11, 13. Also, prior to 2004, plaintiff regularly walked between her home and the bus stop and between another bus stop and her work. *See id.* at 299-301, 329. Plaintiff also stated, however, that she avoided using stairs as much as possible because traversing them causes her "extreme pain," *see* Gordon Aff. at 1; Gordon Dep. at 16, and that she took significantly longer than the average person to walk down a sidewalk, *see* Gordon Aff. at 3. Based on these facts, the Court concludes that whether – and the extent to which – plaintiff was substantially limited in a major life activity is not a question that the Court can appropriately resolve at this stage. In short, neither party is entitled to judgment as a matter of law on this issue, the resolution of which will be for a jury. Therefore, plaintiff's motion for partial summary judgment is **DENIED**.

**IV.   CONCLUSION**

18

Defendant's motion for summary judgment is **GRANTED** with respect to the statutes of limitations under the ADA and the DCHRA and **DENIED** on all other grounds.  As a result, plaintiff's ADA claims are limited to the time period of October 18, 2002 to April 18, 2003; plaintiff's RA claims are limited to the time period of April 18, 2000 to April 18, 2003; and plaintiff's DCHRA claims are limited to the time period of October 4, 2002 to April 4, 2003.  Moreover, a reasonable jury could find that plaintiff was disabled under the ADA, RA, and DCHRA, and that plaintiff has suffered disparate treatment on the basis of her disability.  Given the facts of this case, however, a reasonable jury could also find that plaintiff was *not* disabled.  Accordingly, plaintiff's cross-motion for partial summary judgment on the issue of plaintiff's disability is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.


     **SO ORDERED.**

**Signed:     Emmet G. Sullivan
             United States District Judge
             March 31, 2009**